## Section IX.
## General Provisions

9.1 Assurances. Each Member shall execute all such certificates and other documents and shall do all such filing, recording, publishing and other acts as the Board of Managers deems appropriate to comply with the requirements of law for the formation and operation of the Company and to comply with any laws, rules and regulations relating to the acquisition, operation or holding of the property of the Company.

9.2 Notifications. Any notice, demand, consent, election, offer, approval, request or other communication (collectively a notice) required or permitted under this Agreement must be in writing and either delivered personally or sent by Federal Express or other comparable commercial overnight courier. Any notice to be given hereunder by the Company shall be given by the Board of Managers. A notice must be addressed to a Member at the Member's last known address on the records of the Company. A notice to the Company must be addressed to the Company's principal office. A notice delivered personally will be deemed given only when acknowledged in writing by the person to whom it is delivered. A notice that is sent by mail will be deemed given three (3) business days after it is mailed. Any party may designate, by notice to all of the others, substitute addresses or addressees for notices; and, thereafter, notices are to be directed to those substitute addresses or addressees.

9.3 Specific Performance. The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach, or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

9.4 Complete Agreement. This Agreement constitutes the complete and exclusive statement of the agreement among the Members with respect to the subject matter contained herein. It supersedes all prior written and oral statements, including any prior representation, statement, condition or warranty, with respect to the Company. Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of all of the Class A Members.

9.5 Applicable Law. All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law of the Commonwealth of Virginia, without reference to the principles governing the conflict of laws applicable in that or any other jurisdiction.

9.6 Section Titles. The headings herein are inserted as a matter of convenience only and do not define, limit or describe the scope of this Agreement or the intent of the provisions hereof.

9.7 Binding Provisions. This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns.

9.8 Jurisdiction and Venue. Any suit involving any Dispute or matter arising under this Agreement may only be brought in the United States District Court for the Middle District of Virginia or any Virginia State Court having jurisdiction over the subject matter of the Dispute or matter. All Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

9.9 Terms. Common nouns and pronouns shall be deemed to refer to the masculine, feminine, neuter, singular and plural, as the identity of the Person may in the context require.

9.10 Separability of Provisions. Each provision of this Agreement shall be considered separable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

9.11 Counterparts. This Agreement may be executed simultaneously in two (2) or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same document. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

IN WITNESS WHEREOF, the parties have executed, or caused this Agreement to be executed, as of the date set forth hereinabove.

[SIGNATURE PAGES FOLLOW]

## SIGNATURE PAGE TO OPERATING AGREEMENT OF
## [BNG GROUP, LLC]

The undersigned, each desiring to become a Member of the Company pursuant to the Limited Liability Company Operating Agreement dated 20 March, 2020 (the "Operating Agreement"), the terms and conditions of which the undersigned has reviewed and is familiar with, does hereby execute this Signature Page to be attached to the Operating Agreement. The Signature Page shall constitute legal and sufficient evidence of execution and certification by the undersigned of such document.

The undersigned further agree to contribute to the Company the amount of the Capital Contribution as set forth in the Operating Agreement and Exhibit's A' and B" of the Operating Agreement.

Executed this 20 day of March 2020

By:

Valeria V Gunkova.
President and member

By: ______________ (SEAL)
HARRY KAMIN, Manager

By: ______________ (SEAL)
VALERIA GUNK OVA, Manager

**Limited Liability Company**
**Operating Agreement**

**EXHIBIT "A"**
**LIST OF CLASS A MEMBERS, CAPITAL AND PERCENTAGE INTERESTS**

| Name and Address | Initial Capital Cash Contribution | Percentage | Units | Class |
|---|---|---|---|---|
| VALERIA V GUNKOVA | $150,000 | 50 % | 50 | A |
| HARRY D KAMIN | $150,000 | 50% | 50 | A |

**Liability Company**
**Operating Agreement**

**EXHIBIT "B"**

**PROCEDURE FOR DETERMINING THE FAIR MARKET VALUE OF A MEMBER'S INTEREST IN THE COMPANY**

At such time as the fair market value of a Transferor Interest is needed in connection with a Transfer, the Company, at its expense, shall retain the services of a valuation firm that will analyze the financial statements of the Company and will render an opinion as to the fair market value of the Company, in general, and the Transferor Interest, in particular. If the Transferor does not accept the fair market value as stated in the opinion, the Transferor, at his or her expense, may retain the services of a valuation firm that will analyze the financial statements of the Company and will render an opinion as to the fair market value of the Company, in general, and the Transferor Interest, in particular and deliver the opinion to the Company.

If there is more than a ten percent (10%) variation in the values expressed in the opinions, the Company and the Transferor shall identify a mutually-agreeable valuation firm whose opinion of fair market value will be binding on the parties. The cost of the opinion shall be paid equally by the Company and the Transferor.

If there is less than a ten percent (10%) variation in the values expressed in the opinions, the values will be averaged to determine the fair market value of the Company and the Transferor Interest.

EXHIBIT

B

HARRY D KAMIN
320 S SURF RD APT 804
HOLLYWOOD FL 33019

175

Apr 15, 2020

Pay to the Order of: BNG GROUP LLC $ 135,000.00

One hundred & thirty-five thousand & 00/100 Dollars

TD Bank
America's Most Convenient Bank

For: c/o Sterling Investment. Harry D Kamin

[redacted] 1208 0175

#175 05/19 $135,000.00

HARRY D KAMIN
320 S SURF RD APT 804
HOLLYWOOD FL 33019

176

Apr 15, 2020

Pay to the Order of: BNG GROUP LLC $ 135,000.00

One hundred & thirty-five thousand & 00/100 Dollars

TD Bank
America's Most Convenient Bank

For: c/o Sterling Investment llc Harry D Kamin

[redacted] 1208 0176

#176 05/19 $135,000.00

EXHIBIT

C

# CONTRACT OF SALE

THIS CONTRACT OF SALE (this "Contract") is made this 6 day of March, 2019 (hereinafter "Effective Date") by and among **JUDICIAL DRIVE PROPERTY HOLDING, LLC**, a Virginia limited liability company (hereinafter "Seller") and **BNG GROUP, LLC**, a Virginia limited liability company (hereinafter collectively the "Buyer"). The "Effective Date" of this Contract is hereby defined as the latest to occur of the dates on which Seller and Buyer shall have executed and delivered a fully executed original of this Contract to the other party.

