EXHIBIT

D

Atlantic Union Bank

# CERTIFICATION OF BENEFICIAL OWNER(S)

**Persons opening an account on behalf of a legal entity must provide the following information:**

A. Name and Title of the person certifying this form:

HARRY D. KAMIN — [Name]

MEMBER — [Title]

B. Name, Type (from the dropdown list), and Address of the legal entity for which the account is being opened:

| [Entity Name] | [Type] | [Physical Address] |
|---|---|---|
| BNG GROUP LLC | 7. Limited Liability Company (LLC) | 2 PIDGEON HILL DRIVE, SUITE 100<br>STERLING, VA 22102 |

C. Select an option from the dropdown list here →: 1. Not Exempt; Sections D & E Required

D. Enter the following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:

| Name | Ownership % | Date of Birth | Physical Address (Residential or Business Street Address) | For U.S. Persons (Social Security #) | For Non-U.S. Persons[1] (See footnote below.) |
|---|---|---|---|---|---|
| HARRY D. KAMIN | 50% | 04/20/1946 | 2 PIDGEON HILL DRIVE, SUITE 100 STERLING, VA 22102 | [redacted] | |
| VALERIA V. GUNKOVA | 50% | 01/06/1978 | 2 PIDGEON HILL DRIVE, SUITE 100 STERLING, VA 22102 | [redacted] | |
| | | | | | |
| | | | | | |

☐ Select if no individual owns more than 25 percent

E. Enter the following information for one individual with significant responsibility for managing the legal entity listed above. The individual may be one of the following:

- An executive officer or senior manager (e.g.; Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or
- Any other individual who regularly performs similar functions.

(If appropriate, an individual listed under section (D) above may also be listed in this section (E)).

| Name | Title | Date of Birth | Physical Address (Residential or Business Street Address) | For U.S. PersonsError! Bookmark not defined. | For Non-U.S. Persons[1] |
|---|---|---|---|---|---|
| HARRY D. KAMIN | MEMBER | 04/20/1946 | 2 PIDGEON HILL DRIVE, SUITE 100 STERLING, VA 22102 | [redacted] | |

F. I, HARRY D. KAMIN *Harry D Kamin*, hereby certify, to the best of my knowledge, that the information provided above is complete and correct. I agree to promptly notify this institution of any change to this information.

X *Harry D Kamin* 10/30/20

[1] Non-U.S. persons must provide a Social Security number, passport number and country of issuance, or similar identification number. In lieu of a passport number, Non-U.S. persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

**RESOLUTIONS OF MEMBERS OF**
**BNG GROUP LLC**

THESE RESOLUTIONS are made as of this 30 day of October, 2020 by **HARRY KAMIN** and **VALERIA GUNKOVA**, being all the members of **BNG GROUP LLC**, a Virginia limited liability company (the "Company ").

**WITNESSETH**

WHEREAS, it is desired by the undersigned, being all members of the Company that they, pursuant to a written operating agreement dated February 20, 2020, be empowered and authorized to execute and deliver contracts of sale, notes, deeds of trust, settlement statements and similar transaction documents related to the purchase and encumbrance by the Company of the property known as 2 Pidgeon Hill Drive, Sterling, VA 20165 (the "Property").

NOW, THEREFORE, BE IT RESOLVED, that the undersigned are hereby empowered and authorized to execute and deliver on behalf of the Company contracts of purchase and sale, notes, deeds of trust, settlement statements, and similar transaction documents related to the purchase and encumbrance of the Property by the Company and to take all other actions, in their reasonable discretion, as may be necessary to effectuate and consummate such transactions for the benefit of the Company;

AND BE IT FURTHER RESOLVED, that the undersigned are hereby authorized on behalf of the Company, to enter into a Loan and Security Agreement (the "Loan Agreement") providing for the borrowing by the Company of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** from **ATLANTIC UNION BANK** (the "Bank") and to execute the Company's note to the order of the Bank in the amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Note");

AND BE IT FURTHER RESOLVED, that to secure the Note, the undersigned are hereby authorized, empowered, and directed to execute and deliver a Deed of Trust, Assignment of Rents and Security Agreement (the "Deed of Trust") on the Property, and to execute and deliver such other and further documents as they shall determine to be necessary and proper to evidence and secure such loan as shall be requested by the Bank, and all of the foregoing, including the Note, Deed of Trust and Loan Agreement, in the name of the Company;

AND BE IT FURTHER RESOLVED, that any such documents or instruments executed and delivered by the undersigned, or any such actions taken by the undersigned on behalf of the Company, are hereby ratified and confirmed, and all such acts are adopted as the Company's own;

AND BE IT RESOLVED FURTHER, that any such instrument, executed by the undersigned on behalf of the Company and recorded among the land records of the County of Loudoun, Virginia, shall be conclusive evidence of the consent and authorization of all the members of the Company to the conveyance, encumbrance, or action set forth in said instrument

until and unless a new resolution executed by the members shall be so recorded.

IN WITNESS WHEREOF, the undersigned, being all the members of the Company, have executed this resolution effective as of the date first above written.

Harry D Kamin (SEAL)
HARRY KAMIN

Valeria Gunkova (SEAL)
VALERIA GUNKOVA

# LOAN AND SECURITY AGREEMENT

**THIS LOAN AND SECURITY AGREEMENT** ("Agreement") made this 30th day of October, 2020, by and between **BNG GROUP LLC**, a Virginia limited liability company ("Borrower"); **ATLANTIC UNION BANK** ("Lender"); and **HARRY KAMIN** and **VALERIA GUNKOVA** ("Guarantor").

