12. **COMMERCIAL LOAN.** Borrower represents and warrants to Lender that no portion of the proceeds of the loan evidenced by this Note is being used for personal, family or household purposes.

13. **SEVERABILITY.** In the event any provision of this Note shall be held to be invalid, illegal or unenforceable, this Note shall be construed as if such provision had never been contained herein and the remainder of this Note shall remain in full force and effect.

14. **TIME IS OF THE ESSENCE.** Time is of the essence as to all dates set forth herein.

15. **CONFESSION OF JUDGMENT.** Upon the occurrence of an Event of Default, Borrower hereby authorizes, appoints and empowers any of Douglas D. Callaway and/or Michael E. Walsh and/or Lynn Harrison and/or Frank Merritt and/or Inga Green as its attorney-in-fact to appear in the Clerk's Office for the Circuit Court of the City of Richmond, Virginia on behalf of Borrower and therein to confess or enter judgment against the undersigned, in favor of Lender for any sums due hereunder with interest thereon at the default rate of interest otherwise payable under the terms of the Note, from the date the same shall become due and payable until the date paid, together with attorney's fees equal to fifteen percent (15%) of the unpaid balance owed under this Note and court costs, without stay of execution or right of appeal and expressly waiving the benefit of all exemption laws and all irregularity or error in entering said judgment or the execution thereon. No single exercise of the foregoing power to confess judgment shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void, but the power shall continue undiminished, and it may be exercised from time to time as often as Lender shall elect, until such time as Lender shall have received payment in full of all indebtedness of Borrower to Lender. Notice under this confession of judgment provision, pursuant to § 8.01-438 of the Code of Virginia, 1950, as amended, shall be served on Borrower at Borrower's address above.

In the event that (a) Lender obtains judgment by confession under this Note and (b) all of the obligations of Borrower under the Note are satisfied and paid in full other than the obligation to pay attorneys' fees, the Lender will require the Borrower make payment only of attorneys' fees actually incurred (such fees to be reasonable), and any funds received in excess of the actual amount of attorneys' fees shall be returned to Borrower.

SIGNATURE APPEARS ON FOLLOWING PAGE



GUNKOVA_000201

Witness the due execution and sealing hereof.

**BORROWER:**
BNG GROUP LLC

By: ______________________(SEAL)
HARRY KAMIN, Manager

By: ______________________(SEAL)
VALERIA GUNKOVA, Manager

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30 day of October, 2020, before me, the undersigned Notary Public of the jurisdiction aforesaid personally appeared HARRY KAMIN and VALERIA GUNKOVA, and acknowledged themselves to be Managers of BNG GROUP LLC, and that they, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

______________________ (SEAL)
Notary Public

My Commission expires: 6/30/24     Registration # : 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

20201102-0105031
Electronic Recording
Loudoun County, VA Pages:27
11/2/2020 1:11:45 PM
Gary M. Clemens, Clerk

Prepared by:
Vincent J. Keegan, Esquire
Keegan & DeVol, PLC
8280 Greensboro Drive, Suite 710
McLean, VA 22102

PIN: 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-000

Stewart Title & Escrow, Inc
10505 Judicial Drive, Suite 300
Fairfax, VA 22030

2020 97 (AP)

# DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**THIS DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT** ("Deed of Trust") is made as of October 30th, 2020, by and between **BNG GROUP LLC**, a Virginia limited liability company ("Grantor") and **UNION SERVICE CORPORATION**, a Virginia corporation, Trustee, having an address of 5803 Rolling Road, Springfield, VA 22152 (hereinafter, "Trustees", whether one or more) for the benefit of **ATLANTIC UNION BANK**, having offices at 5803 Rolling Road, Springfield, VA 22152 ("Beneficiary").

## RECITALS

A. Pursuant to that certain Loan and Security Agreement of even date herewith by and between Grantor and Beneficiary (the "Loan Agreement", such term to include all extensions, renewals, amendments and modifications thereof and substitutions therefor), the Beneficiary has agreed to make a purchase money loan to the Grantor (the "Loan"), in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** as evidenced by a Promissory Note of even date herewith from the Grantor, payable to the order of the Beneficiary in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Note", such term to include all extensions, renewals, amendments and modifications thereof and substitutions therefor). The Loan is guaranteed by **HARRY KAMIN** and **VALERIA GUNKOVA** (individually and collectively, the "Guarantor") pursuant to the terms of a Guaranty and Indemnification Agreement of even date herewith from the Guarantor in favor of the Beneficiary (the "Guaranty"). The Loan is further secured by an Assignment of Rents and Leases of even date herewith from the Grantor in favor of the Beneficiary (the "Assignment of Rents"). In addition to the Note and the Loan Agreement, the Loan is evidenced by additional documents evidencing, securing, guaranteeing and/or otherwise documenting the terms and conditions of the Loan (together with this Deed of Trust, the Note, the Guaranty, the Assignment of Rents and the Loan

Agreement, collectively, "Loan Documents", such term to include all extensions, renewals, amendments and modifications thereof and substitutions therefor).

B. The Grantor has agreed to secure the Loan, in part, by the execution of this Deed of Trust.

C. As used in this Deed of Trust: (a) the term "Indebtedness" means all sums now or hereafter outstanding under the Note and the other Loan Documents, including (i) all principal sums outstanding from time to time under the Loan, all interest thereon at the rate or rates provided in the Note, and all fees or charges, (ii) all sums which may hereafter be advanced to or for the account of the Grantor under the Loan Documents, (iii) all sums which may be advanced by the Trustees or the Beneficiary pursuant to or under authorizations contained in this Deed of Trust or other Loan Documents, even if and to the extent such sums may exceed the face amount of the Note and the principal sum stated above, (iv) all sums which may be payable by the Grantor on account of any warranty or indemnity given by the Grantor under this Deed of Trust or any other Loan Document, and (v) all fees and costs (including without limitation all attorneys' fees and expenses) incurred by the Trustees or the Beneficiary in connection with the administration or collection of the Loan, including all such fees and costs incurred in the enforcement of this Deed of Trust or any of the other Loan Documents or otherwise as a result of an Event of Default; (b) the term "Obligations" means all duties of payment and performance owed by the Grantor to the Trustees or the Beneficiary under the Loan Documents, including but not limited to (i) the duty of the Grantor to pay all sums now or hereafter outstanding on account of the Indebtedness, when and as the same become due; and (ii) the strict observance and performance of all of the covenants and agreements of the Grantor under the Loan Documents and the satisfaction of all requirements and conditions contained in the Loan Documents; and (c) the term "Person" means any individual, corporation, partnership, limited liability company, association, joint-stock company, trust, unincorporated organization, joint venture, court, or government or political subdivision or agency thereof.

