competent jurisdiction; nor after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to the Trustees, but to suffer and permit the execution of every power as though no law or laws had been made or enacted. The Grantor, for the Grantor and all who may claim under the Grantor, waives, to the extent that the Grantor lawfully may, all right to have the Secured Property marshalled upon any foreclosure hereof.

**Section 3.7.** Uniform Commercial Code. The Beneficiary, or the Trustees acting on behalf of the Beneficiary, may exercise all rights and remedies of a secured creditor under the Virginia Uniform Commercial Code, as amended, with respect to any part of the Secured Property constituting personal property and subject to the security interest created by this Deed of Trust, including the right to take possession of the Personalty without the use of judicial process (the Grantor hereby waiving all right to prior notice and a judicial hearing) and the right to require the Grantor to assemble the same at the Real Property or such other place as the Beneficiary or Trustees may notify the Grantor. Any disposition of so much of the Secured Property as may constitute personal property and subject to the security interest created by this Deed of Trust shall be considered commercially reasonable if made pursuant to a public sale which is advertised at least twice in a newspaper of local circulation in the community where the Real Property is located. Any notice required by the Virginia Uniform Commercial Code to be given to the Grantor shall be considered reasonable and properly given if given in the manner and at the address provided in the notice provisions of the Deed of Trust at least ten (10) calendar days prior to the date of any scheduled public sale.

**Section 3.8.** Automatic Acceleration. Should there occur an event which would, with the giving of notice, the passage of time, or both, constitute an Event of Default hereunder and if a voluntary or involuntary petition under the United States Bankruptcy Code thereafter is filed by or against the Grantor while such event remains uncured, the Indebtedness shall be automatically accelerated and due and payable and the default rate of interest provided for in the Note shall automatically apply as of the date of the first occurrence of the event which would, with the giving of notice, the passage of time or both constitute an Event of Default, without any notice, demand or action of any type on the part of the Trustees or Beneficiary (including any action evidencing the acceleration or imposition of the default rate of interest). The fact that the Trustees or Beneficiary have, prior to the filing of the voluntary or involuntary petition under the United States Bankruptcy Code, acted in a manner which is inconsistent with the acceleration and imposition of the default rate of interest provided for in the Note shall not constitute a waiver of this section nor estop the Trustees or Beneficiary from asserting or enforcing the Beneficiary's rights hereunder.

**Section 3.9.** Remedies Nonexclusive. The rights and remedies provided in this Article 3 upon the occurrence of an Event of Default shall be nonexclusive and shall be in addition to all other remedies and rights available under this Deed of Trust, the Note, and any other Loan Document or applicable law. All rights and remedies available in the Event of Default shall be cumulative and the exercise of any one or more of the available rights and remedies shall not be

considered as or result in a waiver of any other right or remedy and any particular right or remedy may be exercised in conjunction with any or all other rights and remedies provided hereunder or under any other Loan Document.

**Section 3.10.** **Indemnification.** If the Beneficiary or any of its affiliates acquires the Secured Property after a foreclosure sale or public auction, the Grantor agrees to indemnify and hold the Beneficiary harmless from any loss, cost or expense which the Beneficiary may sustain as a result of: (a) selling the Secured Property so acquired for less than the then outstanding Indebtedness, provided, however, that any such sale by the Beneficiary is done in a commercially reasonable manner; (b) any action brought against the Beneficiary under Section 548 of the United States Bankruptcy Code, as amended, on the ground that the consideration paid by the Beneficiary for the Secured Property was not "reasonably equivalent value"; or (c) any action brought against the Beneficiary under any applicable state fraudulent conveyance act or under Section 544(b) of the United States Bankruptcy Code, as amended, on the ground that the consideration paid by the Beneficiary for the Secured Property was not "fair consideration" or was otherwise inadequate.

## ARTICLE 4
## APPLICATION OF NET PROCEEDS

**Section 4.1** **Application of Net Proceeds.** Net Proceeds (defined below) received by the Trustees, the Beneficiary or the Grantor by reason of (i) damages to or destruction of the Secured Property, or (ii) the exercise of the power of eminent domain, or (iii) the right of any governmental body or agency to purchase any part of the Secured Property, or (iv) a sale of the Secured Property by the Grantor in reasonable anticipation of the taking thereof by eminent domain, shall, at the direction of the Beneficiary, be applied either to the repair, restoration and replacement of the damaged or destroyed property or toward the payment of the Indebtedness. Provided that no Event of Default exists, Net Proceeds in an amount of less than $100,000 shall be applied to restoration or replacement of the property which was damaged or destroyed upon receipt by the Beneficiary of evidence satisfactory to it that (i) sufficient funds are available to pay the costs of restoring or replacing the Secured Property; (ii) rent loss/business interruption insurance is in place in an amount sufficient to cover all expenses and debt service on the Secured Property for a twelve (12) month period; (iii) the value of the completed Secured Property shall be at least equal to the value of the Secured Property immediately prior to the damage or destruction; and (iv) the restoration or replacement will be completed within the earlier of six (6) months from the date of such damage or destruction or the maturity date of the Loan. The foregoing sentence shall not apply to the application of any condemnation awards, such application to be in the sole and absolute discretion of the Beneficiary.

The term "Net Proceeds" shall mean when used with respect to any condemnation award or insurance proceeds allocable to the Secured Property, the gross proceeds from condemnation or insurance allocable, with respect to which that term is used, remaining after payment of all expenses (including reasonable attorneys' fees) incurred in the collection of such gross proceeds.

**Section 4.2.** **Repair in Accordance with Satisfactory Procedures**. Any repair, restoration or replacement shall be in accordance with procedures reasonably satisfactory to the Beneficiary.

**Section 4.3.** **Net Proceeds Held in Trust**. Any and all Net Proceeds to be received by the Grantor hereby are deemed to be, and shall be, held by the Grantor in trust for the benefit of the Beneficiary.