WITNESSETH:

WHEREAS, Seller is the sole and rightful owner of that certain commercial real property located at 2 Pidgeon Hill Drive, Sterling, Virginia 20165 with a Tax Map Ref. No of /64/C/1////J3/ in the Loudoun County Tax Records and more particularly described in Exhibit A attached hereto and made a part hereof, together with those certain improvements (hereinafter referred to as "Real Property"); and,

WHEREAS, the Real Property does additionally include all of Seller's right, title and interest in and to all improvements and modifications, additions, restorations, repairs and replacements thereof; and all right, title, and interest of the Seller in and to all inchoate rights, easements, appurtenances, any unpaid award in respect of any street, road, alley, sidewalk or parking area in front of or adjoining the Real Property, and in and to any unpaid award for damage by reason of any change in the grade of any such street, road, alley, sidewalk or parking area; and

WHEREAS, the Real Property does additionally include all fixtures, equipment and other personal property owned by Seller and employed in the operation of the Real Property, including all mechanical and HVAC systems employed therein (but shall not include any property owned by any tenant of the Real Property); and

WHEREAS, the Real Property does additionally include all of Seller's right, title, and interest as landlord with respect to the leases of space in the Real Property existing as of Closing herein ("Leases").

WHEREAS, the term "Effective Date" as used in this Contract shall mean the date that the parties sign this Contract. In the event the parties sign this Contract on different days, the term "Effective Date" shall be the later date upon which a party signed.

WHEREAS, Seller desires to sell, and Buyer desires to buy, the Real said Real Property,

NOW THEREFORE, for and in consideration of the mutual covenants hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged the parties hereby agree as follows:

## ARTICLE I. SALE AND PURCHASE

Seller ______ Buyer VG______

1.1 Subject to all of the terms, conditions, and covenants herein contained, including the contingency for release of current liens and encumbrances contained herein, Seller hereby agrees to sell to Buyer and Buyer hereby agrees to purchase from Seller:

All of the fee simple interest in that certain parcel of Real Property, together with all improvements (as further defined below) located thereon and Seller's right, title and interest, if any, in and to any common areas, any rights of way or use, riparian rights, water rights, servitudes, easements, tenements, hereditaments, and appurtenances benefiting or belonging to said property, or in any way appertaining thereto, including all right, title, and interest of Seller, if any, in any land lying in the bed of any street, road or avenue, open or proposed, in front of or adjoining said property; and

## ARTICLE II. PURCHASE PRICE AND DEPOSIT FOR PROPERTY

2.1 The purchase price for the Real Property shall be **NINE MILLION and NO/100 Dollars ($9,000,000.00)** (the "Purchase Price"). The Purchase Price and required Deposit shall be paid as follows:

(1) Within ten (12) days from the Effective Date, but not later than March 18 , 2020Buyer shall deliver deposit on an amount of $4,000,000.00 in an interest escrow account of Stewart Title and Escrow, Inc 10505 Judicial Dr, Fairfax, VA 22030 703-963-7887, mfitz@stewart.com ("Escrow Agent") (hereinafter the "Deposit"). The Deposit shall be held by the Escrow Agent in an interest-bearing escrow account at a federally insured commercial bank, and shall be paid to the party entitled to receive the Deposit (or portion thereof) under this Contract. The Deposit shall be maintained and disbursed strictly in accordance with the terms of this Contract.

(2) At Closing, Buyer shall pay the full Purchase Price as follows:

a) The Deposit in the amount of Four Million and No/100 Dollars ($4,000,000.000) (hereinafter the "Deposit") shall be paid to Seller in cash, certified funds or other immediately available funds at Closing by Escrow Agent;

b) Buyer shall make payment to Seller at Closing of the balance of the Purchase Price (i.e., $5,000,000.00) (as adjusted by closing costs or other adjustments referenced herein) in cash, certified funds or other immediately available funds to be paid from financing obtained by Buyer pursuant to Article 7.5 hereinbelow.

(3) Escrow Agent shall not be liable to either Buyer or Seller in connection with the performance of any duty imposed upon Escrow Agent hereunder for any action taken by Escrow Agent in good faith in conformity with the provisions of this Contract in holding or dealing with the Deposit, except for Escrow Agent's gross negligence or willful misconduct. Escrow Agent may act upon any instrument or other writing believed by Escrow Agent in good faith to be genuine and to be executed and presented by the proper person. Escrow Agent shall have no duties or responsibilities other than as expressly set forth herein. Escrow Agent shall not be bound by a modification hereof unless such modification is in writing and signed by Buyer and Seller and, if Escrow Agent's duties hereunder are affected, by Escrow Agent.

## ARTICLE III. CLOSING

3.1 Closing of the purchase and sale of the Property (the "Closing") shall be held within thirty (15) days from Effective Date but in no event later than March 23, 2020 ("Closing Cutoff Date"). The Closing Cutoff Date may be extended by mutual agreement of the parties in their respective sole and absolute discretion. Time is of the essence.