## WITNESSETH

THAT, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1 Specific Definitions. The following terms have the following definitions (each definition is equally applicable to the singular and plural forms of the terms used, as the context requires):

"***Accounts***" means any and all deposit accounts, operating accounts, savings accounts and other accounts of Borrower with Lender.

"***Appraisal***" shall mean and refer to a report of value, and/or any updated report of value, in a form and substance acceptable to Lender in its sole and absolute discretion in connection with the Property and executed by a licensed professional appraiser, which: (i) establishes the present "as-is market value of the Property; and (ii) conforms in every particular with the appraisal standards established by the Lender and pursuant to 12 C.F.R. 564, as may be amended from time to time, and any and all other applicable memorandum, rule, regulation, act or order of the FDIC relating to appraisal practices, standards and procedures.

***"Bank Secrecy Act"*** means, collectively, the Bank Secrecy Act as set forth in 31 U.S.C. 5311, *et seq.*, and the regulations promulgated thereunder.

***"Closing"*** means the execution and delivery of this Agreement and the other Loan Documents. The date of Closing is the date reflected on this Agreement, even if this Agreement is executed and delivered on some other date.

***"Collateral"*** means all of the now owned and hereafter acquired assets, properties and property rights of Borrower with respect to which Borrower has at any time granted a security interest or lien to Lender or has at any time otherwise assigned or pledged to Lender as security for any of the Obligations, including, but not limited to the Property and the Accounts.

***"Debt Service Coverage Ratio"*** or "***DSCR***" shall mean and refer to the ratio of Borrower's Net Cash Flow to Borrower's Debt Service. For the purpose of defining DSCR, "***Net Cash Flow***" shall mean and refer to Borrower's net rental income derived from the Property, including

management fees of 4% of gross rents if not already included in actual expenses and replacement reserves of $0.15 per square foot of rentable space within the Property plus, to the extent deducted in determining net income, depreciation, amortization and all other non-cash charges, any non-customary expenses and interest expense and "***Debt Service***" shall mean and refer to all annual principal and interest payments due on Borrower's current maturities of long term debt secured by the Property.

"***Event of Default***" or "***Events of Default***" shall have the meanings ascribed in Article V below.

"***G.A.A.P.***" means, with respect to any date of determination, generally accepted accounting principles as used by the Financial Accounting Standards Board and/or the American Institute of Certified Public Accountants consistently applied and maintained throughout the periods indicated.

"***Liquid Assets***" shall mean unencumbered cash and marketable securities.

"***Loan***" means the **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** purchase money loan being provided by Lender to Borrower pursuant to the terms of this Agreement and the Loan Documents, as the same may be amended, modified, extended, renewed, supplemented, restated or replaced from time to time.

"***Loan Documents***" means this Agreement; the Promissory Note of even date herewith from Borrower to Lender in the amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "*Note*"); the Deed of Trust, Assignment of Rents and Security Agreement of even date herewith from Borrower to the trustees therein named for the benefit of Lender (the "***Deed of Trust***"); the Assignment of Rents and Leases of even date herewith from Borrower to Lender; the Guaranty and Indemnification Agreement of even date herewith from Guarantor in favor of Lender; and all other documents evidencing, securing, guaranteeing and/or otherwise documenting the terms and conditions of the Loan, together with all extensions, renewals, amendments and modifications thereof and substitutions therefor.

"***Loan-To-Value Ratio***" or "***LTV***" shall mean and refer to the ratio between the principal amount of the Loan advanced and outstanding at any time during the term of the Loan to the value of the Property as shown on an Appraisal.

"***Maturity Date***" means such date that is five (5) years from the date of Closing.

"***Obligations***" means collectively the obligations of Borrower to pay to Lender: (i) any and all sums due to Lender under or pursuant to the Loan or otherwise under the terms of this Agreement or any accompanying Loan Documents; (ii) any and all sums advanced by Lender to preserve or protect the Collateral or to preserve, protect, or perfect Lender's security interests and liens in the Collateral; (iii) the expenses of retaking, holding, preparing for sale, selling or otherwise disposing of or realizing on the Collateral, or of any exercise by Lender of Lender's rights upon the occurrence of an Event of Default by Borrower, together with Lender's attorneys'

fees, expenses of collection, and court costs; and (iv) any other indebtedness or liability of Borrower to Lender, whether direct or indirect (by way of endorsement, guaranty, pledge or otherwise), liquidated or unliquidated, joint or several, absolute or contingent, contemplated or uncontemplated, or otherwise arising from any loan, note, letter of credit, guaranty, overdraft, or any other duty owed by Borrower to Lender, now existing or hereafter arising.

***"Other Obligor"*** means Guarantor and/or any person or entity other than Borrower that is now or hereafter liable, directly, contingently or otherwise, upon or in connection with any of the Obligations or that has granted any lien or security interest to or for the benefit of Lender to secure any of the Obligations, including, but not limited to, any guarantor, surety, endorser, or co-maker of any of the Obligations.

***"Property"*** means that certain real property and improvements thereon located at 2 Pidgeon Hill Drive, Sterling, VA 20165.

***"Reserve Account"*** means the account being set up and held by Lender relative to the certain deferred repairs on the HVAC system within the Property, all as more particularly described in Section 8.7 hereof.

Section 1.2 Accounting Terms. The accounting terms used in this Agreement have the meanings customarily given them in accordance with G.A.A.P., unless this Agreement expressly provides a different meaning.

## ARTICLE II
## BASIC TERMS OF LOAN

Section 2.1. Loan. Lender shall advance to Borrower as the Loan, the principal sum of $7,360,000.00. Borrower shall use the proceeds of the Loan only for the purchase of the Property and costs associated therewith. If not sooner paid, all amounts owed under the Loan are due and payable in full on the Maturity Date.