## GRANT

**NOW, THEREFORE,** in consideration of these premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to secure the full and absolute payment and performance of each of the Obligations, the Grantor grants, pledges, assigns, transfers and conveys to the Trustees all those certain lot(s) or parcel(s) of ground situated and lying in Loudoun County, Virginia, and more particularly described on Exhibit "A" attached hereto and made a part hereof (the "Land").

**TOGETHER WITH** all buildings, structures, or improvements, and replacements thereof, now or hereafter existing on or to be erected upon the Land ("Improvements"). The Land and Improvements are collectively referred to as the "Real Property."

**AND TOGETHER** with all plant equipment, apparatus, machinery, fittings, appliances, furniture, furnishings, fixtures and other chattels and personal property and replacements thereof (exclusive of any inventory held for sale or resale by the Grantor) owned by the Grantor and now

or at any time hereafter affixed or attached to, incorporated in, placed upon, or in any way used in connection with the current or future utilization, enjoyment, occupation, or operation of the Real Property including by way of example and not by way of limitation, all lighting, heating, ventilating, air conditioning, incinerating, sprinkling, laundry, lifting and plumbing fixtures and equipment, water and power systems, loading and unloading equipment, burglar alarms and security systems, fire prevention and fire extinguishing systems and equipment, engines, boilers, ranges, refrigerators, stoves, furnaces, oil burners or units, communication systems and equipment, dynamos, transformers, motors, tanks, electrical equipment, elevators, escalators, cabinets, partitions, ducts, compressors, switchboards, storm and screen windows and doors, pictures, sculptures, awnings and shades, signs and shrubbery; as well as all building and construction materials and supplies of every kind, nature and description owned by the Grantor and located on, at, or about the Real Property, whether or not yet incorporated into any building, structure, or improvement, or located elsewhere and not as yet delivered to the Real Property, which was intended to be used for the purpose of erecting, renovating, restoring, or repairing any building, structure, or improvement on the Real Property, including by way of example and not by way of limitation, all steel, iron, concrete, sheet rock and plaster board, screws, paint, plaster, plastics, insulation, fiberglass, wood and wood products, glass, bricks, mortar, masonry, pipes, wiring, linoleum and tile and other floor and wall coverings, roofing and roofing materials, framing and molding (collectively, "Personalty") all of which the Grantor declares to be fixtures and permanent additions to the Real Property.

**AND TOGETHER WITH** all plans and specifications, surveys and surveyor's reports, engineer's and architect's reports, diagrams and drawings, all licenses, permits and approvals and applications therefor from governmental authorities, service contracts, books, records, reports, accounting records, invoices, change orders, correspondence, diagrams, drawings, schematics, sales and promotional literature and forms, advertising materials and the like, wherever located and whenever created, compiled, or made with respect to the construction of the Improvements upon the Land and/or any leasing of space in the Improvements.

**AND TOGETHER WITH** all easements, rights, privileges, and appurtenances thereunto belonging or in any way appurtenant, and all of the right, title, interest, estate, or claim of the Grantor in or to the streets, ways, alleys, and waters adjoining or adjacent to the Real Property, whether now existing or hereafter acquired.

**AND TOGETHER WITH** all mineral rights, and mining rights, as well as all minerals, sand, gravel, soil and the like (including oil and gas) which have not been extracted from the Land.

**AND TOGETHER WITH** all documents, instruments, general intangibles, chattel paper, contract rights, inventory and accounts now owned or hereafter acquired by the Grantor and relating to or arising out of the herein described Real Property or any contract of sale for the herein described Real Property or portions thereof, as such items of property may from time to time exist, together with all modifications, accessions and substitutions therefor and proceeds therefrom.

**AND TOGETHER WITH** all the rights, title, interest and privileges which the Grantor as seller has or may have in the contracts of sale now existing or hereafter made and affecting the Real

Property, as such contracts may have been, or may from time to time be, modified, extended and renewed, with all deposits, proceeds, income and profits due and becoming due therefrom.

**AND TOGETHER WITH** all rights, benefits, profits, rents, and monies payable under, by reason of, or with respect to any restrictive covenants, easements, agreements applicable to the Real Property or adjoining lands, or contracts of sale with respect thereto, and all proceeds and products thereof, with the right to: (a) collect any sums of money at any time payable to the Grantor in consequence of such rights and benefits, including the release, modification, or amendment thereof, for application to the Obligations; and (b) utilize any collection or enforcement rights or remedies to collect the same which may be available to the Grantor under law.

**AND ALSO TOGETHER WITH**: (a) all of the proceeds of the voluntary or involuntary conversion of the aforementioned property or any part of the aforementioned property into cash or liquidated claims, whether by way of condemnation, insured casualty, judgment or otherwise, as well as a security interest which is hereby granted to the Beneficiary in the same; (b) all rents, profits, and benefits, including any deposits of tenants to secure payment of the same and performance of the terms and conditions of any oral or written lease, with respect to the leasing of all or any portion of the Real Property (each, a "Lease"), with the right to collect such rents, profits, and benefits at any time for application to the Obligations and to utilize any collection or enforcement rights or remedies which may be available to the Grantor under law or any written Lease, but without any duty or obligation to perform on behalf of the Grantor any of the Grantor's duties or obligations to any lessee; and (c) all revenues and profits, accounts receivable and contract rights, including any deposits of purchasers to secure payment of the contract price and performance of the terms and conditions of any contract of sale for the Real Property, with the right to collect the same at any time for application to the Obligations and to utilize any collection or enforcement rights or remedies which may be available to the Grantor under law or any contract of sale, but without any duty or obligation to perform on behalf of the Grantor any of the Grantor's duties or obligations to any purchaser of the Real Property.

**AND TOGETHER WITH**: (a) an irrevocable license to enter on and upon the Real Property at any time and from time to time for the purpose of making such audit tests, inspections, and examinations, including subsurface exploration and testing, as the Beneficiary, in its discretion, deems necessary, convenient, or proper to determine whether the ownership, use, and operation of the Real Property and the conduct of the activities engaged in thereon are in compliance with the Environmental Requirements, as that term is defined below; (b) the right at any time and from time to time to inspect and copy all of the Grantor's records relating to environmental matters and to enter all buildings or facilities of the Grantor for such purpose; and (c) all of the Grantor's records with respect to environmental matters, whether or not located at the Real Property or elsewhere, whether or not in the possession of the Grantor or some third party (including any federal, state, or local agency or instrumentality), and whether written, photographic, or computerized.