**Section 4.4.** **Notice**. In the case of any material damage to or destruction of any part of the Secured Property, the Grantor shall give notice within five (5) days thereof to the Beneficiary. In case of any taking of all or part of the Secured Property as provided in Section 4.1, the party upon which notice of such taking is served shall give notice within five (5) days thereof to the other. Each such notice shall describe generally the nature and extent of such damage, destruction, taking, loss, proceeding or negotiation.

**Section 4.5.** **Obligation to Pay**. Unless the payments required to be made under the Note have been accelerated pursuant to Section 3.1 hereof, if prior to the full payment of the Note any of the events described in Section 4.1 shall occur, the Grantor shall be obligated to continue to pay the amounts specified in the Note.

## ARTICLE 5
## MISCELLANEOUS

**Section 5.1.** **Substitute Or Successor Trustees**. The irrevocable power to remove and substitute one or more of the Trustees named herein or substituted therefor is expressly given to the Beneficiary and may be exercised any time, or from time to time, without notice and without specifying any reason, by filing for record among the land records where this Deed of Trust is recorded a deed of appointment, and upon the filing of a deed of appointment all of the title and estate, powers, rights, and duties of the Trustee or the Trustees thus superseded shall terminate and shall be vested in the successor Trustee or the Trustees. The Grantor, the Beneficiary and the Trustees, their substitutes and successors, expressly waive notice of the exercise of this power, the giving of bond by any Trustee, and any requirement for application to any court for removal, substitution or appointment of a Trustee hereunder. In addition, the act of any one (1) Trustee, whether such Trustee is a sole acting Trustee or whether there is more than one (1) acting Trustee, shall be sufficient and effective for all purposes set forth herein and any Person may rely upon any document or instrument executed and delivered by one (1) Trustee, to the same extent as though the document had been executed by all of the Trustees.

**Section 5.2.** **Warranties**. The Grantor warrants specially the Secured Property and that it has good and marketable title thereto, and that it will forever warrant and defend the same and the validity and priority of the lien and security interest of this Deed of Trust to the Trustees and the Beneficiary against the claims of any and all other Persons. The Grantor further warrants that Grantor will execute such other and further assurances as may be requisite.

**Section 5.3.** **Waivers**. The Beneficiary may at any time or from time to time waive all or any rights under this Deed of Trust or any other Loan Document, but any waiver or indulgence by the Beneficiary at any time or from time to time shall not constitute, unless specifically so expressed by the Beneficiary in writing, a future waiver of performance or exact performance by the Grantor.

**Section 5.4.** **No Third Party Beneficiary Rights**. No Person not a party to this Deed of Trust shall have any benefit hereunder nor have third party beneficiary rights as a result of this Deed of Trust or any other Loan Document, except as set forth herein or therein, nor shall any Person be entitled to rely on any actions or inactions of the Beneficiary or the Trustees, all of which are done for the sole benefit and protection of the Beneficiary.

**Section 5.5.** **Continuing Obligation Of Grantor**. The terms, conditions, and covenants set forth herein and in the other Loan Documents shall survive closing and shall constitute a continuing obligation of the Grantor during the course of the transaction contemplated herein.

**Section 5.6.** **Binding Obligation**. This Deed of Trust shall be binding upon the parties and their personal representatives, successors and assigns.

**Section 5.7.** **Final Agreement**. This Deed of Trust and the Loan Documents contain the final and entire agreement and understanding of the parties, and any terms and conditions not set forth in this Deed of Trust or the Loan Documents are not a part of this Deed of Trust and the understanding of the parties hereto.

**Section 5.8.** **Amendment**. This Deed of Trust may be amended or altered only in a writing signed by the party to be bound by the amendment, change or alteration.

**Section 5.9.** **Photocopies Sufficient**. A carbon, photographic, or other reproduction of this Deed of Trust shall be sufficient as a financing statement.

**Section 5.10.** **Notices**. Any notice required or permitted by or in connection with this Deed of Trust shall be in writing and shall be made by hand delivery, by Federal Express, or other similar overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to the respective parties at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by the respective parties. Notice shall be considered given as of the date of hand delivery, one (1) business day after delivery to Federal Express or similar overnight delivery service, or three (3) business days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was given as provided herein. If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given and shall be effective as of the date herein provided.

If to the BENEFICIARY: ATLANTIC UNION BANK

5803 Rolling Road
Springfield, VA 22152
Attn: Anthony Wininger

With a copy to: Vincent J. Keegan, Esquire
Keegan & DeVol, PLC
8280 Greensboro Drive, Suite 710
McLean, VA 22102

If to the TRUSTEES: UNION SERVICE CORPORATION
5803 Rolling Road
Springfield, VA 22152

If to the GRANTOR: BNG GROUP LLC
2 Pidgeon Hill Drive, Suite 100
Sterling, VA 20165

**Section 5.11.** **Modification to Note, Deed of Trust, Etc.** The Beneficiary may at any time extend the time for payment of the Obligations, or any part thereof, or interest thereon, and waive any of the covenants or conditions in the Note or in the Deed of Trust contained, in whole or in part, either at the request of the Grantor or of any Person having an interest in the Secured Property, take or release other security, release any part of the Secured Property from the effect of this Deed of Trust, release any party primarily or secondarily liable on the Note or on such other security, grant extensions, renewals or indulgences therein, apply to the payment of the principal and interest and premium, if any, of the Obligations any part or all of the proceeds obtained by sale or otherwise as herein provided, without resort or regard to other security, or resort to any one or more of the securities or remedies which the Beneficiary may have and which in its absolute discretion it may pursue for the payment of all or any part of the Obligations at that time, in such order and in such manner as it may determine, all without in any way releasing the Grantor from any of the covenants, agreements or conditions of the Note or of this Deed of Trust, and without releasing any remaining property from the effect of this Deed of Trust.

**Section 5.12.** **Incorporation By Reference.** The terms, conditions, and provisions of the Note, the Loan Agreement, and each of the other Loan Documents are incorporated by reference in this Deed of Trust to the same extent as if set forth in full in this Deed of Trust. Should any of the terms, conditions, and provisions of the Note, the Loan Agreement, or any of the other Loan Documents conflict with the terms, conditions, or provisions of this Deed of Trust, the Trustees or the Beneficiary shall select which of the terms, covenants, and conditions shall govern and control.