3.2 Closing shall be held at the offices of Kevin M. O'Donnell, Esquire, the Seller's counsel ("Closing Agent"), or as may be otherwise mutually agreed to by the parties.

3.3 At Closing, Seller shall execute and deliver to the Closing Agent the following:

(1) a Special Warranty Deed in the form attached hereto and made a part hereof as Exhibit "B" (the "Deed"), conveying to Buyer or its permitted assignee, good and merchantable fee simple title to the Real Property, in accordance with the provisions of this Contract;

(2) an owner's affidavit as to mechanics liens and parties in possession, in a commercially reasonable form, executed and sworn to by Seller;

(3) a certification complying with requirements of Sections 1445 and 7701 of the Internal Revenue Code of 1986, as amended, by Seller that it is not a foreign person within the meaning of such sections;

(4) a settlement statement approved by Buyer and Seller;

(5) a form 1099-S;

(6) such additional documents as required under this Contract or reasonably contemplated by this Contract or requested by Buyer's lender in order to consummate the sale of the Real Property on the terms contained herein;

(7) possession of the Real Property and all keys to the Real Property;

(8) Credit for tenants' security deposit(s), and

3.4 At Closing, Buyer shall execute, as applicable, and deliver the following:

(1) the Purchase Price, as adjusted, plus all closing costs and expenses, and such other sums due under this Contract;

(2) a settlement statement prepared by Closing Agent and approved by Buyer and Seller;

(3) a certification complying with requirements of Sections 26 U.S.C. 1445 and 26 U.S.C. 7701 of the Internal Revenue Code of 1986, as amended, by Buyer that it is not a foreign person within the meaning of such sections;

Seller ______ Buyer ______

(4) evidence reasonably sufficient to satisfy Seller that Buyer is duly organized and, as of the date of Closing, validly existing in the state of its formation, and that all actions have been taken by Buyer which are necessary to duly authorize Buyer (and its attorneys in fact) to consummate the transactions contemplated by this Contract; and

(5) such additional documents as required under this Contract or reasonably contemplated by this Contract in order to consummate the sale of the Property on the terms contained herein.

3.5 In the event that Seller shall fail to perform its obligation to make full settlement in accordance with the terms hereof, Buyer shall have, as its sole and exclusive remedy hereunder, the right to terminate this Contract, in which event (i) the Deposit and the Down Payment shall be returned promptly to Buyer, and the Contract shall be terminated with all parties being released. Such payment shall be made within five (5) business days of the effective date of such termination by Buyer. In the event that Buyer shall fail, after the expiration (or earlier termination by virtue of waiver by Buyer of the underlying applicable condition precedent) of the Feasibility Period and Financing Period to perform its obligations hereunder to make full Closing in accordance with the terms hereof, Seller shall have, as its sole and exclusive remedy hereunder, the right to terminate this Contract, in which event (i) the Deposit and the Down Payment shall be returned promptly to Buyer, and the Contract shall be terminated with all parties being released.

## ARTICLE IV. REPRESENTATIONS, WARRANTIES AND COVENANTS

4.1 Seller represents and warrants the following to Buyer, both as of the Effective Date and as of the date of Closing. All of the representations and warranties are made to the actual knowledge of Seller without the obligation to make any independent investigation or inquiry:

(1) Seller has the power and authority to enter into this Contract and, subject to the contingency for release of encumbrances and liens herein, to convey the Real Property to Buyer, and Seller is registered or authorized to conduct business in the Commonwealth of Virginia.

(2) No suit, action or other proceeding has been instituted or threatened before any court or administrative agency against Seller, and Seller has not received notice of any such suit, action or other proceeding which could result in an order or decree enjoining the consummation of the transaction contemplated by this contract.

(3) Neither the entering into of this Contract nor the consummation of the transaction contemplated hereby will constitute or result in a violation or breach by Seller of any judgment, order, writ, injunction or decree issued against or imposed upon it. No approval, consent, order or authorization of, or designation, registration or filing (other than for recording purposes) with any governmental authority is required in connection with the due and valid execution and delivery of this Contract, compliance with the provisions hereof and consummation of the transaction contemplated hereby by Seller except as specified herein.

(4) Seller has received no notices of, and has no actual knowledge of, the presence of any Hazardous Materials (as defined below), on or at the Real Property (excluding normal and customary chemicals used in accordance with environmental regulations) in violation of applicable Environmental Laws. The term "Hazardous Materials" as used herein shall mean any product, substance, chemical, material or waste whose presence, nature, quantity and/or intensity of existence, use, manufacture, processing, treatment, storage, disposal, transportation, spill, release or effect, either by itself or in combination with other materials on or expected to be on the Real Property, is either (a) regulated, monitored, or subject to reporting by any governmental authority; or (b) a basis for potential liability to any governmental agency or a third party under any applicable Environmental Laws. Without limiting the foregoing, the term "Hazardous Materials" includes, but is not limited to, hydrocarbons, petroleum, gasoline, asbestos containing materials, crude oil or any products or byproducts thereof. The term "Environmental Laws" as used herein shall mean all federal, state and local laws, ordinances, rules, regulations, codes or orders, including, without limitation, any requirement imposed under any permits, licenses, judgments, decrees, agreements or recorded covenants, conditions, restrictions or easements, the purpose of which is to protect the environment, human health, public safety or welfare, or which pertain to Hazardous Materials.

(5) There are no outstanding notices received by Seller from any constituted public authority or from any insurance company of the existence of any condition or situation that requires work to be done to cure an unsatisfactory condition with respect to the Real Property (or to correct a violation of a law, ordinance, order or regulation affecting the Real Property) and that remains undone or will remain undone at the date of Closing. There are no pending condemnation proceedings or any other action, proceeding (zoning, environmental or otherwise), governmental investigation or litigation relating to any portion of the Real Property, and Seller has received no notices of the institution or the proposed institution of condemnation proceedings or any other action, proceeding (zoning, environmental or otherwise), governmental investigation or litigation relating to any portion of the Real Property and Seller is unaware of any current threat of any such action.