Section 2.2. Evidence of Loan; Terms of Repayment; Statement of Account. The interest rates on the Loan and the method of calculating interest upon the Loan, the term of the Loan, the method and times of repayment, and other conditions pertaining to the repayment of the Loan shall be evidenced by the Note or as otherwise set forth in appropriate writings between the parties as determined by Lender. The Loan shall be deemed to be conclusively evidenced by Lender's record of advances of proceeds of the Loan and Lender's record of receipt of repayments and other bookkeeping entries reflecting the payment of principal and interest, and interest shall be deemed to accrue at the interest rate(s) reflected in the Note. Lender may at any time or from time to time render a statement or statements of account to Borrower for the Obligations or any portion thereof. Each such statement shall be deemed to be correct and conclusively binding on Borrower unless Borrower notifies Lender to the contrary in writing within thirty (30) days from the date of any such statement which Borrower deems to be incorrect.

Section 2.3. Security Interest. As security for the payment and performance of all of the Obligations, whether or not any instrument or agreement relating to any Obligation specifically

refers to this Agreement or the security interest created hereunder, Borrower hereby assigns, pledges and grants to Lender a continuing security interest in the Collateral. Lender's security interest shall continually exist until all Obligations have been paid in full. Upon the occurrence of any Event of Default, Lender is authorized to charge the sum then due to Lender against any and all monies held by or on deposit with Lender in the Accounts, and to offset any amounts against the Accounts and to enforce such other remedies as may be available at law or in equity, without necessity of election. It is the intent of this Agreement that Lender shall have "control" (as that term is defined in Article 9 of the Uniform Commercial Code currently in effect in the Commonwealth of Virginia) over the Accounts and the funds contained therein as a result of the execution of this Agreement, and that Lender shall have a perfected security interest in the Accounts and the funds contained therein.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants that:

Section 3.1. Accuracy. All information, financial statements and data submitted to Lender by Borrower or any Other Obligor are true, accurate and complete in all material respects.

Section 3.2. Authority. Borrower is duly organized and existing in good standing in the state of its organization, is qualified to do business and in good standing in all jurisdictions where it conducts its business, and has all requisite power, authority, licenses and permits to own its property and carry on its business, and Borrower shall deliver to Lender a written opinion of counsel to such effect if requested by Lender. None of the terms and conditions herein, or of any other agreement executed by Borrower, are in violation of the charter or by-laws, or other organizational documents of Borrower, any contractual obligation Borrower may have with any third party, or any order or decree by which Borrower is bound, and the execution and delivery of this Agreement have been duly authorized by appropriate corporate, company or partnership action.

Section 3.3. Litigation. No litigation or other proceeding before any court or administrative agency is pending, or to the knowledge of Borrower, is threatened against Borrower, the outcome of which could materially impair Borrower's financial condition or its ability to carry on its business. Borrower is not the subject of any pending bankruptcy proceeding nor subject to the continuing jurisdiction of a bankruptcy court as the result of an approved plan of reorganization.

Section 3.4. Addresses. The principal place of business of Borrower and the books and records relating to Borrower's business are located at the address(es) set forth in this Agreement.

Section 3.5. Hazardous Substances. Borrower has never received any notification, citation, complaint or notice of investigation relating to the making, storing, handling, generating or transporting of any materials or substances which under applicable laws require special handling in collection, storage, treatment or disposal ("Hazardous Substances"), and Borrower does not

own, make, store, handle, dispose of or transport any Hazardous Substances in violation of any applicable laws.

Section 3.6. Taxes. There are no unpaid Federal, State, city, county, or other taxes owed by Borrower, there are no Federal, State, city, county or other tax liens presently filed against Borrower, and there are no outstanding personal property taxes of any kind.

Section 3.7. USA PATRIOT Act. Neither Borrower nor any affiliate of Borrower or any Guarantor is identified in any list of known or suspected terrorists published by any United States government agency, including, without limitation, (i) the annex to Executive Order 13224 issued on September 23, 2001 by the President of the United States and (ii) the Specially Designated Nationals List published by the United States Office of Foreign Assets Control.

Section 3.8. OFAC. Neither Borrower nor any of its members, shareholders, officers or directors (i) is a "Sanctioned Person" (as defined below), (ii) has any of its assets in "Sanctioned Countries" (as defined below), or (iii) derives any of its operating income from investments in, or transactions with, Sanctioned Persons or Sanctioned Countries. No part of the proceeds of the Loan hereunder will be used directly or indirectly to fund any operations in, finance any investments or activities in or make any payments to a Sanctioned Person or a Sanctioned Country or for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended and in effect from time to time. Sanctioned Country shall mean a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treasury.gov/resource-center/sanctions/Pages/default.aspx, or as otherwise published from time to time. Sanctioned Person shall mean (i) a Person named on the list of "Specially Designated Nationals and Blocked Persons" maintained by OFAC available at http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC.

## ARTICLE IV
## COVENANTS

Borrower covenants that:

Section 4.1. Costs. Borrower shall pay all costs and expenses incident to the making of the Loan including, but not limited to, all attorneys' fees.

Section 4.2 Further Documents. Borrower shall execute and deliver to Lender from time to time any instruments or documents, including, but not limited to, estoppel certificates, subordination agreements, financing statements, amendments, continuation statements, deeds of trust, loss payable endorsements for insurance policies, and assignments of insurance policies and proceeds, and shall do all things necessary or convenient to carry into effect the provisions of this

Agreement. Borrower designates Lender or any of its officers as attorney-in-fact to sign Borrower's name on any such instruments or documents, and to file the same as may be appropriate.