All of the aforementioned Real Property, Personalty, and other rights and benefits and all other property described in the above stated granting clauses of this Deed of Trust are referred to collectively as the "Secured Property." To the extent that any items of Secured Property are not

or have not yet become fixtures and permanent additions to and a part of the Real Property, and are instead personal property, the Grantor grants, re-grants, conveys, re-conveys and confirms to the Beneficiary a continuing security interest under the Virginia Uniform Commercial Code, as amended, in all of such items of personal property and the proceeds and products thereof, as well as in all substitutions, renewals, replacements, additions, modifications and accretions thereof and in all of such items hereafter acquired and constituting after acquired property, for so long as such items are or remain personal property and not fixtures and permanent additions to the Real Property. It is acknowledged and agreed that this Deed of Trust shall constitute a "Fixture Filing" as to the Personalty, as the same is permitted under § 8.9A-502(c) of the Code of Virginia of 1950, as amended.

**TO HAVE AND TO HOLD** the Secured Property to the Trustees and the Trustees' successors and assigns in fee simple forever.

**IN TRUST**, for the benefit and security of the Beneficiary to secure the full, complete, timely and absolute payment, performance, completion, and satisfaction of each of the Obligations, whether such Obligations are existing or hereafter arising, as contemplated by and in accordance with the terms and conditions of the Loan Agreement; provided, however, that the Beneficiary and the Trustees shall release the Secured Property from this Deed of Trust hereof, and if all of the Obligations are duly paid, performed, completed and satisfied, then the Beneficiary shall execute and deliver to the Grantor a full written release which shall reconvey the Secured Property to the Grantor and terminate this Deed of Trust at the sole cost and expense of the Grantor; and further provided that until such a full written release is executed and delivered, this Deed of Trust shall not be deemed released or terminated in whole or in part, even if the amount secured by this Deed of Trust is Zero Dollars ($0.00) from time to time.

## ARTICLE 1
## COVENANTS AND AGREEMENTS OF THE GRANTOR

The Grantor covenants and agrees as follows:

**Section 1.1. Repayment**. The Grantor shall pay punctually all Indebtedness secured by this Deed of Trust, together with interest thereon and any penalty, fee, charge, deposit, escrow or assessment, at the times and in the manner and amounts set forth in this Deed of Trust, the Note, and each of the other Loan Documents.

**Section 1.2. Performance**. The Grantor shall perform fully all duties, obligations, and requirements and comply exactly in all respects with the terms, covenants, conditions, representations and warranties of this Deed of Trust, the Note, the Loan Agreement and each of the other Loan Documents.

**Section 1.3. Taxes And Expenses**. The Grantor shall pay and discharge, when and as the same come due, all taxes of every kind and nature, real and personal; all general and special assessments and levies; all water, sewer and other utility charges, rents, and assessments; and any and all other public charges, dues, levies, impositions, or assessments of a like or different

nature, imposed upon or assessed against the Secured Property or the rents, issues, income or profits thereof, and which are or may become liens against the same, as well as any ground rent to which the Real Property may be subject, and the Grantor shall not permit to exist any lien or security interest for taxes, assessments, levies, fees, ground rents and public charges other than: (a) liens for taxes, assessments, levies, fees, rents, ground rents, and public charges not yet delinquent; and (b) liens and security interests which the Beneficiary has specifically and in writing consented to the existence of and with respect to which the Grantor has paid currently all sums secured thereby. The Grantor shall, upon the request of the Trustees or the Beneficiary, deliver to the Trustees or the Beneficiary receipts evidencing the payment of all such taxes, assessments, levies, fees, rents, ground rents, and public charges imposed upon or assessed against the Secured Property, or the revenues, rents, issues, income, or profits thereof, as well as the payment of all superior liens and security interests with respect to which the Beneficiary may have consented. Notwithstanding the above, the Grantor may contest, at its expense, by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity or application, in whole or in part, of any taxes or other charges enumerated above in this Section 1.3; provided that (i) such proceedings shall suspend the collection thereof, (ii) neither the Secured Property nor any part thereof or interest therein would be in any danger of being sold, forfeited or lost, (iii) neither the Grantor, the Trustees nor the Beneficiary would be in any danger of any civil or criminal liability for failure to pay same and the Secured Property or any part thereof would not be subject to the imposition of any lien as a result of such failure, and (iv) if the applicable tax or other charge would, if such amount remains unpaid, result in a lien against the Secured Property or any part thereof, the Grantor shall have deposited the amount of said taxes or charges together with interest, penalties, attorneys' fees and court costs with the Beneficiary who shall have the sole and absolute discretion to pay such contested amounts in the event that, in the sole, absolute and subjective discretion of the Beneficiary, the Secured Property or any part thereof is in danger of forfeiture or the Trustees and/or Beneficiary are in danger of being held civilly or criminally liable with respect thereto or the Beneficiary concludes, in its sole, absolute and subjective discretion, that the Secured Property or any part thereof is impaired thereby.

**Section 1.4.** **Insurance**. The Grantor shall maintain the following insurance coverages with insurance companies rated at least "A" by A.M. Best Company:

**1.4.1.** **Casualty Insurance**. The Grantor shall obtain and at all times maintain "special perils" casualty insurance insuring the Secured Property against all risks which are customarily insured under "special perils" insurance, in amounts equal to the greater of (i) the full replacement value of the Secured Property, or (ii) an amount sufficient to prevent co-insurance liability. The coverage provided by such policy or policies shall include coverage for any and all loss or damage caused by fire, collapse, vandalism, malicious mischief, water damage, damage from rain, snow, sleet or ice, use of defective materials or methods in the construction of such capital project, and such other risks as the Beneficiary may reasonably require. The Grantor shall give the Beneficiary immediate notice of any loss covered by such casualty insurance, and the Trustees or the Beneficiary shall have the right to join the Grantor in adjusting any loss covered by an insurance policy.



GUNKOVA_000208

1.4.2. **Flood Insurance**. If at any time all or any portion of the Real Property is determined to be located in an area designated as having special flood or mudslide hazards by the Secretary of Housing and Urban Development or the Director of the Federal Emergency Management Agency, pursuant to the National Flood Insurance Act of 1968, as amended by the Flood Disaster Protection Act of 1973, as amended, the Grantor shall obtain and thereafter shall maintain flood hazard insurance in the full insurable value of the Improvements to be constructed on the Real Property or the full amount of coverage available, if less than the full insurable value of the Improvements, naming the Beneficiary as first Beneficiary, under a standard deed of trust clause, and as the sole loss payee. The policy or policies of such flood insurance shall be delivered to and retained by the Beneficiary, and the Grantor shall provide the Beneficiary with receipts evidencing the payment of all premiums due on such policies. All insurance policies shall bear an endorsement prohibiting cancellation, material modification or termination, unless thirty (30) calendar days' prior written notice thereof is provided to the Beneficiary.