**Section 5.13.** **Terminology.** Whenever used herein, the term the "Grantor" includes the personal representatives, successors, and assigns of the Grantor; the term "Trustees" includes the successors and assigns of the Trustees and any substitute or successor Trustee or Trustees; and the term "Beneficiary" includes all holders from time to time of the beneficial interest

in the Note. The use of the singular includes the plural, and the plural includes the singular. The use of any gender applies to all genders.

**Section 5.14.** __Joint And Several Liability__. If there exists more than one Grantor, all liabilities under this Deed of Trust shall be joint and several with respect to the Grantors.

**Section 5.15.** __Invalidity__. If any provision or part of any provision contained in this Deed of Trust shall be found for any reason to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions or the remaining part of any effective provisions of this Deed of Trust and this Deed of Trust shall be construed as if such invalid, illegal, or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality, or unenforceability.

**Section 5.16.** __Choice Of Law__. The laws of the Commonwealth of Virginia shall govern and be applied to determine all issues relating to this Deed of Trust and the rights and obligations of the parties hereto, including the validity, construction, interpretation, and enforceability of this Deed of Trust and its various provisions and the consequences and legal effect of all transactions and events which resulted in the execution of this Deed of Trust or which occurred or were to occur as a direct or indirect result of this Deed of Trust having been executed. This Deed of Trust is made under and pursuant to the provision of Sections 55.1-318, 55.1-320 and 55.1-325 of the Code of Virginia, and the acts amendatory thereof, and shall be construed to impose and confer on the parties hereto all of the duties, rights and obligations described in said Sections and the acts amendatory thereto (except insofar as the provisions of said Sections and said acts are herein modified).

**Section 5.17.** __Consent To Jurisdiction; Agreement As To Venue__. The Grantor irrevocably consents to the non-exclusive jurisdiction of the courts of the Commonwealth of Virginia and of the United States District Court for the Eastern District of Virginia, Alexandria Division, if a basis for federal jurisdiction exists. The Grantor agrees that venue shall be proper in any circuit court of the Commonwealth of Virginia selected by the Beneficiary or in the United States District Court for the Eastern District of Virginia, Alexandria Division, if a basis for federal jurisdiction exists and waives any right to object to the maintenance of a suit in any of the state or federal courts of the Commonwealth of Virginia on the basis of improper venue or of inconvenience of forum.

**Section 5.18.** __Time__. Time is of the essence of all Obligations.

**Section 5.19.** __Disclosure__. Beneficiary may from time to time assign or grant participations in the Loan and/or the Obligations, and Grantor consents to the delivery by Beneficiary to any acquirer or prospective acquirer of any interest or participation in or with respect to all or part of the Loan and/or the Obligations such information as Beneficiary now or hereafter has relating to the Secured Property, Grantor, any party obligated for payment of any part of the Obligations, any tenant or guarantor under any Lease with respect to all or any part of the Secured Property and any agent or guarantor under any management agreement affecting any part of the Secured Property.

SIGNATURES APPEAR ON FOLLOWING PAGE

**IN WITNESS WHEREOF**, the Grantor has duly executed this Deed of Trust under seal as of the date first above written (notwithstanding the actual date of execution and delivery hereof).

**GRANTOR:**
BNG GROUP LLC

By: Harry D. Kamin (SEAL)
HARRY KAMIN, Manager

By: Valeria Gunkova (SEAL)
VALERIA GUNKOVA, Manager

**COMMONWEALTH OF VIRGINIA** :
: **to wit:**
**CITY/COUNTY OF** Fairfax :

I HEREBY CERTIFY that on this 30 day of October, 2020, before me, the undersigned Notary Public of the jurisdiction aforesaid personally appeared HARRY KAMIN and VALERIA GUNKOVA, and acknowledged themselves to be Managers of BNG GROUP LLC, and that they, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

__________________ (SEAL)
Notary Public

My Commission expires: 6/30/24

Registration # : 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

**EXHIBIT "A"**

All that certain lot or parcel of land situate, lying and being in Loudoun County, Virginia, to-wit:

Parcel J-3, containing 3.4435 acres of land, more or less, Professional Office/Commercial Park, Countryside, as more particularly shown on Plat entitled "Boundary Line Adjustment Parcels C-3, F-2, J-2, K-2 and O-1, Professional Office/Commercial Park, Countryside" and attached to Deed of Boundary Line Adjustment and Deeds of Trust Modification recorded in Instrument No. 20041020-0112921 and Plat recorded as Instrument No. 20041020-0112922, among the land records of Loudoun County, Virginia.

(NOTE: PURSUANT TO OWNER'S TERMINATION AGREEMENT OF COUNTRYSIDE CENTRE OFFICE CONDOMINIUM DATED JANUARY 31, 2018 AND RECORDED FEBRUARY 16, 2018 AS INSTRUMENT #20180216-0009064.)

20201102-0105032
Electronic Recording
Loudoun County, VA Pages:7
11/2/2020 1:11:45 PM
Gary M. Clemens, Clerk

PIN: 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-000

## ASSIGNMENT OF RENTS AND LEASES

30th THIS ASSIGNMENT OF RENTS AND LEASES ("Assignment") is made as of the 30th day of October, 2020, by and between **BNG GROUP LLC**, a Virginia limited liability company (the "Assignor") and **ATLANTIC UNION BANK** (the "Lender").

## RECITALS

A. The Lender has agreed to make a purchase money loan to the Assignor in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Loan"). The Loan is being made to the Assignor pursuant to the terms of a Loan and Security Agreement of even date herewith between the Assignor and the Lender (the "Loan Agreement") and is evidenced by a Promissory Note of even date herewith in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** made by the Assignor and payable to the order of the Lender (the "Note"). All capitalized terms used herein shall have the meanings given to them as set forth in the Loan Agreement, unless otherwise defined herein or unless the context clearly indicates otherwise.