(6) There is no litigation, claim, or condition pending or the knowledge of Seller threatened, which would materially affect the Real Property.

In the event that any of the representations and warranties of Seller set forth above shall not be true or accurate in all material respects as of the date hereof or at any time prior to Closing, or in the event that Seller shall be in breach of any of the covenants set forth below prior to Closing, and such failure is not cured within ten (10) business days after written notice from Buyer to Seller (the Closing date being automatically extended, if applicable, to the extent necessary to provide for such ten (10) business day cure period), then in any such event, Buyer shall have the right, before Closing, as its sole and exclusive remedy, to notify Seller of its election to cancel this Contract and receive its Deposit back. And in such event, the parties hereto shall be released from any further obligations under this Contract except those which specifically survive by terms hereof.

Seller [redacted] Buyer VG

(7) Seller represents that all items delivered to the Buyer for feasibility studies are accurate and true.

4.2 Covenants of Seller. Seller covenants with Buyer as follows:

(1) During the period between the Effective Date and the date of Closing, Seller shall promptly furnish to Buyer, within five (5) Business Days of Seller's receipt thereof, copies of any and all notices which it receives from federal, state or local governmental authorities having jurisdiction over the Real Property, any insurance company or board and from any other body having jurisdiction with respect to the use, occupancy and/or physical condition of the Real Property.

(2) During the period between the Effective Date and the date of Closing, Seller shall maintain in force the policies of fire and extended coverage and hazard insurance and liability insurance with respect to the Real Property prior to the Effective Date.

(3) During the period between the Effective Date and the date of Closing, Seller shall perform reasonable maintenance and repairs of the Real Property consistent with Seller's ownership of the same prior to the Effective Date, and generally shall operate, maintain and insure the Real Property in substantially the same manner in which Seller is operating, maintaining and insuring the Real Property on the Effective Date. This obligation of Seller shall include, without limitation, the performance of all material obligations, as owner of the Real Property, under any service contracts, and under any government approvals or licenses, any easements and other documents relating to the Real Property. Seller shall deliver the Real Property to Buyer at Closing substantially in the condition existing as of the last day of the Feasibility Period, subject to normal wear and tear and damage and, as otherwise described in this Contract, subject to change due to casualty or condemnation. Without the prior written consent of Buyer in each case, which consent shall not be unreasonably withheld, conditioned or delayed, Seller shall not enter into any new contracts after the expiration of the Feasibility Period concerning the operation, management or maintenance of the Real Property which are not capable of being terminated as of the date of Closing.

4.3 Buyer represents and warrants the following to Seller, both as of the Effective Date and as of the date of Closing.

(1) Buyer has full power, authority and legal right to enter into this Contract and to perform its obligations hereunder and has been duly authorized by all appropriate action of Buyer. Buyer is an individual or a duly formed and validly existing entity qualified to do business in and in good standing under the laws of the Commonwealth of Virginia. The person executing this Contract on behalf of Buyer has full power and authority to bind Buyer to the obligations of Buyer set forth herein, and upon execution and delivery of the same, all Closing documents executed by Buyer will constitute valid and binding instruments enforceable in accordance with their terms. The entry into and performance of Buyer's obligations under this Contract will not violate or result in a breach of any contract or agreement by which Buyer is bound, the consequence of which violation would be to prevent the performance of Buyer's obligations under this Contract. No consent of any other party is required for the performance by

Buyer of its obligations hereunder or under the Closing documents (or if so required in connection with this Contract, said consent has been acquired, or, if required in connection with any Closing documents, such consent will be acquired by the date of Closing). There is no action pending or, to the best of Buyer's knowledge, threatened against Buyer which would prevent the performance of Buyer's obligations under this Contract at Closing. All actions and consents necessary to authorize Buyer to enter into this Contract and to perform the transaction contemplated herein have been taken or obtained.

(2) Neither the entering into of this Contract nor the consummation of the transactions contemplated hereby will constitute or result in a violation or breach by Buyer of any contract, agreement or instrument to which it is a party, or to which it is subject, or by which it or any of its assets or properties may be bound, nor will it result in any violation of any judgment, order, writ, injunction or decree issued against or imposed upon it.

(3) There is no bankruptcy, insolvency, rearrangement, reorganization or similar action or proceeding, whether voluntary or involuntary, pending against Buyer, nor, to its knowledge, threatened against it, nor does it have any intention of filing or commencing any such action or proceeding.

(4) Buyer has the sufficient funds of its own for its cash portion of the Deposit.

(5) Buyer understands and acknowledges that (i) the Real Property being transferred hereunder is limited to the Real Property in accordance with the terms hereof, and, (ii) that no other property of Seller is being transferred by Seller to Buyer. The Real Property shall be sold and conveyed "where is" in "as is" condition, except as specifically set forth in this Contract.

In the event that any of the representations and warranties of Buyer set forth above shall not be true or accurate in all material respects as of the date hereof or at any time prior to Closing, or in the event that Buyer shall be in breach of any of its obligations hereunder prior to Closing, and such failure is not cured within ten (10) business days after written notice from Seller to Buyer (the Closing date being automatically extended, if applicable, to the extent necessary to provide for such ten (10) business day cure period), then in any such event, Seller shall have the right, before Closing, as its sole and exclusive remedy, to cancel this Contract. And in such event, the parties hereto shall be released from any further obligations under this Contract except those which specifically survive by terms hereof. The parties agree that Seller's actual damages are not susceptible of determination and are highly speculative and that the Deposit is both a reasonable and fair recovery by Seller and is not a penalty or inequitable forfeiture to or by Buyer.