Section 4.3 Taxes. Borrower shall pay and discharge, when due, all taxes, levies, liens, and other charges on any of its assets and shall pay promptly, when due, all other taxes, including withholding taxes.

Section 4.4 Laws. Borrower shall comply at all times with all laws, ordinances, rules and regulations of any Federal, State, municipal or other public authorities having jurisdiction over Borrower, the Collateral or any of Borrower's other assets, including, but not limited to, all laws relating to Hazardous Substances.

Section 4.5 Name and Location. Borrower shall immediately advise Lender in writing of the opening of any new place of business or the closing of any of its existing places of business, and of any change in Borrower's name or the location of the places where the Collateral, or books and records pertaining to the Collateral, are kept.

Section 4.6 Books and Records. Borrower shall maintain such records with respect to the Collateral and the condition (financial and otherwise) and operation of Borrower's business as Lender may request from time to time, and shall furnish Lender such information with respect to the Collateral and the condition (financial and otherwise) and operation of Borrower's business, including, but not limited to, balance sheets, operating statements, and other financial information, as Lender may request from time to time. Borrower shall furnish Lender or cause to be furnished to Lender such financial information with respect to any Other Obligor, including, but not limited to, balance sheets, operating statements, personal financial statements and other financial information, as Lender may request from time to time.

Section 4.7 Inspection. Lender or any of its representatives may from time to time inspect, check, make copies of or extracts from the books, records and files of Borrower, and inspect any of the Collateral wherever located. Borrower shall make same available at any time for such purposes.

Section 4.8 Misrepresentation. Borrower shall not make or furnish Lender any representation, warranty, or certificate in connection with or pursuant to this Agreement which is materially false.

Section 4.9 Insurance. Borrower has and shall maintain insurance on the Collateral at all times and against hazards, with companies, in amounts and in form acceptable to Lender, all as more particularly set forth in the Deed of Trust. Borrower shall submit to Lender original insurance policies and receipts evidencing payment of the premiums due on same.

Section 4.10 Further Covenants. Without the prior written consent of Lender, Borrower shall not: (i) pledge or grant any security interest in any Collateral to anyone except Lender, nor permit any financing statement (except Lender's financing statement) to be on file in any public office with respect thereto; (ii) permit or suffer any lien, levy or other encumbrance to attach to

any of the Collateral, except for liens and encumbrances in favor of Lender; (iii) make any agreement, compromise, settlement, bulk sale, lease or transfer of assets other than in the normal course of business; (iv) create, incur or assume any liability for borrowed money, except borrowings from Lender; or (v) enter into any merger or consolidation, or sell or lease substantially all of its assets.

## ARTICLE V
## EVENTS OF DEFAULT

Each of the following shall constitute an Event of Default hereunder:

Section 5.1 Failure To Pay. A failure by Borrower or any Other Obligor to pay any of the Obligations when the same are due and payable.

Section 5.2 Failure To Perform. A failure by Borrower to perform or observe any of the covenants and agreements of this Agreement and such failure (which, in the Lender's sole, absolute and subjective discretion, is capable of being cured) is not cured within thirty (30) calendar days following the giving of notice thereof by Lender to Borrower; provided however, if such failure, Lender believes in its sole, absolute and subjective discretion, cannot be cured within such 30-day period, such 30-day period may be extended if: (i) Borrower is diligently pursuing cure of the applicable default, (ii) Lender, in its sole, absolute and subjective discretion, believes that the applicable default can be cured by Borrower to the complete satisfaction of the Lender, and (iii) the occurrence of the applicable default has not impaired the security of the Loan. The contrary notwithstanding, no notice or cure period shall be provided if the Event of Default is based upon a willful or material misrepresentation at any time by Borrower to Lender or otherwise by Borrower in connection with the Loan or the advance (or readvance) of proceeds of the Loan.

Section 5.3 Failure To Perform Under the Loan Documents. A failure by Borrower or any Other Obligor to perform or observe any of the terms, covenants, conditions, and provisions of any of the Loan Documents or any default under any terms, covenants, conditions and provisions of any of the Loan Documents, and the expiration of any applicable cure period.

Section 5.4 Representations and Warranties. Any warranty, representation, or statement made to Lender by or on behalf of Borrower or any Other Obligor proving to have been incorrect in any material respect when made or furnished.

Section 5.5 Financial Condition. A determination by Lender in good faith, but in its sole discretion, that the financial condition of Borrower or any Other Obligor is unsatisfactory; insolvency of Borrower or any Other Obligor; suspension of business, or commission of an act amounting to business failure by Borrower or any Other Obligor; or a determination by Lender in good faith, but in its sole discretion, that the ability of Borrower or any Other Obligor to pay any of the Obligations is impaired for any reason.

Section 5.6 Assignments. Any assignment made by Borrower or any Other Obligor for the benefit of creditors.

Section 5.7 Judgments; Awards. The entry of any judgment, order, award or decree against Borrower, any Guarantor or Other Obligor and a determination by Lender, in good faith but in its sole discretion, that the same, when aggregated with all other judgments, orders, awards and decrees outstanding against Borrower, any Guarantor or Other Obligor, could have a material adverse effect on the prospect for Lender to fully and punctually realize the full benefits conferred on Lender by this Agreement.