1.4.3. **Liability Insurance**. The Grantor shall obtain and maintain public liability and property damage insurance in such amounts, with such insurance companies, and upon policy forms acceptable to and approved by the Beneficiary, but, in any event, in an amount of not less than One Million Dollars ($1,000,000.00) per occurrence and Two Million Dollars ($2,000,000.00) in the aggregate as to liability for personal injury. The Grantor shall supply the Beneficiary with a copy of the aforesaid liability insurance policy and receipts evidencing the payment of premiums due thereon or, alternatively, a certificate from the insurance company certifying to the existence of such a policy summarizing the terms of the policy, and indicating the payment of premiums due thereon. The Beneficiary shall be named as an additional insured under the aforementioned liability insurance policy.

1.4.4. **Workers Compensation Insurance**. Grantor shall maintain, at all times, workmen's compensation insurance to the fullest extent required by the laws of the Commonwealth of Virginia, which insurance shall cover all employees of the Grantor for which such coverage is required. During the construction, repair, restoration or replacement of improvements on the Secured Property, the general contractor will maintain workmen's compensation insurance to the fullest extent required by the laws of the Commonwealth of Virginia, which insurance shall cover all employees of the general contractor for which such coverage is required.

1.4.5. **Business Interruption Insurance**. The Grantor shall obtain and at all times maintain business interruption insurance, including without limitation coverage for loss of rental income, in amounts satisfactory to the Beneficiary.

1.4.6. **Other Insurance**. The Grantor shall carry such other insurance relating to the Secured Property as may be reasonably required by the Beneficiary.

1.4.7. **General Requirements Applicable to Casualty, Business Interruption and Flood Insurance**. No policy of casualty, business interruption or flood insurance shall be subject to an aggregate loss deductible which exceeds any amount designated by the Beneficiary as the permitted deductible with respect thereto. Duplicate originals or certified

true copies of all policies of casualty insurance, business interruption insurance and, if applicable, flood insurance, shall be delivered to and retained by the Beneficiary. The Grantor shall provide the Beneficiary with receipts evidencing the payment of all premiums due on such policies. The Beneficiary shall be named under each such policy as first mortgagee, under a standard mortgage clause, and as sole loss payee. All casualty, business interruption and flood insurance shall be written on forms which are satisfactory to the Beneficiary, and which bear an endorsement prohibiting cancellation, material modification or termination, unless thirty (30) calendar days prior written notice thereof is provided to the Beneficiary. Promptly after any insured loss, the Grantor shall give the Beneficiary notice of the same and the Beneficiary shall have the right to join the Grantor in adjusting any claims resulting from such loss. The proceeds arising from any insured loss shall be payable to the Beneficiary, to be applied in accordance with this Deed of Trust. The Grantor shall not take out separate casualty, business interruption or flood insurance concurrent in form or contributing in the event of loss with that required to be maintained pursuant to the foregoing paragraphs of this section unless the Beneficiary is included thereon as first mortgagee and sole loss payee, as required above, with losses payable as provided above. The Grantor shall give the Beneficiary prior notice of its obtaining any such separate casualty, business interruption or flood insurance and shall promptly deliver duplicate originals or certified copies of such policy or policies to the Beneficiary.

**Section 1.5.** **Escrow**. After the occurrence of an Event of Default, the Beneficiary, at any time or from time to time, upon notice to the Grantor, may require the deposit by the Grantor with the Beneficiary, at the time of each payment of an installment of interest, of principal, or of principal and interest under the Note, of an additional amount sufficient to discharge the obligations of the Grantor for: (a) the payment of taxes, assessments, levies, fees, rents, and other public charges imposed upon or assessed against the Secured Property or the revenues, rents, issues, income, or profits thereof, as provided in Section 1.3; or (b) the payment of the premiums for fire, casualty and other hazard insurance, and flood insurance, as provided by Section 1.4, for the purpose of providing a fund to assure the payment of the aforesaid expenses when and as they come due. The determination of the amount so payable and of the fraction or part thereof to be deposited with the Beneficiary, so that the aggregate of such deposits shall be sufficient for this purpose, shall be made by the Beneficiary in its sole, absolute and subjective discretion. Such amounts shall be applied to the payment of the obligations in respect to which such amounts were deposited or, at the option of the Beneficiary, to the payment of such obligations in such order of priority as the Beneficiary shall determine, on or before the date they become delinquent. If the Beneficiary determines prior to the due date of any of the aforementioned obligations that the amount then on deposit shall be insufficient for the payment of such obligations in full, the Grantor, within ten (10) calendar days after demand, shall deposit the amount of the deficiency with the Beneficiary. The contrary notwithstanding, the Beneficiary shall retain the right under the provisions of this Deed of Trust to pay any such amount and to add the amount so paid, together with interest at the highest default rate provided in the Note, to the Obligations.

**Section 1.6.** **Advancements**. If the Grantor fails to perform any of the covenants contained in this Deed of Trust or to protect or preserve the Secured Property or the status and priority of the lien and security interest of this Deed of Trust, the Trustees or the Beneficiary, after

five (5) business days advance notice, may make advances to perform the same on behalf of the Grantor or to protect or preserve the Secured Property or the status and priority of the lien and security interest of this Deed of Trust, and all sums so advanced shall immediately upon advancement become a lien and security interest upon the Secured Property and shall be secured by this Deed of Trust. The Grantor shall repay on demand all sums so advanced on the Grantor's behalf, plus any reasonable expenses or costs incurred by the Trustees or the Beneficiary, including reasonable attorney's fees, with interest thereon at the default rate provided in the Note. The provisions of this Section shall not be construed to prevent the institution of foreclosure or other rights and remedies of the Trustees upon the occurrence of an Event of Default by the Grantor. The contrary notwithstanding, the authorization contained in this Section shall impose no duty or obligation on the Trustees or the Beneficiary to perform any action or make any advancement on behalf of the Grantor and is for the sole benefit and protection of the Beneficiary.

**Section 1.7.** **Condition And Use Of Improvements**. The Grantor shall not abandon the Secured Property at any time, nor commit any waste on the Secured Property, nor make any change in the use of the Secured Property which will in any way increase any ordinary fire or other hazard insurance risk arising out of the operation of, or the construction of Improvements on, the Secured Property. The Grantor shall maintain and keep the Secured Property in good operating order and condition at all times and shall promptly make, from time to time, all repairs, renewals, replacements, additions, and improvements in connection therewith which are needed or desirable. The Grantor shall comply fully and strictly with all statutes, ordinances, rules, regulations, or laws affecting the Secured Property or the use thereof. The Improvements shall not be removed, demolished or substantially altered without the prior written consent of the Beneficiary. The Grantor shall permit the Trustees or the Beneficiary, or their agents or employees, at all reasonable times to enter and inspect the Secured Property.