B. The obligations of the Assignor under the Note are secured by (among other things) a Deed of Trust, Assignment of Rents and Security Agreement of even date herewith from the Assignor to the trustees named therein on behalf of the Lender (the "Deed of Trust") encumbering certain land and the improvements thereon located in Loudoun County, Virginia, as the same is more particularly described on Exhibit "A" attached hereto and made a part hereof (the "Property").

C. As a condition of making the Loan to the Assignor, the Lender has required the Assignor to assign to the Lender all leases and rents relating to the Property in order to secure the obligations of the Assignor under the Loan. As used in this Assignment, the term "Obligations" shall mean the obligations of the Assignor: (a) to pay when and as due all amounts owed by the Assignor to the Lender in connection with the Loan, as provided in the Note and all other documents executed by the Assignor in connection with the Loan (collectively referred to as the "Loan Documents"), and (b) to perform and observe all of the terms, provisions, covenants and conditions set forth and contained in the Loan Documents, including but not limited to all duties of payment, performance and completion.

Stewart Title & Escrow, Inc
10505 Judicial Drive, Suite 300
Fairfax, VA 22030

2000097 (AP)

## WITNESSETH

NOW, THEREFORE, in consideration of these premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor agrees as follows:

1. **Absolute Assignment Of Leases And Rents and Guaranties.** The Assignor hereby absolutely, unconditionally and irrevocably assigns to the Lender: (a) all present and future leases of all or any part or portion of the Property, and all extensions and renewals thereof and substitutions therefor, independent of the term or duration thereof and whether or not evidenced by a written document (collectively, the "Leases", or individually, a "Lease") and (b) all rent and other sums payable with respect to the Leases (collectively, the "Rents"), including but not limited to any and all fees, charges, reimbursements, casualty insurance proceeds, option payments, payments made in consequence of any defaults by any lessees or tenants under the Leases (collectively, the "Lessees", or individually, a "Lessee") or in settlement, compromise or satisfaction of any obligations of a Lessee due the Assignor as a result or in consequence of the Leases and further including all claims and rights to the payment of money at any time arising in connection with any of the Leases or breaches of any of the Leases, or rejections of any of the Leases by any Lessee thereunder or trustee of such Lessee under Section 365 of the United States Bankruptcy Code, as amended, all rights to recover damages arising out of any of such breaches or rejections, all rights to take charges payable by such Lessee or trustee of such Lessee with respect to the portion of the Property covered by the Lease following the entry of any order for relief under the United States Bankruptcy Code in respect of such Lessee and all rentals and other charges outstanding under the Lease as of the date of the entry of the order for relief. The Assignor further assigns to the Lender any and all rights which the Assignor may have to collect Rents from any person who has guaranteed in whole or in part the obligations of the Lessee under any Lease. The Assignor shall supply the Lender, upon request, with copies of all written guaranty agreements and the names and mailing addresses of all guarantors, and the Lender may require a written consent to the assignment of the guaranty, in a form approved by its counsel, from all guarantors whose guaranty has been assigned. The Assignor shall not alter, amend, modify, terminate, cancel, or release any guaranty or do or permit to be done any act which would release a guarantor of liability under a guaranty. The Assignor shall take all steps which may be required to preserve and maintain a guarantor's liability under the guaranty and the enforceability thereof and shall advise the Lender of any defense or claim or alleged defense or claim of nonliability, whether in whole or in part, by any guarantor coming to the Assignor's attention.

2. **Nature Of The Assignment.** This Assignment of the Leases and Rents is absolute, unconditional and immediate and is intended to transfer and convey to the Lender the present right to the Leases and the Rents, including any and all rights of the Assignor to collect Rents from any person who has guaranteed in whole or in part the obligations of any Lessee under such Lessee's Lease. The rights provided to the Lender by this Assignment are primary and not secondary and are of equal parity to and arise and exist separate and independent of the Lender's rights as beneficiary under the Deed of Trust. The assignment made hereby is neither collateral nor for additional security. Provided no Event of Default (as hereinafter defined) has occurred and is continuing, the Assignor shall have a revocable license to operate and manage the Property and to collect all Rents and other sums due under the Leases. After an Event of Default has occurred and while continuing, the Assignor's license to collect Rents shall immediately terminate, and the Lender automatically and without any affirmative action on the part of the Lender thereupon shall be entitled immediately and exclusively to collect all Rents.

3. **Termination Of Assignment.** All rights of the Lender in or to the Leases and the Rents shall end immediately upon full satisfaction by the Assignor of all of the Obligations. The

execution and recordation among the land records of a deed of release or certificate of satisfaction of the Deed of Trust with respect to the Property shall automatically and without the execution or recordation among the land records of a specific and separate release or reassignment by the Lender be a release and reassignment of this Assignment.

4. **Lender Has All Rights of Assignor Under Leases.** The Lender shall have all rights and privileges of the Assignor, either as provided in any written lease document between the Assignor and the Assignor's Lessee, or as provided by law with respect to the Leases and Rents. The Lender shall have no obligation to enforce the Lender's rights and remedies with respect to the Leases and Rents in the name of or on behalf of the Assignor, and may do so directly in the Lender's own name. The contrary notwithstanding, the Lender shall have no obligation or duty to enforce payment or collection of Rent and shall be chargeable only with such Rent as may actually be received.

5. **Lender Has No Obligation To Perform Assignor's Obligations Under Lease.** The Lender shall have no obligation to the Assignor or to any Lessee to perform the Assignor's obligations under any Lease. The Assignor agrees to indemnify and hold the Lender harmless (including payment of the Lender's reasonable counsel fees) from any attempts by any Lessee to force or compel the Lender to meet the Assignor's obligations to such Lessee. The Assignor further covenants and agrees to satisfy and fulfill all of the Assignor's obligations under the Leases in accordance with the terms and provisions thereof.

6. **Application Of Rent Collected.** Any sum of Rent in fact collected by the Lender, less any expense of collection and less any reasonable attorneys' fees in the event suit is required for collection, shall be applied to satisfy the Obligations. Any Rents collected by the Assignor shall be used by the Assignor to satisfy the Obligations to the extent then due. Unless an Event of Default has occurred and is continuing, the Assignor may retain any Rents collected by the Assignor and not required to satisfy the Obligations to the extent then due and the assignment created by this Assignment shall terminate as to such Rents retained by the Assignor.