## ARTICLE VI. SELLER'S COOPERATION WITH BUYER

6.1 Buyer shall have a thirty (30) days period from the Effective Date to examine the feasibility of the purchase of the Property (the "Feasibility Period"). On the Effective Date, Seller shall provide documents in Seller's possession or reasonable control reasonably requested by the Buyer for the purpose of feasibility examination of the Real Property, including tenant leases, physical inspection, appraisal and environmental reviews. During the Feasibility Period, subject to the provisions of Section 6.2 below, Buyer shall have the right to do all of the

following in such a manner as does not interfere with the operation of the Real Property by Seller: (i) to review all documents requested by Buyer's lender to the extent that the same exist, are in the possession and control of Seller and do not constitute privileged and confidential information of Seller and/or its principals, members, officers or affiliates), (ii) investigate zoning and other regulations affecting the Real Property, (iii) perform surveys and engineering studies, including environmental audits, (iv) to inspect the Real Property for defects in the electrical, plumbing, heating and other mechanical systems, for faults in the structure of the improvements located on the Real Property and to generally analyze the economic feasibility of the Real Property.

In the event that Buyer, in its sole and absolute discretion, determines to terminate this Contract for any reason during the Feasibility Period, then Buyer shall give written notice thereof to Seller on or before the end of the Feasibility Period along with all original documents provided to Buyer by Seller, all copies thereof made by Buyer, and all documents and studies obtained by Buyer during the Feasibility Period, whereupon the Deposit shall be returned to Buyer by Escrow Agent and neither party shall have any further rights, liabilities or obligations hereunder, except for those obligations that expressly survive termination. Seller agrees to reasonably cooperate with Buyer at no cost to Seller and give Buyer reasonable access to the Property and its records so that Buyer may complete its study.

6.2 If Buyer exercises its rights hereunder, or enters upon the Real Property to perform feasibility studies, it shall keep the Real Property free and clear of any and all liens (pending or otherwise) or claims resulting there from. Any and all feasibility studies or other investigation or inspection of the Real Property by Buyer shall be performed at the sole risk and expense of Buyer, and Buyer shall be solely and absolutely responsible for the acts or omissions of Buyer and any and all of Buyer's employees, agents and contractors ("Buyer's Agents"). Furthermore, Buyer shall protect, indemnify, defend and hold the Real Property, Seller and Seller's employees, representatives, officers, directors, members, managers, parents, affiliates, shareholders, agents, attorneys, contractors and consultants and each of their respective successors and assigns, harmless from and against any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, demands, causes of action, judgments, costs and legal or other expenses (including, without limitation, reasonable attorneys' and consultants' fees) suffered or incurred by any or all of such indemnified parties as a result of, due to or arising from any act or omission of Buyer or Buyer's Agents in connection with: (i) Buyer's feasibility studies; (ii) any activities, studies or investigations conducted at, on or in connection with the Property by Buyer or Buyer's Agents in connection with Buyer's feasibility studies; and (iii) the presence of Buyer or Buyer's Agents at or on the Real Property which causes, results in or precipitates any personal injury or property damage. Notwithstanding the foregoing, Buyer shall not be liable to Seller for any claims arising primarily from Seller's negligence or willful misconduct. Prior to any entry by Buyer or Buyer's Agents onto the Real Property, Buyer shall obtain, and shall thereafter maintain, public liability and property damage insurance with limits of not less than $1,000,000 applicable to the risks as to which Buyer is indemnifying hereunder, which policy or policies shall name each of Seller as additional insured, shall be reasonably acceptable to Seller. Buyer's indemnification and restoration obligations under this Section 6.2 shall survive termination of this Contract.

Seller: ______ Buyer: ______

6.3 Seller agrees that it shall not market the Real Property during the pendency of this Contract unless the Contract is terminated by Buyer as provided in Section 6.1, above.

6.4 Seller agrees that it shall not renew or put in any new tenants without Buyer's approval, with such approval not to be unreasonably withheld.

## ARTICLE VII. TITLE OBJECTIONS AND CONTINGENCIES

7.1 Buyer shall order a title report or commitment within five (5) days after the Effective Date. Within thirty (30) days after the Effective Date ("Title Review Period") of this Contract, Buyer shall notify Seller in writing if Buyer's title report or Survey (if any) indicates that title to the Real Property is not good and merchantable, consistent with the terms of Section 7.2 below, and with respect to any title matters arising after the end of the Title Review Period that are known to the Buyer, Buyer shall notify Seller in writing promptly upon Buyer's discovery thereof ("Title Objections"). In any of such events, Seller, at its sole option, may take all such reasonable actions as may be required to render said title good and merchantable or to remedy the Title Objections. Any monetary lien against the Real Property shall not require a Title Objection notice and (subject to the contingency for release of encumbrances and liens set forth herein) Seller agrees to secure the release of all monetary liens (excluding any liens created by Buyer or Buyer's Agents) encumbering the Real Property by the time of Closing.