Section 5.8 Involuntary Bankruptcy. The filing of a petition by one or more creditors of the Borrower seeking: (a) the entry of a decree or order for relief by a court having jurisdiction against or with respect to Borrower in an involuntary case under the federal bankruptcy laws or any state insolvency or similar laws ordering the liquidation of Borrower; or (b) a reorganization of Borrower or Borrower's business and affairs or the appointment of a receiver, liquidator, assignee, custodian, trustee, or similar official for Borrower or any of Borrower's property, including but not limited to the Property, and such petition is not unconditionally dismissed within sixty (60) days from the date of filing.

Section 5.9 Voluntary Bankruptcy. The commencement by Borrower of a voluntary case under the federal bankruptcy laws or any state insolvency or similar laws or the consent by Borrower to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian or similar official for Borrower or any of Borrower's property, including but not limited to the Property, or the making by Borrower of an assignment for the benefit of creditors, or the failure by Borrower generally to pay Borrower's debts as they become due.

Section 5.10 Extraordinary Acts. A change of ownership or the sale, dissolution, merger, consolidation, liquidation or reorganization of Borrower.

Section 5.11 Attachments. The levy upon or attachment of any property of Borrower or any Other Obligor, or the recordation of any Federal, State or local tax lien against Borrower or any Other Obligor.

Section 5.12 Reserved.

Section 5.13 Cross-Default. The occurrence of any event which is, or would be with the passage of time or the giving of notice or both, a default under any indebtedness of Borrower or any Other Obligor to Lender or to any person other than Lender.

Section 5.14 Loss or Damage. Any material loss, theft or substantial damage to any of the Collateral not insured for the benefit of Lender pursuant to the terms of the Loan Documents.

Section 5.15 Financial Information. The failure of Borrower or any Other Obligor to furnish Lender such financial information as Lender may require from time to time.

Section 5.16 Other Default. The failure of Borrower to provide information related to the Bank Secrecy Act including, but not limited to, all information with regards to Beneficial Ownership of the Borrower.

## ARTICLE VI
## REMEDIES

Section 6.1 Specific Rights and Remedies. In addition to all other rights and remedies provided by law and the Loan Documents, Lender, during the existence of an Event of Default, may: (i) accelerate and call due and payable any and all of the Obligations, including all principal, accrued interest and other sums due as of the date of default; (ii) impose the default rate of interest provided in the Note, with or without acceleration; (iii) file suit against Borrower or against any Other Obligor; and/or (iv) seek specific performance or injunctive relief to enforce performance of the Obligations, whether or not a remedy at law exists or is adequate.

Section 6.2 Costs of Collection. After the occurrence of an Event of Default, Lender shall be entitled to recover from Borrower its reasonable attorneys' fees actually incurred, plus court costs and other expenses which may be incurred by Lender in the enforcement or attempted enforcement of its rights hereunder, whether against any third party, Borrower, or any Other Obligor. Expenses recoverable from Borrower shall (to the extent not prohibited by law) include costs of collection including salaries, out-of-pocket travel expenses and the hiring of agents, consultants, accountants, or otherwise. All sums of money thus expended shall be repayable by Borrower to Lender on demand.

Section 6.3 Offset. During the existence of an Event of Default, Lender is authorized to charge the sum then due to Lender against any and all monies held by or on deposit with Lender on account of Borrower, and to offset any amounts against any Accounts which Borrower, may have with Lender and to enforce such other remedies as may be available at law or in equity, without necessity of election.

Section 6.4 Alternative Remedies. Lender may exercise its rights and remedies hereunder either alternatively or concurrently with its rights under any and all other agreements between Lender and Borrower and shall have the full right to realize upon all available Collateral, collecting on the same or instituting proceedings in connection therewith, until Lender receives payment in full of all amounts owing to Lender under any of its agreements with Borrower, including principal, interest, costs and expenses, and costs of enforcement or attempted enforcement of this or any other agreement among or between Lender and Borrower or any Other Obligors. Lender shall be under no obligation to pursue Lender's rights against any Other Obligor or any of the collateral of any Other Obligor securing any of the Obligations before pursuing Lender's rights against Borrower, or the Collateral.

## ARTICLE VII
## GENERAL PROVISIONS

Section 7.1 Loan Costs. All fees incurred in connection with the Loan and the Loan Documents including, without limitation, the Lender's reasonable counsel fees, title insurance premiums, insurance premiums, recordation costs, costs of surveys, costs of transfer taxes and documentary stamps, photocopying expenses, appraisals, the fees of architects, professional engineers and inspectors, travel expenses for the Lender's agents, employees, counsel, inspectors,

architects, and engineers, and all other expenses shall be paid by the Borrower, whether incurred prior to or after Closing, such that the Loan shall be cost free to the Lender.

Section 7.2 Incorporation. The terms and conditions of the Loan Documents are incorporated by reference and made a part hereof as if fully set forth herein. In the event of any inconsistencies between this Agreement and any other Loan Document, such inconsistencies shall be construed, interpreted, and resolved so as to benefit the Lender, independent of whether this Agreement or another Loan Document controls, and the Lender's election of which interpretation or construction is for the Lender's benefit shall govern.