**Section 1.8.** **Title To Secured Property: Liens**. The Grantor as of the date hereof has, and at all times during the term of this Deed of Trust shall maintain, good and marketable title to the Secured Property free and clear of any and all liens, charges, restrictions, encumbrances, security interests and adverse claims whatsoever, excepting any liens, charges, restrictions, encumbrances or security interests which: (a) are set forth in any title insurance policy issued in favor of, and approved by, the Beneficiary with respect to the Real Property; (b) are expressly permitted by the provisions of this Deed of Trust; or (c) are otherwise expressly consented to in writing by the Beneficiary.

**Section 1.9.** **Transfer Or Encumbrance**. Title to all or any portion of the Secured Property shall not be acquired by any Person, individual, partnership, association, or corporation, other than the Grantor, by voluntary or involuntary conveyance, transfer, grant or assignment, by operation of law, or in any other manner, or become encumbered or charged with a lien or security interest of any kind or variety, excepting mortgages or deeds of trust disclosed in writing to and approved in writing by the Beneficiary, whether voluntary or involuntary, including any mechanic's or materialman's lien or judgment lien, senior, junior, or of equal priority to the lien and security interest of this Deed of Trust, without the prior written consent of the Trustees or the Beneficiary. The direct or indirect transfer or pledge of any ownership interest in the Grantor without the prior written consent of the Trustees or the Beneficiary shall constitute a prohibited

transfer hereunder. The contrary notwithstanding, if the ownership of the Secured Property becomes vested in a Person, individual, partnership, association, or corporation other than the Grantor, the Trustees or the Beneficiary may, without notice to the Grantor, deal with such successor or successors in interest with reference to this Deed of Trust and the Indebtedness secured by it in the same manner as with the Grantor, and any extension of the time of the Indebtedness or any other modifications of the terms of the Indebtedness at the instance of the then owner of the Secured Property shall not relieve the Grantor of the Grantor's liability on the Note hereby secured or from the performance of any of the covenants and agreements contained herein or any of the covenants, terms, conditions, provisions, representations, or warranties contained in the Loan Documents, whether the extension or modification be made with or without the consent of the Grantor.

**NOTICE: THE SECURED INDEBTEDNESS IS SUBJECT TO ACCELERATION OR CALL IN FULL IN THE EVENT OF THE SALE, CONVEYANCE, TRANSFER OR OTHER ASSIGNMENT OF THE SECURED PROPERTY OR ANY PART THEREOF IN VIOLATION OF THIS DEED OF TRUST.**

**Section 1.10. Condemnation**. The Grantor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Secured Property or any portion thereof, shall notify the Trustees and the Beneficiary of the pendency of such proceedings. The Trustees or the Beneficiary may participate in any such proceedings and the Grantor from time to time shall deliver to the Trustees or the Beneficiary all instruments requested by them to permit such participation. In the event of such condemnation proceedings, the award or compensation payable is hereby assigned and shall be paid to the Beneficiary for application to and reduction of the Indebtedness, at the non-default rate of interest provided in the Note, regardless of the rate of interest payable on the award by the condemning authority. The Trustees or the Beneficiary shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid. In any such condemnation proceedings, the Trustees or the Beneficiary may be represented by counsel selected by them at the Grantor's sole expense.

**Section 1.11. Future Advances**. Pursuant to the terms of the Loan Documents, the Beneficiary may make future advances to the Grantor and may advance or readvance funds to the Grantor and all such future advances and readvances shall be fully secured by the lien and security interest of this Deed of Trust.

**Section 1.12. Estoppel Certificate**. The Grantor, upon written notice from the Beneficiary or the Trustees, shall deliver to the Beneficiary or the Trustees, within ten (10) calendar days of the giving of notice, a written statement, duly acknowledged, setting forth the amount of principal, interest, penalty, and other charges or assessments due the Beneficiary as of the notice date and whether any offsets or defenses exist against any of the same.

**Section 1.13. Zoning, Etc.; Restrictive Covenants**. The Grantor, in its use and operation of the Secured Property, shall comply fully with all applicable laws, rules and regulations of any federal, state, and local governmental authorities having jurisdiction over the Secured

Property, including but not limited to, all zoning, land use, and environmental laws, rules and regulations. The Grantor shall comply fully with all restrictions, covenants, easements, setbacks and other limitations on the use of the Secured Property contained in documents of public record.

**Section 1.14. Preservation Of Lien**. The Grantor shall take all steps and do all things necessary, convenient, or proper to establish, protect, preserve, and maintain the priority and status of the lien and security interest in the Secured Property established or intended to be established by this Deed of Trust, except and only to the extent the Beneficiary may have consented specifically and in writing to a senior lien or security interest.

**Section 1.15. Security Agreement**. This Deed of Trust also shall constitute a security agreement from the Grantor to the Beneficiary under the Virginia Uniform Commercial Code. In furtherance thereof, Grantor hereby grants and pledges to Beneficiary a continuing security interest in and to the following (collectively, the "Collateral"): (i) All building materials, appliances, leasehold improvements and equipment delivered to, installed in, affixed to, placed upon, or attached to the Real Property, including, but not limited to, the following: all buildings, machinery, engines, furnaces, boilers, stokers, pumps, heaters, incinerators, power equipment, laundry equipment, tanks, dynamos, motors, generators, switchboards, conduits, electrical equipment, heating, cooling, ventilating, air conditioning, lighting, incinerating and plumbing apparatus, compressors, elevators, escalators, shades, brackets, electric signs, bulbs, gas and electric equipment, fire prevention and extinguishing apparatus, plumbing fixtures, vacuum cleaning systems, floor cleaning, waxing, and polishing apparatus, call systems, fuel conveyors, other apparatus, mirrors, linoleum and other floor coverings, refrigerating and cooling apparatus and equipment, screens, screen doors, awnings, blinds, refrigerators, stoves, ranges and ovens, garbage disposals, dishwashers, washers and dryers, mantels, plants and trees, and any and all such property which is at any time hereafter installed in, affixed to, or placed upon the Real Property, and all replacements thereof, additions thereto, and substitutions therefor; (ii) All rents, issues, income, revenues, profits, accounts, and benefits from, under, and in connection with the Real Property; (iii) All awards heretofore or hereafter made by any public or quasi-public authority to the present or subsequent owners of the Real Property and the improvements now or hereafter existing thereon by virtue of (a) an exercise of the right of eminent domain by such authority, or right of access to a public way, (b) any change of grade of any street affecting the Real Property or (c) any other injury to or decrease in the value of the Real Property; (iv) all unearned hazard insurance premiums and insurance proceeds payable in connection with the Real Property and the improvements now or hereafter existing thereon; and (v) All documents, instruments, general intangibles, chattel paper, contract rights, inventory and accounts now owned or hereafter acquired by the Grantor and relating to or arising out of the Real Property or any contract of sale for the Real Property or any portions thereof, as such items of property may from time to time exist, together with all modifications accessions and substitutions therefor and proceeds therefrom.