7. **No Advance Collection Of Rent.** The Assignor shall not collect Rents from any Lessee more than thirty (30) days in advance of its due date.

8. **Copies of Leases; Subordination of Leases.** Assignor shall supply the Lender with copies of all written Leases and the names and mailing addresses of all Lessees. All Leases shall be subordinate to this Assignment and the Deed of Trust and shall specifically so provide, unless the Lender shall elect in writing to the contrary.

9. **Maintenance of Lessees' Liabliities.** The Assignor will take all steps which may be required to preserve and maintain any Lessee's liability under the Lessee's Lease and the enforceability thereof and shall promptly advise the Lender of any defense or claim or alleged defense or claim of non-liability, whether in whole or in part, by any Lessee coming to the Assignor's attention.

10. **Security Deposits.** In the event the Assignor has collected any security deposits from any Lessees, the Assignor assigns to the Lender such security deposits to the extent of the

Assignor's rights therein. Upon request by the Lender, such security deposits shall be maintained in an escrow account at the Lender separate and apart from the Assignor's other funds. Withdrawals from the escrow account shall not be made without the prior written approval of the Lender except upon the expiration of a Lease for the purpose of reimbursing a Lessee. The Assignor immediately shall relinquish control of the security deposits in favor of the Lender upon the occurrence of an Event of Default.

11. **Lessees and Guarantors May Rely On This Assignment.** The Assignor irrevocably authorizes all Lessees and guarantors to rely upon and comply with any notice or demand by the Lender for payment to the Lender of any rents or for performance of any obligation and the Assignor releases and discharges all Lessees and guarantors from any and all liability to the Assignor for so complying. All Lessees and guarantors shall have no right or duty to inquire as to whether any Event of Default hereunder has occurred or is existing.

12. **No Further Assignments; Recordation; Lender Not Mortgagee In Possession.** The Assignor shall not make any further assignments of Rents or Leases regarding the Property while this Assignment is in effect except in favor of the Lender. This Assignment may be recorded among the land records by the Lender at the Assignor's expense. Nothing contained herein shall be deemed to constitute the Lender as a mortgagee in possession.

13. **Default.** The following shall constitute an Event of Default under this Assignment: (a) the failure of the Assignor to satisfy or perform any of the Obligations, when and as due; (b) the failure of the Assignor to perform and observe any of the terms and conditions contained herein; or (c) the occurrence or happening of any act, event or condition which would constitute an Event of Default under any of the Loan Documents.

14. **Rights Of Lender Upon The Occurrence Of An Event of Default.** Upon the occurrence of an Event of Default, the Lender may, in addition to any other right or remedy which the Lender may have under any other Loan Document or applicable law, upon fifteen (15) days' advance written notice: (a) collect all Rents and enforce all Leases, and to this end notify the Lessees forthwith to forward all Rents directly to the Lender and enforce the Leases against the Lessees if the Lessees fail to comply therewith; and (b) take possession of the Property to the extent authorized by the Deed of Trust and operate and manage the Property.

15. **Further Assurances.** The Assignor shall execute any further or additional documents considered necessary, appropriate or proper by the Lender so as to effectuate the purposes and intent of this Assignment.

16. **Lender May Assign This Assignment.** This Assignment may be assigned by the Lender. Upon an assignment, the Lender's assignee shall obtain all of the rights of the Lender hereunder, except as may have been expressly limited herein.

17. **Binding Nature.** This Assignment shall inure to the benefit of the Lender and Lender's successors and assigns, and shall be binding upon the Assignor and Assignor's personal representatives, successors and assigns, whether assigned in violation of or in compliance with this Assignment.

**18.** **Amendment.** The terms and conditions of this Assignment may be amended only by a writing executed by the parties hereto with the same formality as this Assignment.

**19.** **Notices.** Any notice required or permitted hereunder shall be in writing and shall be made to the Lender or the Assignor at the addresses set forth in the Deed of Trust or to such other address or addresses as may be hereafter specified in writing, and shall be given in accordance with the procedures specifically set forth in the Deed of Trust.

**20.** **Choice of Law/ Consent To Jurisdiction/Agreement As To Venue.** This Assignment shall be deemed to be executed in, and governed by, the laws of the Commonwealth of Virginia. The Assignor irrevocably consents to the non-exclusive jurisdiction of the courts of the Commonwealth of Virginia and the United States District Courts for the Eastern District of Virginia (Alexandria Division), if a basis for federal jurisdiction exists. The Assignor agrees that venue shall be proper in any circuit court of the Commonwealth of Virginia selected by the Lender or in the United States District Court for the Eastern District of Virginia (Alexandria Division) if a basis for federal jurisdiction exists and waives any right to object to the maintenance of a suit in any of the aforementioned state or federal courts within the Commonwealth of Virginia on the basis of improper venue or of inconvenience of forum.

SIGNATURE APPEARS ON FOLLOWING PAGE

**IN WITNESS WHEREOF,** the Assignor has executed this Assignment as an instrument under seal as of the date first above written.

**ASSIGNOR:**
BNG GROUP LLC

By: Harry D Kamin (SEAL)
HARRY KAMIN, Manager

By: [signature] (SEAL)
VALERIA GUNKOVA, Manager

**COMMONWEALTH OF VIRGINIA** :
: **to wit:**
**CITY/COUNTY OF** Fairfax :

I HEREBY CERTIFY that on this 30th day of October, 2020, before me, the undersigned Notary Public of the jurisdiction aforesaid personally appeared HARRY KAMIN and VALERIA GUNKOVA, and acknowledged themselves to be Managers of BNG GROUP LLC, and that they, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

[signature] (SEAL)
Notary Public

My Commission expires: 6/30/24 Registration # : 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA



GUNKOVA_000235

**EXHIBIT "A"**

(Description of the Property)

All that certain lot or parcel of land situate, lying and being in Loudoun County, Virginia, to-wit:

Parcel J-3, containing 3.4435 acres of land, more or less, Professional Office/Commercial Park, Countryside, as more particularly shown on Plat entitled "Boundary Line Adjustment Parcels C-3, F-2, J-2, K-2 and O-1, Professional Office/Commercial Park, Countryside" and attached to Deed of Boundary Line Adjustment and Deeds of Trust Modification recorded in Instrument No. 20041020-0112921 and Plat recorded as Instrument No. 20041020-0112922, among the land records of Loudoun County, Virginia.