7.2 The following conditions concerning title to the Real Property shall exist at the time of Closing hereunder, and the obligation of Buyer to close hereunder shall be expressly conditioned upon and subject to the satisfaction (or waiver by Buyer) of each such condition: Title to the Real Property shall be good of record and in fact, marketable, and free and clear of all encumbrances, except for the following (collectively, the "Permitted Exceptions"): (i) current real estate taxes and other governmental assessments and water and sewer charges which are liens but not currently due and payable; (ii) the operation and effect of all applicable codes, laws, regulations, ordinances, statutes and other restrictions of governmental or quasi-governmental authorities; (iii) matters reflected on the title commitment issued to Buyer during the Feasibility Period that are not objected to by Buyer during the Feasibility Period; and (iv) matters that would be reflected on an updated ALTA/ACSM survey of the Real Property and not objected to by Buyer during the Feasibility Period. Seller shall not grant any rights in the Real Property after the Feasibility Period without first receiving the prior written consent of Buyer (which approval shall be granted, withheld, or conditioned in a manner determined by Buyer in its reasonable discretion). Without limiting the generality of the foregoing, and subject to the contingency set forth in Sec. 7.4 below, Seller shall obtain the full reconveyance, release or other discharge, of record, at or prior to Closing, of any mortgage, deed of trust or other monetary lien created by Seller, and shall convey the Real Property to Buyer free of any such encumbrance.

7.3 If Seller shall be unable to, or elects (which discretion shall be at Seller's sole discretion) not to cure the Title Objections, then Seller shall advise Buyer, in writing, within five (5) business days after the receipt of notice of Title Objections of any objections which Seller determines that it will be unwilling or unable to cure at or prior to Closing. Seller's failure to respond within five (5) business days shall be deemed to mean that Seller has opted not to cure

Seller:______ Buyer: V[redacted]

the Title Objections. In the event that Seller advises Buyer of its inability or election not to cure one or more Title Objections after electing to cure the Title Objections, Buyer may, at its option either (a) elect to waive such Title Objections, or (b) terminate this Contract by written notice to Seller within five (5) Business Days after receipt of Seller's notice of inability or election not to cure such objections, in which event the Deposit shall be returned to the Buyer and the parties shall have no further liability hereunder. For purposes of this Contract, "Business Day" shall mean any day except Saturday, Sunday, or any other day on which commercial banks located in Virginia are authorized or required by law to be closed for business. In the event that the Buyer fails to terminate this Contract as set forth in this section, Buyer shall be deemed to have waived any and all Title Objections and shall then accept title to the Real Property as set forth in the title report.

7.4 Buyer acknowledges that Seller has pledged the Real Property as collateral under a certain Indemnity Deed of Trust ("IDOT") made in favor of United Bank, under which the Real Property is pledged to secure certain loans made to principals or related entities of the Seller. Seller agrees to use its best efforts prior to Closing hereunder to effect the full release of the IDOT and any other documents evidencing any encumbrance or lien granted to United Bank. Seller and Buyer agree and consent that Closing under this Contract is expressly contingent upon Seller's ability to effect and obtain the full release of such liens and encumbrances. Should Seller fail to obtain such releases on or before the Closing Cutoff Date, then this Contract shall automatically terminate, in which event the Deposit shall be returned to the Buyer and the parties shall have no further liability hereunder.

7.5 Buyer shall have a sixty (60) days period from the Effective Date (the "Financing Period") to obtain financing sufficient to fund payment of the sum of Six Million and no/100 Dollars ($6,000,000.00) of the Purchase Price. Buyer will immediately make application for, and will diligently pursue approval of, a commercial loan to be secured by Buyer's interest in the Property after Closing. In the event that Buyer is unable to close on such financing on or before the termination of the Financing Period, this Contract will automatically terminate, whereupon the Deposit shall be returned to Buyer by Escrow Agent and neither party shall have any further rights, liabilities or obligations hereunder, except for those obligations that expressly survive termination.

## ARTICLE VIII. ADJUSTMENTS, TAXES AND CLOSING COSTS

8.1 At Closing, all customary adjustments shall be made, including utility expenses and deposits, payroll taxes, personal property taxes, license fees, and other income and expense items, pertaining to the Property. Without limiting the generality of the foregoing, it is specifically agreed that:

(1) all operating receipts and expenses, utilities expenses, taxes, water and sewer rents, or similar charges or fees, condo fees, and inventories of supplies, if any, are to be adjusted as of 11:59:59 p.m. of the day preceding the date of Closing ("Adjustment Time"). Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the taxing authority in the jurisdiction in which the Real Property is situated;

Seller [redacted] Buyer [redacted]

(2) each party hereto shall be responsible for payment of their own respective attorney's fees.

(3) all service contracts shall be terminated as of Closing, and, as result (x) the same shall not be assigned to and assumed by Buyer at Closing, and (y) no adjustments shall be made between the parties related thereto provided that Seller shall fully pay all amounts due under such Service Contracts;

(4) any other costs or charges of closing this transaction not specifically mentioned in this Contract shall be paid and adjusted in accordance with local custom in the area in which the Real Property is located; and

(5) except as expressly provided herein, the purpose and intent as to the provisions of prorations and apportionments set forth in this Article VIII and elsewhere in this Contract is that Seller shall bear all expenses of ownership and operation of the Real Property and shall receive all income therefrom accruing through 11:59:59 p.m. of the day preceding the date of Closing and Buyer shall bear all such expenses and receive all such income accruing on the date of Closing and thereafter.

8.2 The costs of examination of title, the costs of title insurance covering Buyer's interest in the Real Property as the owner, and the tax or lien certificates, conveyancing, escrow and settlement fees, notary fees and recording charges shall be at the Buyer's sole expense.

8.3 Seller and Buyer shall each pay one-half (1/2) of all other state, county and local transfer and recordation taxes on the Deed. Seller and Buyer shall equally share the cost of recording any Deed of Trust loans. Seller shall be responsible for obtaining and recording releases promptly for any existing monetary liens (except to the extent caused by Buyer or Buyer's Agents) on the Real Property.