Section 7.3 Notices. Any notice required or permitted by or in connection with this Agreement shall be in writing and shall be made by hand delivery, by Federal Express, or other similar overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to the respective parties at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by the respective parties. Notice shall be considered given as of the date of hand delivery, one (1) business day after delivery to Federal Express or similar overnight delivery service, or three (3) business days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was given as provided herein. If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given and shall be effective as of the date herein provided.

| | |
|---|---|
| If to BORROWER: | BNG GROUP LLC<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |
| If to the LENDER: | ATLANTIC UNION BANK<br>5803 Rolling Road<br>Springfield, VA 22152<br>Attn: Anthony Wininger |
| With a copy to: | Vincent J. Keegan, Esquire<br>Keegan & DeVol, PLC<br>8280 Greensboro Drive, Suite 710<br>McLean, VA 22102 |
| If to the GUARANTOR: | HARRY KAMIN<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |
| and to: | VALERIA GUNKOVA<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |



GUNKOVA_000192

Section 7.4 Waivers. The Lender may at any time or from time to time waive all or any rights under this Agreement or any other Loan Document, but any waiver or indulgence by the Lender at any time and from time to time shall not constitute, unless specially so expressed by the Lender in writing (except to the extent an express waiver need not be in writing under the provisions of another section of this Agreement), a future waiver of performance or exact performance by the Borrower.

Section 7.5 No Third Party Beneficiary Rights. No person not a party to this Agreement shall have any benefit hereunder nor have third party beneficiary rights as a result of this Agreement or any other Loan Documents, nor shall any party be entitled to rely on any actions or inactions of the Lender or the Lender's agents, all of which are done for the sole benefit and protection of the Lender. The Lender shall not be deemed a partner or joint venture with the Borrower.

Section 7.6 Continuing Obligation Of Borrower. The terms, conditions, and covenants set forth herein and in the Loan Documents shall survive Closing and shall constitute a continuing obligation of the Borrower during the course of the Loan.

Section 7.7 Binding Obligation. This Agreement shall be binding upon the parties and their successors, personal representatives, and assigns.

Section 7.8 Final Agreement. This Agreement and the Loan Documents contain the final and entire agreement and understanding of the parties, and any terms and conditions not set forth in this Agreement or the Loan Documents are not a part of this Agreement and the understanding of the parties hereto.

Section 7.9 Amendment. This Agreement may be amended or altered only in writing signed by the party to be bound by the change or alteration.

Section 7.10 Time. Time is of the essence of the Borrower's obligations under this Agreement.

Section 7.11 Choice Of Law. The laws of the Commonwealth of Virginia (excluding, however, conflict of law principles) shall govern and be applied to determine all issues relating to this Agreement and the rights and obligations of the parties hereto, including the validity, construction, interpretation, and enforceability of this Agreement and its various provisions and the consequences and legal effect of all transactions and events which resulted in the execution of this Agreement or which occurred or were to occur as a direct or indirect result of this Agreement having been executed.

Section 7.12 Consent To Jurisdiction/Agreement As To Venue. The Borrower irrevocably consents to the non-exclusive jurisdiction of the courts of the Commonwealth of Virginia and the United States District Courts for the Eastern District of Virginia (Alexandria Division), if a basis for federal jurisdiction exists. The Borrower agrees that venue shall be proper in any circuit court of the Commonwealth of Virginia selected by the Lender or in the United States District Court for the Eastern District of Virginia (Alexandria Division) if a basis for federal

jurisdiction exists and waives any right to object to the maintenance of a suit in any of the aforementioned state or federal courts within the Commonwealth of Virginia on the basis of improper venue or of inconvenience of forum.

Section 7.13 Number, Gender, And Captions. As used herein, the singular includes the plural and the plural the singular. The use of any gender applies to all genders. The captions contained herein are for purposes of convenience only and are not a part of this Agreement.

Section 7.14 No Assignment. The Borrower shall have no rights of assignment or substitution with respect to the Loan or any of the Loan Documents.

Section 7.15 Participations/Release Of Information. This Agreement, the Loan, and any other loan or documentation connected with or contemplated by this transaction may be placed, assigned, serviced or participated out (either in whole or in part) by the Lender, its successors and assigns. The Borrower and the Guarantor hereby grant the Lender their unlimited and unconditional consent to the disclosure and dissemination of financial records, including without limitation loan application and account information, statements of deposit and share accounts, negotiable instruments, individual, corporate and partnership financial statements, credit references and histories, property appraisals, surveys, pro forma assumptions, profit and loss statements, resumes, accounting reports, balance sheets, and other financial information provided to the Lender by or on behalf of the Borrower or the Guarantor, to prospective participants in or purchasers of the Loan, the Lender's auditors and the Lender's governmental regulators as the Lender, in its sole discretion, from time to time deems necessary or proper. The Borrower and the Guarantor further release, acquit and forever discharge the Lender and its agents from all liability, claims, actions, or causes of action for disclosure of confidential financial records under any applicable federal or state statute or common law.

Section 7.16 Invalidity Of Any Part. If any provision or part of any provision of this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality or unenforceability.

Section 7.17 Waiver Of Trial By Jury. The Borrower agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by or against either party hereto or any successor or assign of any party on or with respect to this Agreement or any of the other Loan Documents or which in any way relates, directly or indirectly, to the Loan or any event, transaction, or occurrence arising out of or in any way connected with the Loan, or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. THE BORROWER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING. The Borrower acknowledges and agrees that this provision is a specific and material aspect of the agreement between the parties and that the Lender would not enter into the transaction with the Borrower if this provision were not part of their agreement.

Section 7.18 Joint and Several Obligation. In the event there is more than one Borrower

hereunder, all obligations and liabilities under this Agreement shall be joint and several obligations and liabilities of each Borrower. In addition, all covenants and agreements of the Borrower hereunder shall be applicable to each Borrower individually and all Borrowers collectively. The occurrence of any event or occurrence set forth herein as a default to any one Borrower shall constitute a default under this Agreement as to all Borrowers.