Grantor also hereby grants and pledges to Beneficiary a continuing security interest in: (i) all proceeds (including insurance proceeds) and products of the above-described Collateral; (ii) any of Grantor's assets in which Beneficiary has been or is hereafter granted a security interest under any other security agreements, notes or other obligations or liabilities between Grantor and Beneficiary; (iii) any accounts, property, securities, Investment Property or monies of Grantor may

at any time be maintained at, assigned to, delivered to, or come into possession of, Beneficiary, as well as all proceeds and products thereof; and (iv) all of the books and records pertaining to any of the above-described items of Collateral. Grantor further authorizes Beneficiary to file with the local and central filing offices such financing and continuation statements as may be required in the Beneficiary's sole opinion to perfect or continue as perfected the security interest created by this Deed of Trust.

**Section 1.16.** Validity of Obligations, Etc. The Grantor represents and warrants that (i) it has the power to enter into the Loan, to grant the Secured Property and the liens, assignments and security interests provided herein, and to execute and deliver the Note, this Deed of Trust and the other Loan Documents, (ii) it has taken all action necessary or appropriate to authorize the actions described in the preceding clause (i), and (iii) the Note, this Deed of Trust and the other Loan Documents constitute the valid and binding obligations of the Grantor, enforceable against the Grantor in accordance with their respective terms.

**Section 1.17.** Status; Changes in Ownership. The Grantor shall maintain in good standing and in full force and effect the Grantor's status as a validly constituted limited liability company under the laws of the state of its organization, and all rights and privileges incident thereto. There shall be no direct or indirect transfer or pledge of any ownership interest in the Grantor without the prior written consent of the Beneficiary.

**Section 1.18.** Financial and Other Statements. The Grantor shall provide the Beneficiary with the financial information required under the terms of the Loan Agreement.

**Section 1.19.** Environmental Requirements. The Grantor represents and warrants to the Trustees and the Beneficiary that, except for such de minimis amounts thereof as may be necessary in connection with the operation of the Improvements, no materials or substances previously have been or are now located in, on or near the Secured Property which, under federal, state, or local law, statute, ordinance or regulation, or court or administrative order or decree, or private agreement (collectively, "Environmental Requirements"), require special handling in collection, storage, treatment, or disposal. The Grantor shall not place or permit to be placed any such materials or substances in, on or near the Secured Property, and all Leases affecting the Secured Property shall contain a covenant to that effect. If at any time it is determined that there are materials or substances located in, on or near the Secured Property which, under any Environmental Requirement, require special handling in collection, storage, treatment, or disposal, the Grantor shall, within thirty (30) calendar days after written notice thereof, commence or cause to be commenced and diligently pursued to completion within thirty (30) calendar days thereafter, at the Grantor's sole expense, such actions as may be necessary to comply with all Environmental Requirements. If the Grantor fails to take such action, the Beneficiary may make advances or payments toward performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid, including all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including without limitation reasonable attorney's fees, and fines or other penalty payments, shall be at once repayable by the Grantor and shall bear interest at the default rate provided in the Promissory Note, from the date the same shall become due and payable until the date paid, and all sums so advanced or paid, with

interest as aforesaid, shall become a part of the Indebtedness secured hereby. The Grantor shall indemnify and hold harmless the Trustees and the Beneficiary from all loss, liability, damage, cost and expense, including without limitation reasonable attorney's fees, for failure of the Secured Property to comply in all respects with all Environmental Requirements. The provisions of this section shall survive payoff, release, or foreclosure of this Deed of Trust. The Grantor, promptly upon the written request of the Beneficiary from time to time, shall provide the Beneficiary from time to time with an environmental site assessment or report, all in scope, form, and content satisfactory to the Beneficiary. The Beneficiary, or its designated agent, upon providing the Grantor with an advance written notice, may interview any or all of the Grantor's agents and employees regarding environmental matters, including any consultants or experts retained by the Grantor, all of whom are directed to discuss environmental issues fully and openly with the Beneficiary or its designated agent and to provide such information as may be requested. All of the costs and expenses incurred by the Beneficiary with respect to the audits, tests, inspections, and examinations which the Beneficiary may conduct, including the fees of the engineers, laboratories, and contractors, shall be paid by the Grantor. The Grantor shall remain liable hereunder regardless of any other provisions hereof which may limit Grantor's liability.

**Section 1.20. Assignment Of Leases And Rents.** The Grantor assigns to the Beneficiary all Leases and rents of the Real Property, independent of whether a receiver is appointed or not; provided, however, that nothing herein shall obligate the Beneficiary to perform any of the Grantor's duties or obligations under any Lease or shall entitle any Lease to continue in full force and effect after a foreclosure sale unless the Beneficiary has subordinated the lien of this Deed of Trust such that the foreclosure sale is subject to a Lease. The Grantor shall perform all of its obligations under all Leases of all or any portion of the Real Property in the manner and within the time specified in those Leases, and shall take all steps which may be required to preserve and maintain the liability of any lessee under any such Lease and the enforceability thereof. The Grantor shall notify the Beneficiary promptly of any defense or claim of non-liability, whether in whole or in part, by any such lessee, of which claim or defense the Grantor has knowledge. If the Grantor executes a separate assignment of Leases and rents for the benefit of the Beneficiary, the terms and conditions contained therein shall be incorporated by reference in this Deed of Trust and such terms and conditions control in the event of any inconsistency with the items and conditions contained herein regarding the assignment of Leases and rents.

**Section 1.21. Inspection.** The Trustees and the Beneficiary and their respective authorized representatives may enter onto the Secured Property or any part thereof at all reasonable times for the purposes of inspecting the same and to enforce any remedies upon the occurrence of an Event of Default hereunder. Neither the Trustees nor the Beneficiary, nor any of them, shall have any duty to make any such inspection nor shall any of them incur any liability or obligation for not making any such inspection.