(NOTE: PURSUANT TO OWNER'S TERMINATION AGREEMENT OF COUNTRYSIDE CENTRE OFFICE CONDOMINIUM DATED JANUARY 31, 2018 AND RECORDED FEBRUARY 16, 2018 AS INSTRUMENT #20180216-0009064.)

## GUARANTY AND INDEMNIFICATION AGREEMENT

**IMPORTANT NOTICE - THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**THIS GUARANTY AND INDEMNIFICATION AGREEMENT** ("Guaranty Agreement") is entered into this 30th day of October, 2020, by **HARRY KAMIN** and **VALERIA GUNKOVA** (individually and collectively, the "Guarantor") in favor of **ATLANTIC UNION BANK** (the "Lender") and its successors and assigns.

### Explanatory Statement

A. The Lender has agreed to make a purchase money loan to **BNG GROUP LLC**, a Virginia limited liability company (the "Borrower") in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Loan"). The Loan is being made to the Borrower pursuant to the terms of a Loan and Security Agreement of even date herewith between the Borrower, Lender and Guarantor (the "Loan Agreement") and is evidenced by a Promissory Note of even date herewith in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** made by the Borrower and payable to the order of the Lender (the "Note").

B. The payment and performance of the Note are guaranteed by this Guaranty Agreement. The obligations of the Borrower under the Note are secured by (among other things) a Deed of Trust, Assignment of Rents and Security Agreement from the Borrower to the trustees named therein on behalf of the Lender (the "Deed of Trust") encumbering certain land and the improvements thereon located in Loudoun County, Virginia and an Assignment of Rents and Leases from the Borrower to the Lender (the "Assignment of Rents"), each of which instruments is of even date herewith.

C. The Guarantor desires that the Lender make the Loan to the Borrower as aforesaid and the Guarantor is willing to enter into this Guaranty Agreement in order to achieve lower interest costs and other savings to the Borrower. It is a condition of the obligation of the Lender to make the Loan that this Guaranty Agreement shall have been executed and delivered by the Guarantor.

**NOW, THEREFORE,** in consideration of the premises and for valuable consideration, the receipt and adequacy of which hereby are acknowledged, the Guarantor, subject to the terms hereof, covenants and agrees with the Lender, and with its successors and assigns as follows:

### ARTICLE I
### DEFINITIONS

All capitalized terms used herein shall have the meanings given to them as set forth in the Loan Agreement, unless otherwise defined herein or unless the context clearly indicates otherwise.

"Guaranteed Obligations" means the obligations referred to in Article III hereof.

"Loan Documents" means the Note, Loan Agreement, Deed of Trust, Assignment of Rents, and this Guaranty Agreement, as modified from time to time, together with all other documents, instruments and certificates executed by the Borrower or Guarantor in connection with the Loan.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

**Section 2.1.** **Explanatory Statement.** The Explanatory Statement is incorporated herein as part of this Guaranty Agreement.

**Section 2.2.** **Representations and Warranties of the Guarantor.** The Guarantor represents and warrants as follows:

(a) This Guaranty Agreement and the Guarantor's assumption of Guarantor's obligations hereunder will result in direct financial benefits to the Guarantor.

(b) This Guaranty Agreement constitutes the valid, binding and legal obligation of the Guarantor, and is fully enforceable in accordance with its terms, except as the same may be limited by: (i) the effect of liquidation, conservatorship, insolvency, bankruptcy, reorganization, moratorium and other similar debtor relief laws; (ii) the power of courts to apply or refuse to apply equitable remedies (including the equitable remedy of specific performance); and (iii) the exercise of discretion and the application of equitable principles by a court of equity or of law sitting in equity.

(c) There is no litigation at law or in equity or any proceeding before any governmental agency involving or affecting Guarantor (or any one of them, if more than one Guarantor) pending or, to the knowledge of the Guarantor, threatened, that would have a material adverse effect upon the business or assets of the Guarantor or the Borrower or that would affect the construction or equipping or operation of the Guarantor's business or the Borrower's business, the validity of this Guaranty Agreement, or the performance of the obligations hereunder.

(d) The Guarantor is not in default in the payment of principal of or interest on any indebtedness for borrowed money and is not in default under any instrument under which or subject to which, any indebtedness has been incurred, and no event of default has occurred and is continuing under the provisions of any such instrument, beyond any applicable notice and grace period.

(e) The execution and delivery of this Guaranty Agreement and the performance by the Guarantor of its obligations hereunder and the consummation of the transactions contemplated herein will not conflict with, constitute a breach or result in a violation of any agreement or instrument to which the Guarantor is a party or by which the Guarantor is bound or to the Guarantor's knowledge any constitutional or statutory provision or order, rule, regulation, decree or ordinance of any court, government or governmental authority having jurisdiction over the Guarantor or Guarantor's property.

(f) The Guarantor has received all of the Loan Documents and has reviewed or caused to

be reviewed those Loan Documents that the Guarantor deems necessary and appropriate to fulfill the Guarantor's obligations hereunder and thereunder.

**Section 2.3.** **USA PATRIOT Act**. Neither Guarantor nor any affiliate of Guarantor is identified in any list of known or suspected terrorists published by any United States government agency, including, without limitation, (i) the annex to Executive Order 13224 issued on September 23, 2001 by the President of the United States and (ii) the Specially Designated Nationals List published by the United States Office of Foreign Assets Control.