8.4 All real property taxes and all other public or governmental charges or assessments, general or special, against the Real Property which are or may be payable on an annual basis (including benefit charges, assessments, liens or encumbrances for sewer, water, drainage or other public improvements completed or commenced on or prior to the date hereof, or subsequent thereto) shall be pro-rated as of the date immediately preceding the Closing based upon the most recent assessment therefor as of the date of Closing. If any such assessment has not been received by the date of Closing, then such adjustment shall be based on the prior year's assessment, and when the current year's is received, the parties shall readjust their payments accordingly. The provisions of this paragraph shall survive Closing for a period of three (3) months.

8.5 Any utility company charges (electricity, gas, water, and sewer) accrued and payable by Seller based upon the last bill(s) therefor shall be adjusted as of the date immediately preceding the Closing. If any such bill(s) has not been received by the date of Closing, then such adjustment shall be based on the last such bill received, and when the bill is received, the parties shall readjust their payments accordingly. With respect to any adjustment relating to utilities, such as water, gas or electricity, if it is practical for Seller to obtain a reading of the meter of the

Seller ____ Buyer VG

utility consumption as of Closing, Seller shall do so, and in such case Seller shall pay directly to the utility provider the amount determined to be due as of Closing, instead of adjusting same with Buyer. The provisions of this paragraph shall survive Closing for a period of three (3) months.

## ARTICLE IX. GENERAL PROVISIONS

9.1 This Contract constitutes the sole, final and entire agreement and understanding of the parties hereto and supersedes all prior written or oral agreements. The parties shall not be bound by any terms, conditions, statements or representations, oral or written, not contained herein. This Contract may not be changed orally, but only by an agreement in writing signed and delivered by both parties.

9.2 No exercise or waiver, in whole or in part, of any right or remedy provided for in this Contract shall operate as a waiver of any other right or remedy, except as otherwise herein provided. No delay on the part of any party in the exercise of any right or remedy shall operate as a waiver thereof. Time is of the essence with respect to all the terms, conditions and provisions of this Contract.

9.3 The parties acknowledge and agree that they have not used the services of any agent, broker or consultant in this transaction. In the event any other agent or broker claims commission due from this transaction, the party through whom such claim is made shall indemnify and hold harmless the other from any costs, damages, and liabilities, including reasonable attorney's fees and costs incurred.

9.4 Seller shall assume all risk of loss due to fire or other casualty up to and including the date of Closing. If, at any time prior thereto, any portion of the Real Property is destroyed or damaged as a result of fire or any other cause whatsoever, Seller shall promptly give written notice thereof to Buyer. In the event that (a) the total cost to repair or restore such destruction or damage, as determined by Seller's insurance claim adjuster, exceeds $500,000.00, and/or (b) the estimated time to restore or repair such destruction or damage, as determined by Seller's insurance claim adjuster, exceeds one hundred eighty (180) days from the casualty date, Buyer shall have the right to terminate this Contract by written notice delivered to Seller within twenty (20) days following the date upon which Buyer receives Seller's written notice of the destruction or damage. If (i) such destruction or damage can be repaired or restored for $500,000.00 or less, and can be repaired in one hundred eighty (180) days or less from the casualty date, or (ii) the cost of such repair or restoration shall exceed $500,000.00, and/or the time to complete the repair and restoration of the Real Property shall exceed one hundred eighty (180) days from the casualty date, but Buyer does not elect to so terminate this Contract within said twenty (20) day period, then, in either such case, this Contract shall remain in full force and effect and the parties shall proceed to Closing without any reduction or adjustment in the Purchase Price, except that all insurance proceeds, if any, will be assigned to Buyer. Seller shall have no obligation or liability whatsoever for payment to Buyer of any amount related to deductibles under any such policies of insurance.

Seller ______ Buyer ______

occurred before the first (1st) anniversary of the Effective Date, then anything herein to the contrary notwithstanding, this Contract shall automatically be rendered null and void.

9.9 This Contract shall be governed by the laws of the Commonwealth of Virginia.

9.10 If any provision of this Contract or its application to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Contract or the application of such provision to such person or circumstances, other than those as to which it is so determined to be invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

9.11 Should either party hereto institute any action in court to enforce any provision hereof for damages by reason of any alleged breach of any provision of this Contract or for any other judicial remedy, the prevailing party shall be entitled to receive from the losing party all reasonable attorneys' fees and all court costs in connection with said proceeding and any costs incurred in the enforcement of such party's rights hereunder.

9.12 This Contract may be executed in counterparts, and all counterparts so executed shall constitute one purchase and sale agreement binding upon all of the parties hereto, notwithstanding that all of the parties are not signatory to the original or the same counterpart.

9.13 Seller and Buyer shall cooperate with each other as reasonably necessary to effect the provisions of this Contract, shall use reasonable and good faith efforts to satisfy conditions to Closing and, at and after Closing, shall each execute and deliver such additional instruments or other documents as the other may reasonably request to accomplish the purposes and intent of this Contract; provided, however, that nothing in this Section shall be deemed to enlarge the obligations of the parties hereunder or to require either Seller or Buyer to incur any material expense or liability not otherwise required of it hereunder.

9.14 Each party acknowledges that it and its legal counsel have participated substantially in the drafting of this Contract and agree that, accordingly, in the interpretation and construction of this Contract, no ambiguity, real or apparent, in any provision hereof shall be construed against either party by reason of the role of such party or its counsel in the drafting of such provision.

9.15 Indemnification.

(1) Seller shall defend, indemnify and hold harmless Buyer, its affiliates and their respective stockholders, directors, officers and employees from and against all damages, losses, claims, liabilities, demands, charges, suits, penalties, costs and expenses (including court costs and reasonable attorneys' fees and expenses incurred in investigating and preparing for any

Seller:________ Buyer:________

litigation or proceeding - collectively, "Losses") to the extent arising prior to or resulting from the sale and purchase of the Real Property.