Section 7.19 Appraisals. In the event Lender has reason to believe the value of the Property has diminished, Lender shall have the right to require updated Appraisals of the Property, which Appraisals shall be prepared by an appraiser or appraisers designated by the Lender and shall be in all respects acceptable to the Lender. Each of such Appraisals, when reviewed by the Lender, must indicate a value in the Property that results in an LTV of not more than eighty percent (80%). The basis of the appraisal calculations shown on such Appraisals and all other aspects thereof must be satisfactory to the Lender in all respects. The Borrower shall reimburse the Lender upon demand for all costs and expenses incurred by the Lender with respect to the preparation and review of all future Appraisals required pursuant to the terms hereof. In the event that, upon the receipt of any such updated Appraisal, the value of the Property, as determined by the Lender based upon its review of such Appraisal, is less than that required pursuant to the terms hereof, the Borrower shall pay to the Lender within ten (10) days of written demand by the Lender, a principal curtailment on the Loan in an amount equal to the difference between the sum of the then current outstanding principal balance of the Loan and eighty percent (80%) of the actual appraised value of the Property, as determined by the Lender.

## ARTICLE VIII
## ADDITIONAL COVENANTS

In addition to the other terms and conditions herein, Borrower represents, warrants and covenants that:

Section 8.1 Banking Relationship. Borrower shall establish and maintain its operating and depository accounts with the Lender for the term of the Loan.

Section 8.2 Debt Service Coverage Ratio. The Debt Service Coverage Ratio at all times during the term of the Loan shall be greater than or equal to 1.2:1, measured annually in arrears.

Section 8.3 Financial Statements. Within ninety (90) days from the end of each year, Borrower and each Guarantor shall each provide Lender with their annual financial statements for the immediately preceding year, in form and detail satisfactory to Lender.

Section 8.4 Tax Returns. As soon as available, but in any event within thirty (30) days of filing each year during the term of the Loan, Borrower and each Guarantor shall provide Lender with copies of their respective federal and state income tax returns, including all schedules and attachments thereto.

Section 8.5 Other Information. The Borrower shall provide Lender with such additional information, reports or statements as the Lender may from time-to-time reasonably request.

Section 8.6 Liquidity Maintenance Requirement. At all times during the term of the Loan, Guarantor shall maintain at least $500,000.00 in aggregate Liquid Assets, as determined by the Lender in its commercially reasonable discretion.

Section 8.7 Reserve Account. At Closing, Borrower shall deposit $200,000.00 with Lender in order to establish the Reserve Account. Thereafter, contemporaneously with its monthly payments to Lender under the Note, Borrower shall deposit an additional $12,083.34 into the Reserve Account. Such funds shall be held by Lender for the purpose of reimbursing Borrower as it completes the deferred repairs and maintenance of the HVAC system in the Property. Funds shall be released from the Reserve Account to reimburse Borrower for work on the HVAC system as it is completed by licensed contractors and after such work has inspected and verified as to completeness and value by a third-party inspector approved by Lender, the cost of which shall be borne by Borrower. Borrower shall provide Lender with copies of all invoices and lien waivers relative to the work.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Borrower and Guarantor have executed this Agreement under seal as of the day and year first above written.

**WITNESS OR ATTEST:**

**BORROWER:**
BNG GROUP LLC

By: _Harry Z Kamin_ (SEAL)
HARRY KAMIN, Manager

By: _Valeria Gunkova_ (SEAL)
VALERIA GUNKOVA, Manager

**GUARANTOR:**

_Harry Z Kamin_ (SEAL)
HARRY KAMIN

_Valeria Gunkova_ (SEAL)
VALERIA GUNKOVA

**CCEPTED AS OF THE DATE HEREOF:**

**LENDER:**
ATLANTIC UNION BANK

By: ______________________________(SEAL)
Its:



GUNKOVA_000197

## PROMISSORY NOTE

**IMPORTANT NOTICE - THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

$7,360,000.00

Fairfax County, Virginia October 30, 2020

FOR VALUE RECEIVED, **BNG GROUP LLC**, a Virginia limited liability company, having an address of 2 Pidgeon Hill Drive, Suite 100, Sterling, VA 20165 (the "Borrower") hereby unconditionally promises to pay to **ATLANTIC UNION BANK** or order (the "Lender") at its office at 5803 Rolling Road, Springfield, VA 22152, the sum of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)**, together with interest from the date of this Note as set forth herein.

1. **REPAYMENT/CALCULATION OF INTEREST.** Principal and interest shall be payable as follows: Commencing November 30, 2020 and continuing on same day of each and every calendar month thereafter until October 30, 2025 (the "Maturity Date"), this Note shall be payable in monthly installments of principal and interest of $35,812.42, which amount includes interest at the fixed rate THREE AND 19/100TH PERCENT (3.19%) per annum and is sufficient to amortize the then outstanding principal balance over a period of twenty-five (25) years, with all outstanding principal and interest due and payable in full on the Maturity Date. Interest hereon shall be calculated based upon the actual number of days elapsed in a three hundred sixty (360) day year. All payments under this Note shall be made in lawful currency of the United States in immediately available funds. All payments shall be applied first to late charges and attorneys' fees, next to interest and then to principal. Payments shall be due on the last day of any month not containing thirty (30) days.

**MATURITY DATE/BALLOON PAYMENT.** Notwithstanding the 25-year term upon which the amount of the monthly payments are computed, the entire unpaid principal balance of this Note, with all accrued and unpaid interest and other charges, if not sooner paid, shall be due and payable in full on the Maturity Date. **THE BORROWER ACKNOWLEDGES AND AGREES THAT THIS NOTE PROVIDES FOR A BALLOON PAYMENT OF THE ENTIRE UNPAID PRINCIPAL BALANCE OF THIS NOTE, WITH INTEREST, ON THE MATURITY DATE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. THE BORROWER WILL BE REQUIRED TO MAKE PAYMENT OUT OF OTHER FUNDS OR ASSETS THAT BORROWER OWNS OR FIND A BANK, WHICH MAY BE THE LENDER, WILLING TO LEND THE MONEY NECESSARY TO REFINANCE THE ENTIRE UNPAID INDEBTEDNESS EVIDENCED BY THIS NOTE.**

2. **PREPAYMENT.** This Note may not be prepaid in whole or in part, whether by voluntary prepayment, refinancing or acceleration, prior to such date that is three (3) years from the date hereof unless such prepayment is accompanied by a prepayment premium equal to the

applicable percentage of the principal amount prepaid as follows: (i) 3% if the prepayment occurs during the first year after the date hereof; (ii) 2% if the prepayment occurs during the second year after the date hereof; and (iii) 1% if the prepayment occurs during the third year after the date hereof. No partial prepayment shall reduce the amount of the periodic payments of principal and/or interest that would otherwise be due hereunder. For purposes hereof, "acceleration" shall mean the acceleration of the principal balance hereof by Lender following the occurrence of an Event of Default under this Note or any other document or documents given in evidence, guaranty or security hereof.

3. **LATE PAYMENT CHARGE**. If Borrower fails to make any payment within ten (10) days after its due date, Borrower will pay a late charge of five percent (5%) of the payment due.

4. **EVENTS OF DEFAULT**. Borrower will be in default hereunder upon the occurrence of any of the following events (each being an "Event of Default"):

(a) failure by Borrower to pay when due any sum required to be paid hereunder; or

(b) failure by Borrower to observe or perform any covenant or agreement Borrower has made in this Note, the Deed of Trust, Assignment of Rents and Security Agreement given to secure the indebtedness evidenced hereby, the Loan and Security Agreement of even date herewith between Borrower and Lender, or in any other agreement Borrower has made with Lender in connection with the loan evidenced hereby and such failure continues after the expiration of any applicable grace period.

Upon the occurrence of an Event of Default, Borrower agrees that the applicable rate of interest set forth in this Note shall be increased by five (5) percentage points above the rate of interest otherwise payable hereunder until such time as the Event of Default is cured to Lender's reasonable satisfaction. Such default interest shall be in addition to all other rights and remedies provided herein or by law for the benefit of Lender upon a default. Notwithstanding anything contained herein to the contrary, Lender shall never be entitled to receive, collect, or apply, as interest on the obligation, any amount in excess of the maximum rate of interest permitted to be charged by applicable law, and, in the event Lender ever receives, collects, or applies as interest any such excess, such amount that would be excessive interest shall be applied to the reduction of the principal debt; and, if the principal debt is paid in full, any remaining excess shall forthwith be paid to Borrower. Upon the occurrence of an Event of Default hereunder, the principal sum hereof together with all arrearages of interest thereon shall, at the option of the Lender, become and be due and payable immediately.

5. **WAIVERS**. Borrower hereof waives presentment, demand, notice of dishonor and protest hereof, and consent that the time of payment may be extended from time to time without notice thereof, and hereby respectively waive the benefit of any homestead exemption and all other state exemptions as to the property securing this debt.

**6.** **COST OF COLLECTION.** Borrower agrees that if, after this Note becomes due by demand, acceleration or otherwise, it is referred to an attorney (including in-house counsel) retained by or employed by Lender for collection, to pay Lender's reasonable attorneys' fees and all costs and expenses of collection.

**7.** **LENDER AS ATTORNEY IN FACT.** Borrower hereby appoints any employee of Lender as its attorney-in-fact for the purpose of signing Borrower's name to and filing such financing statements, continuation statements and/or lien forms as Lender deems necessary or advisable to perfect or continue the perfection of Lender's security interest in any collateral which may now or in the future secure this Note. The foregoing special power of attorney is deemed coupled with an interest and shall remain in full force and effect until this Note is paid and satisfied in full.

**8.** **CHOICE OF LAW; CONSENT TO VENUE/JURISDICTION.** This Note and its construction shall be governed by the internal laws of the Commonwealth of Virginia without regard to conflict of law provisions. The Borrower irrevocably consents to the non-exclusive jurisdiction of the courts of the Commonwealth of Virginia and the United States District Courts for the Eastern District of Virginia (Alexandria Division), if a basis for federal jurisdiction exists. The Borrower agrees that venue shall be proper in any circuit court of the Commonwealth of Virginia selected by the Lender or in the United States District Court for the Eastern District of Virginia (Alexandria Division) if a basis for federal jurisdiction exists and waives any right to object to the maintenance of a suit in any of the aforementioned state or federal courts within the Commonwealth of Virginia on the basis of improper venue or of inconvenience of forum.

**9.** **WAIVER OF TRIAL BY JURY.** BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY BORROWER AGAINST LENDER ON ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS NOTE OR ANY RELATED AGREEMENTS OR INSTRUMENTS AND THE ENFORCEMENT THEREOF.

**10.** **NOTICES.** Any notice required or permitted by or in connection with this Note shall be in writing and shall be made by hand delivery, by FedEx, or other similar overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to the respective parties at the appropriate address set forth above or to such other address as may be hereafter specified by written notice by the respective parties. Notice shall be considered given as of the date of hand delivery, one (1) business day after delivery to Federal Express or similar overnight delivery service, or three (3) business days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was given as provided herein. If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given and shall be effective as of the date herein provided.

**11.** **NO WAIVER.** No failure on the part of Lender to exercise any of its rights hereunder shall be deemed a waiver of such rights or of any default.