**ARTICLE 2**
**EVENTS OF DEFAULT**

Each of the following events shall constitute an event of default ("Event of Default") under this Deed of Trust and shall entitle the Trustees or the Beneficiary to exercise all rights and remedies provided in Article 3 hereof:

**Section 2.1.** **Failure To Pay**. A failure by the Grantor or any of the Guarantors to pay any of the Obligations arising under the Note, Guaranty or other Loan Documents, or any other Obligations, when and as the same are due and payable, and the expiration of any applicable cure period without cure of such failure to pay.

**Section 2.2.** **Failure To Perform**. A failure by the Grantor to perform or observe any of the covenants and agreements of this Deed of Trust and such failure (which, in the Beneficiary's sole, absolute and subjective discretion, is capable of being cured) is not cured within thirty (30) calendar days following the giving of notice thereof by the Beneficiary to the Grantor; provided however, if such failure, Beneficiary believes in its sole, absolute and subjective discretion, cannot be cured within such 30-day period, such 30-day period may be extended if: (i) the Grantor is diligently pursuing cure of the applicable default, (ii) the Beneficiary, in its sole, absolute and subjective discretion, believes that the applicable default can be cured by the Grantor to the complete satisfaction of the Beneficiary, and (iii) the occurrence of the applicable default has not impaired the security of the Loan. The contrary notwithstanding, no notice or cure period shall be provided if the Event of Default is based upon a willful or material misrepresentation at any time by the Grantor to the Beneficiary or otherwise by the Grantor in connection with the Loan or the advance (or readvance) of proceeds of the Loan.

**Section 2.3.** **Failure Of Representation Or Warranty**. Any representation or warranty given by the Grantor under this Deed of Trust or any other Loan Document fails to be true, correct and complete in any material respect, as of the date made or deemed made.

**Section 2.4.** **Failure To Perform Under The Loan Documents**. A failure by the Grantor or any of the Guarantors to perform or observe any of the terms, covenants, conditions, and provisions of any of the Loan Documents or any default under any terms, covenants, conditions and provisions of any of the Loan Documents, and the expiration of any applicable cure period.

**Section 2.5.** **Involuntary Bankruptcy**. The filing of a petition by one or more creditors of the Grantor seeking: (a) the entry of a decree or order for relief by a court having jurisdiction against or with respect to the Grantor in an involuntary case under the federal bankruptcy laws or any state insolvency or similar laws ordering the liquidation of the Grantor; or (b) a reorganization of the Grantor or the Grantor's business and affairs or the appointment of a receiver, liquidator, assignee, custodian, trustee, or similar official for the Grantor or any of the Grantor's property, including but not limited to the Secured Property, and such petition is not unconditionally dismissed within sixty (60) days from the date of filing.

**Section 2.6.** **<u>Voluntary Bankruptcy</u>.** The commencement by the Grantor of a voluntary case under the federal bankruptcy laws or any state insolvency or similar laws or the consent by the Grantor to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian or similar official for the Grantor or any of the Grantor's property, including but not limited to the Secured Property, or the making by the Grantor of an assignment for the benefit of creditors, or the failure by the Grantor generally to pay the Grantor's debts as they become due.

**Section 2.7.** **<u>Bankruptcy Or Insolvency Of Any Guarantor</u>.** The happening of any of the events listed in Sections 2.5 or 2.6 above to any Guarantor of the Loan or any one of them.

**Section 2.8.** **<u>Unauthorized Transfer Or Encumbrance Or Transfer of Interests</u>.** A transfer or encumbrance in contravention of Section 1.9 of this Deed of Trust; or Section 1.17 of this Deed of Trust.

**Section 2.9.** **<u>Senior Lien In Bankruptcy</u>.** The existence of a lien or security interest senior or of equal priority to the lien and security interest of this Deed of Trust created pursuant to Section 364 of the United States <u>Bankruptcy Code</u>, as amended.

**Section 2.10.** **<u>Default Under Permitted Liens</u>.** A default under any document or instrument creating a lien or security interest in all or any part of the Secured Property, whether senior, junior, or of equal priority to the lien and security interest of this Deed of Trust, and such default is not cured within the applicable cure period.

**Section 2.11.** **<u>Denial Of Validity Or Enforceability</u>.** The validity or enforceability of this Deed of Trust shall be contested by the Grantor, or the Grantor shall deny that the Grantor has any or any further liability hereunder.

**Section 2.12.** **<u>Failure To Give Notice Of Default.</u>** The failure by the Grantor to advise the Beneficiary promptly of the existence of any condition or event, which is known or which reasonably should be known to the Grantor and which is or which will be with the giving of notice a default under any of the Loan Documents, including this Deed of Trust.

**Section 2.13.** **<u>Cross Default.</u>** A default under any obligation or Indebtedness owed or guaranteed by the Grantor or any Guarantor of the Loan to the Beneficiary or to any other lender, regardless, in either case, of when created or whether secured or unsecured and the expiration of any applicable cure period.

**Section 2.14.** **<u>Failure to Maintain Insurance or Pay Impositions</u>.** Failure by Grantor to keep the Secured Property continuously insured as provided in Section 1.4 of this Deed of Trust or to pay the impositions referred to in Section 1.3 hereof.

**Section 2.15.** **Misrepresentations in Loan Documents.** Any representation contained in this Deed of Trust, or any financial statement, certificate or other information furnished to the Beneficiary in connection with the Loan or the transactions contemplated hereunder was knowingly false or misleading in any material respect at the time it was made or delivered.

**Section 2.16.** **Material Adverse Change in Financial Condition.** If the Beneficiary determines in good faith that a material adverse change has occurred (a) in the financial condition of the Grantor or any Guarantor of the Loan from the financial condition set forth in the most recent financial statements furnished to the Beneficiary or from the financial condition of the Grantor or any Guarantor of the Loan most recently disclosed to the Beneficiary, or (b) to the Secured Property such that the Beneficiary's security for the obligation is impaired.

## ARTICLE 3
## RIGHTS ON EVENT OF DEFAULT

Upon the occurrence of an Event of Default, the Trustees or the Beneficiary may, at their sole and absolute option and without notice or demand, accelerate and declare immediately due and payable all Indebtedness, and institute foreclosure proceedings as provided below and may, with or without declaring the Indebtedness immediately due and payable, and with or without foreclosing, exercise any other right or remedy provided for herein, in the Note in any other Loan Document, or under law, in equity, by statute, regulation or otherwise.

**Section 3.1.** **Acceleration.** Upon the occurrence of an Event of Default, the Beneficiary, at its sole and absolute option and without notice or demand, may accelerate and declare immediately due and payable all sums due on the Note, this Deed of Trust, and any of the other Loan Documents. This Deed of Trust is "subject to call upon default" as that phrase is construed under Section 55.1-325(4) of the Code of Virginia, as amended.

**Section 3.2.** **Foreclosure: Sale of Secured Property.** Upon an acceleration and on the direction of the Beneficiary, the Trustees may take possession of the Secured Property or any portion thereof and sell the same at auction. Except as otherwise specifically provided herein, any sale of the Secured Property by the Trustees, shall be made in accordance with the provisions of Sections 55.1-320, 55.1-321, 55.1-322, 55.1-323, 55.1-324 and 55.1-339 of the Code of Virginia, as amended, or other applicable general or local laws of the Commonwealth of Virginia or judicial rules of procedure relating to the foreclosure of deeds of trust. Any sale of the Secured Property may be made after advertising the time, terms and place of sale either: (a) once a week for four (4) consecutive weeks; or (b) once a day for five (5) consecutive days, in a weekly or daily newspaper, as the case may be, which is published in, or has a general circulation in, the county or city wherein the Real Property is situated, at the discretion of the Trustees. The terms of the sale may be cash upon settlement of the sale or upon such other and additional terms as the Trustees deem necessary, proper or convenient, except as specifically limited by applicable law or court rule. Such sale may be of the entire Secured Property as a unit or of such parts or parcels of the entire Secured Property as the Trustees, in their sole and absolute discretion, deem necessary, proper, or convenient.

**3.2.1. Application Of Proceeds.** Upon the sale of the Secured Property, the proceeds shall be applied in accordance with Section 55.1-324.A(3) of the Code of Virginia, as amended.

**3.2.2. Trustees Commissions.** In the event the Indebtedness shall be paid after the advertising or filing of a foreclosure proceeding with the appropriate court, but before sale of the Secured Property, the Grantor shall also be required to pay all of the expenses of any advertisement or notice, all court costs, attorneys' fees, and all other expenses incident to or resulting from the foreclosure proceedings under this Deed of Trust, and a commission to the Trustees equal to the greater of: (a) $5,000; or (b) the product determined by multiplying the actual hours spent by the Trustees with respect to such advertising or filing, by the normal and ordinary hourly rate charged by the Trustees for such services. In the event of the occurrence of the sale of all or any part of the Secured Property pursuant to the terms thereof, the Grantor shall pay to the Trustees a commission equal to five percent (5%) of the gross sales prices with respect to the property so sold. The payment of the amount set forth in this section is hereby secured in like manner as other charges and expenses attending the execution of and performance under this Deed of Trust.

**3.2.3. Beneficiary May Bid.** Upon any sale made under or by virtue of this Article 3, the Beneficiary may bid for and acquire the Secured Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting against the Indebtedness the net sales price after deducting therefrom the expenses and costs of the sale and any other sums which the Beneficiary is authorized to deduct under this Deed of Trust or is required to pay pursuant to Section 55.1-324.A(3) of the Code of Virginia, as amended.

**3.2.4. Leases.** In the event of a sale of the Secured Property, such sale may be made, at the option of the Beneficiary, subject to one or more of the tenancies entered into subsequent to the recording of this Deed of Trust.

**3.2.5. Rents.** The Trustees in any foreclosure proceedings under the provisions of this Deed of Trust shall be entitled, without regard to the adequacy or inadequacy of any security for the Obligations, to the appointment of a receiver to collect the rents and account therefor as the court may direct and to take possession of the Secured Property and operate the same.

**Section 3.3. Possession.** The Grantor may retain possession of the Secured Property so long as an Event of Default has not occurred, but upon the occurrence of an Event of Default, which has not been timely cured as set forth above, the Trustees or the Beneficiary may assume possession of the Secured Property and dispossess the Grantor therefrom, although the Grantor shall remain fully liable to the same extent as though in possession and not dispossessed by the Trustees or the Beneficiary. In the event the Trustees or the Beneficiary assume possession of the Secured Property, the Trustees or the Beneficiary may make repairs, renovations, and replacements with respect to the Secured Property and take all necessary steps to preserve and protect the Secured Property, and the reasonable costs and expenses of the Trustees or the

Beneficiary in performing such acts shall be fully secured by this Deed of Trust, even though in excess of the face amount thereof.

**Section 3.4. Appointment Of Receiver.** Upon the occurrence of any Event of Default, , which has not been timely cured as set forth above, the Trustees and the Beneficiary shall be entitled, as a matter of right, without notice to the Grantor and without regard to the adequacy of the security for the Obligations, to the immediate appointment of a receiver of the Secured Property, which receiver shall have the right and power to possess and operate the Secured Property, to collect the rents (including without limitation the Rents), profits, revenues and benefits derived therefrom, and all other rights and powers as the court making such appointment shall confer. The Grantor shall deliver to the receiver appointed, or to the Trustees or the Beneficiary if the Trustees or the Beneficiary take possession of the Secured Property or any portion thereof, all original records, books, bank accounts, Leases, agreements, security deposits of Lessees and all other monies, properties and materials relating to the Secured Property and the operation thereof.

**Section 3.5. Right To Maintain Separate Action.** In the event the Grantor shall fail to pay timely such amounts as may be due on the Note, this Deed of Trust, or any other Loan Document, the Beneficiary shall be entitled or empowered to institute such action or proceedings at law or in equity as may be advised by its counsel for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgments or final decree against the Grantor and collect, out of the property of the Grantor wherever situated, as well as out of the Secured Property, in any manner provided by law, monies adjudged or decreed to be payable. The Beneficiary shall be entitled to recover judgment as aforesaid before, after, or during the pendency of any proceedings for the enforcement of the provisions of this Deed of Trust, or the foreclosure of the lien hereof. In the event of a sale of the Secured Property, and of the application of the proceeds of sale as provided in this Deed of Trust, to the payment of the Indebtedness, the Beneficiary shall be entitled to enforce payment of and to receive all amounts then remaining due and unpaid upon the Indebtedness, and shall be entitled to recover judgment for any portion of the Indebtedness remaining unpaid, with interest as provided in the Note. No recovery of any judgment by the Beneficiary and no levy of an execution under any judgment upon the Secured Property or upon any other property of the Grantor shall affect in any manner or to any extent the lien of this Deed of Trust upon the Secured Property or any part thereof, or any liens, rights, powers, or remedies of the Trustees or of the Beneficiary hereunder, and such liens, rights, powers, and remedies shall continue unimpaired as before. Any monies thus collected by the Beneficiary under this section shall be applied by the Beneficiary in accordance with the provisions of this Deed of Trust and applicable law.

**Section 3.6. Waivers Of Stay, Exemptions.** The Grantor shall not at any time insist upon, or plead, or in any manner whatsoever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution of sale of the Secured Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take, or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Secured Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provisions herein, or pursuant to the decree, judgment, or order of any court of