**Section 2.4.** **OFAC**. Neither Guarantor nor any of its members, shareholders, officers or directors (as applicable) (i) is a "Sanctioned Person" (as defined below), (ii) has any of its assets in "Sanctioned Countries" (as defined below), or (iii) derives any of its operating income from investments in, or transactions with, Sanctioned Persons or Sanctioned Countries. No part of the proceeds of the Loan hereunder will be used directly or indirectly to fund any operations in, finance any investments or activities in or make any payments to a Sanctioned Person or a Sanctioned Country or for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended and in effect from time to time. Sanctioned Country shall mean a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treasury.gov/resource-center/sanctions/Pages/default.aspx, or as otherwise published from time to time. Sanctioned Person shall mean (i) a Person named on the list of "Specially Designated Nationals and Blocked Persons" maintained by OFAC available at http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC.

## ARTICLE III
## GUARANTY AND INDEMNIFICATION AGREEMENTS

**Section 3.1.** **(a)** **Guaranty of Payment**. Guarantor hereby unconditionally guarantees the due and punctual payment (whether at stated maturity, by acceleration or otherwise) of the principal of, and interest on, and all other amounts payable to the Lender in respect of, the Note as it is from time to time outstanding and all other amounts due under the terms of the other Loan Documents. The guaranty provided hereunder is a guaranty of payment and is in no way conditioned or contingent upon any attempt to collect from the Borrower or to realize upon any property subject to the lien of, or security interest under, the other Loan Documents. If an Event of Default (as herein defined) occurs, the Guarantor, upon demand therefor, will pay to the Lender the sums which would otherwise have been due to the Lender. The Guarantor hereby waives presentment, demand, notice or protest of any kind. No modification, amendment, supplement, renewal, extension or release of or under the Loan Documents, shall release, affect or impair the obligations of the Guarantor under this Guaranty Agreement.

It is expressly understood and agreed by the Guarantor that Guarantor shall unconditionally guaranty all interest on the Loan and late charges, default interest, costs of collection and costs relating to the presence of Hazardous Materials on the Secured Property (as defined in the Deed of Trust) due under the Loan Documents, together with all other sums due under the terms of the Loan Documents to the extent not limited as set forth above.

(b) **Guaranty of Performance.** The Guarantor hereby unconditionally guarantees the due and punctual performance of the Borrower's obligations under the Loan Documents. This guaranty is a guaranty of performance and is in no way conditioned or contingent upon any attempt to obtain performance by the Borrower. If an Event of Default (as herein defined) occurs, the Guarantor, upon demand therefor, will perform for the Lender those acts which would otherwise have been due to the Lender under the Loan Documents. The Guarantor hereby waives presentment, demand, notice or protest of any kind. No modification, amendment, supplement, renewal, extension or release of or under the Loan Documents shall release, affect, or impair the obligations of the Guarantor under this Guaranty Agreement.

**Section 3.2. Indemnification of Lender.** In addition to amounts payable under Section 3.1 of this Guaranty Agreement, the Guarantor hereby agrees to pay and to indemnify and save the Lender harmless from and against any damage, loss, cost or expense (including reasonable attorneys' fees) which the Lender may incur or be subject to as a consequence, direct or indirect, of (a) any breach by the Borrower of any warranty, covenant, term or condition in, or the occurrence of any default under, the Loan Documents together with all reasonable expenses resulting from the compromise or defense of any claims or liabilities arising as a result of any such breach or default, and (b) defense against any legal action commenced to challenge the validity of any of the above referred to instruments.

## ARTICLE IV
## GENERAL PROVISIONS

**Section 4.1. Separate Causes of Action; Currency.** Each and every default in the payment or performance of the Guaranteed Obligations shall give rise to a separate cause of action hereunder, and separate actions may be brought hereunder as each cause of action arises. All payments by the Guarantor shall be paid in lawful money of the United States which at the time and place of payment is legal tender for the payment of public or private debts in the United States.

**Section 4.2. Guaranty is a Continuing Obligation.** The obligations of the Guarantor under this Guaranty Agreement shall be continuing, irrevocable and unconditional and shall remain in full force and effect until this Guaranty Agreement is released as provided in Section 4.6 hereof, and shall not, to the extent permitted by law, be affected, modified or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to, or the consent of, the Guarantor:

(a) the assignment, compromise, settlement, release or termination of any or all of the rights, remedies, obligations, covenants or agreements (i) of the Borrower under the Loan Documents, or any other document related to the Guaranteed Obligations, or (ii) of any other guarantor under this or any other guaranty;

(b) any assignment or mortgaging or purported assignment or mortgaging of all or any part of the interest of the Borrower in the Secured Property;

(c) the waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants, agreements or other provisions contained in the Loan Documents or any other document related to the Guaranteed Obligations;

(d) the extension of time for the payment of all or any part of the principal of or interest on the Note, of any sums of money due under the Loan Documents or this Guaranty Agreement, of the time for performance of any other obligations, covenants and agreements under or arising out of the Loan Documents or any other document related to the Guaranteed Obligations, or the extension or renewal hereof or thereof;

(e) the modification or amendment (whether material or otherwise) of any obligation, covenant, agreement or provision of the Loan Documents or any other document related to the Guaranteed Obligations;

(f) the taking or the omission of any actions referred to in the Loan Documents or any other document related to the Guaranteed Obligations;

(g) any failure, omission, delay or deficiency on the part of the Lender or any other holder of the Note to enforce, assert or exercise any right, power or remedy conferred on the Lender or any other holder of the Note in the Loan Documents or any other document related to the Guaranteed Obligations, or any other act or acts on the part of the Lender, or any other holder of the Note;

(h) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all the assets, the marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of debt, or other similar proceeding affecting the Borrower or any of its assets, or any allegation or contest of the validity of enforceability of the Loan Documents or any other document related to the Guaranteed Obligations in any such proceeding;

(i) the release or discharge of the Borrower from the performance or observance of any obligation, covenant, agreement, duty, term or condition contained in the Loan Documents or any other document related to the Guaranteed Obligations by operation of law;

(j) the invalidity or unenforceability of the Loan Documents or any other document related to the Guaranteed Obligations; or

(k) any release of any collateral or security for the Loan or the Note.

**Section 4.3.** **Right to Proceed Directly Against Guarantor**. The Lender, in its sole discretion, may proceed first and directly against the Guarantor under this Guaranty Agreement without first proceeding against the Borrower or proceeding against or exhausting any other security held by the Lender in connection with the Loan, the Note or this Guaranty Agreement.

**Section 4.4.** **Right of Setoff.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust or other accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty Agreement.

No setoff, counterclaim, reduction or diminution of any obligations, or any defense of any kind or nature which the Borrower has or may have against the Lender, or any other person, shall be available to the Guarantor against the Lender.

**Section 4.5.** **Limitation of Liability of Borrower under Note or Loan Agreement not to Affect Liability Hereunder.** To the extent permitted by law, no modification, limitation or discharge of liability of the Borrower under the Note or Loan Agreement arising out of, or by virtue of, any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law shall affect the liability of the Guarantor hereunder in any manner whatsoever, and the Guarantor hereby waives all rights and benefits which might accrue to them by reason of any such proceeding.

**Section 4.6.** **Release of Guaranty.** This Guaranty Agreement shall be released in full and the obligations of the Guarantor shall terminate at such time as the Guaranteed Obligations have been paid in full and otherwise performed by Borrower in accordance with the terms of the Loan Documents.

**Section 4.7.** **Financial Information.** The Guarantor shall deliver the following financial information to the Lender:

**(a)** **Annual Financial Statements**. Within ninety (90) days from the end of each year, each Guarantor shall provide Lender with copies of their respective annual financial statements in reasonable detail satisfactory to the Lender.

**(b)** **Tax Returns**. Each Guarantor shall also submit to the Lender each year their respective federal and state tax returns for the prior year. Such tax returns shall be submitted to the Lender as soon as available, but in any event within thirty (30) days of filing each year during the term of the Loan.

**(c)** **Miscellaneous**. The Guarantor shall provide the Lender with such additional information, reports or statements as the Lender may from time to time reasonably request.

**Section 4.8.** **Waiver.** The Guarantor hereby waives, to the extent permitted by law, (a) the benefits of Section 49-25 and 49-26 of the Code of Virginia (1950), as amended, and any amendments thereto or any similar statutes or rules of law, (b) the benefit of any homestead or similar exemption, state or federal, with respect to its obligations hereunder, (c) notice of any of the matters referred to in Section 4.2 of this Guaranty Agreement, and (d) any demand (except as expressly specified herein), proof or notice of non-payment, or notice of failure to comply with, any of the Guaranteed

Obligations.

## ARTICLE V
## DEFAULTS

"Event of Default" means (a) any of the Events of Default specified in Article V of the Loan Agreement or Article 2 of the Deed of Trust, and (b) any failure of the Guarantor to perform Guarantor's obligations in accordance with the terms hereof, which continues after the expiration of any applicable notice and cure periods under the Loan Documents.

## ARTICLE VI
## MISCELLANEOUS

**Section 6.1.** Notices. Any notice required or permitted by or in connection with this Guaranty Agreement shall be in writing and shall be made by hand delivery, by FedEx, or other similar overnight delivery service, or by certified mail, return receipt requested, postage prepaid, addressed to the respective parties at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by the respective parties. Notice shall be considered given as of the date of hand delivery, one (1) business day after delivery to FedEx or similar overnight delivery service, or three (3) business days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was given as provided herein. If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given and shall be effective as of the date herein provided.

| | |
|---|---|
| If to the LENDER: | ATLANTIC UNION BANK<br>5803 Rolling Road<br>Springfield, VA 22152<br>Attn: Anthony Wininger |
| With a copy to: | Vincent J. Keegan, Esquire<br>Keegan & DeVol, PLC<br>8280 Greensboro Drive, Suite 710<br>McLean, VA 22102 |
| If to the GUARANTOR: | HARRY KAMIN<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |
| and to: | VALERIA GUNKOVA<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |

**Section 6.2.** Survival of Agreement. All covenants, agreements, representations and warranties made herein and in the certificates delivered pursuant hereto shall survive the closing of

the Loan and shall continue in full force and effect until this Guaranty Agreement is released as provided in Section 4.6 hereof.

**Section 6.3.** **Waiver of Acceptance.** The Guarantor hereby expressly waives notice in writing, or otherwise, from the Lender of their acceptance or reliance on this Guaranty Agreement.

**Section 6.4.** **No Remedy Exclusive, Waiver.** No remedy herein conferred or reserved is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Guaranty Agreement or now or hereafter existing at law or in equity or by statute. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time as often as may be deemed expedient. In order to exercise any remedy provided for in this Guaranty Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required. In the event any provision contained in this Guaranty Agreement should be breached by the Guarantor and thereafter be duly waived by the Lender, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Guaranty Agreement shall be established by conduct, custom or course of dealing.

**Section 6.5.** **Applicable Law.** This Guaranty Agreement shall be interpreted and construed in accordance with and governed by the laws of the Commonwealth of Virginia, without regard to principles of conflict of laws.

**Section 6.6.** **Waiver of Rights Against Borrower.** During the term of the Loan, the Guarantor waives all claims, including but not limited to all claims based on rights of subrogation, repayment, reimbursement, or recoupment, and any "claim" as the term is defined in the United States Bankruptcy Code, as amended, which the Guarantor might otherwise now have, or hereafter acquire, from or against the Borrower or the properties of the Borrower as a result of the Guarantor's payment or performance of the Guaranteed Obligations. The parties specifically intend the waiver contained in this Section to confer third-party beneficiary rights upon the Borrower and its respective successors and assigns, including without limitation any debtor in possession or trustee in bankruptcy estate of the Borrower.

**Section 6.7.** **Entire Agreement; Counterparts.** This Guaranty Agreement constitutes the entire agreement, and supersedes all prior agreements and understandings, both written and oral, between the Guarantor, and the Lender with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**Section 6.8.** **Amendments, Changes and Modifications.** Except as otherwise provided in this Guaranty Agreement, prior to the satisfaction and payment of the Guaranteed Obligations in full, this Guaranty Agreement may not be amended, changed, modified, altered or terminated without the prior written consent of the Lender.

**Section 6.9.** **Invalid or Unenforceable Portions.** The invalidity, illegality or