(2) Buyer shall defend, indemnify and hold harmless Seller, its affiliates and their respective stockholders, directors, officers and employees from and against all Losses to the extent arising from or relating to claims arising after the sale and purchase of the Real Property.

(3) The party making a claim under this Section 9.16 is referred to as the "Indemnified Party", and the party against whom such claims are asserted under this this Section 9.16 is referred to as the "Indemnifying Party."

(i) If any Indemnified Party receives notice of the assertion or notice of the commencement of any Action made or brought by any person who is not a party to this Contract or an affiliate of a party to this Contract or a representative of the foregoing (a "Third Party Claim") against such Indemnified Party with respect to which the Indemnifying Party is obligated to provide indemnification under this Contract, the Indemnified Party shall give the Indemnifying Party reasonably prompt written notice thereof, but in any event not later than 30 calendar days after receipt of such notice of such Third Party Claim. The failure to give such prompt written notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reason of such failure. Such notice by the Indemnified Party shall describe the Third Party Claim in reasonable detail, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Losses that have been or may be sustained by the Indemnified Party. The Indemnifying Party shall have the right to participate in the defense of any Third Party Claim at the Indemnifying Party's expense and by the Indemnifying Party's own counsel. The Indemnifying Party shall cooperate with the Indemnified Party in all reasonable respects in connection with the defense of any Third Party Claim, including making available records relating to such Third Party Claim.

(iv) All indemnification payments made under this Contract shall be treated by the parties as an adjustment to the Purchase Price for Tax purposes, unless otherwise required by Law.

SIGNATURES ON FOLLOWING PAGE

Seller: ____ Buyer: ____

9.5 Any and all notices, requests or other communications required or permitted hereunder shall be deemed to have been duly given only if in writing and if transmitted by (i) hand delivery (with receipt), or (ii) reputable overnight delivery service, with request for next business day delivery, addressed as follows:

TO SELLER: Judicial Drive Property Holding, LLC<br>14 Pidgeon Hill Drive, Ste. 270<br>Sterling, Virginia 20165<br>571-643-8256

WITH A COPY TO: Kevin M. O'Donnell<br>300 N. Washington Street, Suite 204<br>Alexandria, Virginia 22314<br>703-548-2100<br>kmo@henrylaw.com

TO BUYER: **BNG GROUP, LLC**<br>2 Pidgeon hill Dr Suite 120<br>Sterling VA 20165<br>jacob@ariamedispa.com

WITH A COPY TO: Andrei J. Kublan, Esquire<br>Kublan Khan PLC<br>6521 Arlington Boulevard, Suite 201<br>Falls Church VA 22042<br>703-854-1081<br>andrei@kublankhan.com

Any notice shall be deemed to have been given and received on the date of delivery indicated on the return receipt or signed receipt.

9.6 This Contract and all of the provisions hereof shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, devisees, legatees, legal representatives, successors and permitted assigns.

9.7 This Contract may be not be assigned by Buyer except with the consent of Seller, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, should either Buyer or Seller desire to structure the transactions contemplated by this Contract as a tax-deferred exchange pursuant to Section 1031 of the Internal Revenue Code, then the other party shall cooperate in all reasonable respects (but at no expense to the cooperating party) in order to effect such exchange including, without limitation, by consenting to an assignment of this Contract to an exchange intermediary. In no event shall either party be required to consent to a delay of the Closing in order to allow the other party to effect such exchange.

9.8 Seller and Buyer agree that this Contract shall not be recorded. Solely for purposes of compliance with the Rule Against Perpetuities, in the event that Closing hereunder shall not have

Seller: ______ Buyer: ______

IN WITNESS WHEREOF, the parties have executed this Contract of Sale under seal on the day and year first above written.

WITNESS:

_______________________

BUYER: BNG GROUP, LLC
By: Valeria Gunkova, its

Valeria V Gunkova (SEAL)
By:
Name: VALERIA GUNKOVA
Title: president

STATE/COMMONWEALTH OF VA
CITY/COUNTY OF Fairfax to wit:

I HEREBY CERTIFY that on this the 6th day of March, 2020 ~~2019~~, before me, the Subscriber, a Notary Public in and for the jurisdiction aforesaid, personally appeared Valeria, V. the Gunkova of **SKIN LOGIC, LLC,** personally well known to me (or proven satisfactorily) to be the person who executed the foregoing instrument, and acknowledged that he, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[Seal]

FATIMA EL-HAGE
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JAN. 31, 2021
COMMISSION # 243437

Fatima El Hage
Notary Public
Name: Fatima El Hage

Notary Registration Number: 243437
My Commission Expires: Jan 31, 2021

WITNESS:

SELLER: JUDICIAL DRIVE PROPERTY HOLDING, LLC

_________________________________

_________________________________(SEAL)
By:
Name:
Title:

STATE/COMMONWEALTH OF __________

CITY/COUNTY OF _____________ to wit:

I HEREBY CERTIFY that on this the ___ day of ____________, 2019, before me, the Subscriber, a Notary Public in and for the jurisdiction aforesaid, personally appeared _____________, the _____________ of **JUDICIAL DRIVE PROPERTY HOLDING, LLC,** personally well known to me (or proven satisfactorily) to be the person who executed the foregoing instrument, and acknowledged that he, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[Seal]

___________________________
Notary Public

Name:_______________________

Notary Registration Number: ___________________

My Commission Expires: __________________

Escrow Agent hereby joins in the foregoing Contract of Sale solely for the purpose of acknowledging and consenting to the provisions of Section 2.1 thereof regarding the Deposit.

<u>ESCROW AGENT</u>:

STEWART TITLE AND ESCROW, INC.

______________________________

By:
Name:
Title: