(4) Seller has received no notices of, and has no actual knowledge of, the presence of any Hazardous Materials (as defined below), on or at the Real Property (excluding normal and customary chemicals used in accordance with environmental regulations) in violation of applicable Environmental Laws. The term "Hazardous Materials" as used herein shall mean any product, substance, chemical, material or waste whose presence, nature, quantity and/or intensity of existence, use, manufacture, processing, treatment, storage, disposal, transportation, spill, release or effect, either by itself or in combination with other materials on or expected to be on the Real Property, is either (a) regulated, monitored, or subject to reporting by any governmental authority; or (b) a basis for potential liability to any governmental agency or a third party under any applicable Environmental Laws. Without limiting the foregoing, the term "Hazardous Materials" includes, but is not limited to, hydrocarbons, petroleum, gasoline, asbestos containing materials, crude oil or any products or byproducts thereof. The term "Environmental Laws" as used herein shall mean all federal, state and local laws, ordinances, rules, regulations, codes or orders, including, without limitation, any requirement imposed under any permits, licenses, judgments, decrees, agreements or recorded covenants, conditions, restrictions or easements, the purpose of which is to protect the environment, human health, public safety or welfare, or which pertain to Hazardous Materials.

(5) There are no outstanding notices received by Seller from any constituted public authority or from any insurance company of the existence of any condition or situation that requires work to be done to cure an unsatisfactory condition with respect to the Real Property (or to correct a violation of a law, ordinance, order or regulation affecting the Real Property) and that remains undone or will remain undone at the date of Closing. There are no pending condemnation proceedings or any other action, proceeding (zoning, environmental or otherwise), governmental investigation or litigation relating to any portion of the Real Property, and Seller has received no notices of the institution or the proposed institution of condemnation proceedings or any other action, proceeding (zoning, environmental or otherwise), governmental investigation or litigation relating to any portion of the Real Property and Seller is unaware of any current threat of any such action.

(6) There is no litigation, claim, or condition pending or the knowledge of Seller threatened, which would materially affect the Real Property.

In the event that any of the representations and warranties of Seller set forth above shall not be true or accurate in all material respects as of the date hereof or at any time prior to Closing, or in the event that Seller shall be in breach of any of the covenants set forth below prior to Closing, and such failure is not cured within ten (10) business days after written notice from Buyer to Seller (the Closing date being automatically extended, if applicable, to the extent necessary to provide for such ten (10) business day cure period), then in any such event, Buyer shall have the right, before Closing, as its sole and exclusive remedy, to notify Seller of its election to cancel this Contract and receive its Deposit back. And in such event, the parties hereto shall be released from any further obligations under this Contract except those which specifically survive by terms hereof.

Seller [redacted] Buyer VG

(7) Seller represents that all items delivered to the Buyer for feasibility studies are accurate and true.

4.2 Covenants of Seller. Seller covenants with Buyer as follows:

(1) During the period between the Effective Date and the date of Closing, Seller shall promptly furnish to Buyer, within five (5) Business Days of Seller's receipt thereof, copies of any and all notices which it receives from federal, state or local governmental authorities having jurisdiction over the Real Property, any insurance company or board and from any other body having jurisdiction with respect to the use, occupancy and/or physical condition of the Real Property.

(2) During the period between the Effective Date and the date of Closing, Seller shall maintain in force the policies of fire and extended coverage and hazard insurance and liability insurance with respect to the Real Property prior to the Effective Date.

(3) During the period between the Effective Date and the date of Closing, Seller shall perform reasonable maintenance and repairs of the Real Property consistent with Seller's ownership of the same prior to the Effective Date, and generally shall operate, maintain and insure the Real Property in substantially the same manner in which Seller is operating, maintaining and insuring the Real Property on the Effective Date. This obligation of Seller shall include, without limitation, the performance of all material obligations, as owner of the Real Property, under any service contracts, and under any government approvals or licenses, any easements and other documents relating to the Real Property. Seller shall deliver the Real Property to Buyer at Closing substantially in the condition existing as of the last day of the Feasibility Period, subject to normal wear and tear and damage and, as otherwise described in this Contract, subject to change due to casualty or condemnation. Without the prior written consent of Buyer in each case, which consent shall not be unreasonably withheld, conditioned or delayed, Seller shall not enter into any new contracts after the expiration of the Feasibility Period concerning the operation, management or maintenance of the Real Property which are not capable of being terminated as of the date of Closing.

4.3 Buyer represents and warrants the following to Seller, both as of the Effective Date and as of the date of Closing.

(1) Buyer has full power, authority and legal right to enter into this Contract and to perform its obligations hereunder and has been duly authorized by all appropriate action of Buyer. Buyer is an individual or a duly formed and validly existing entity qualified to do business in and in good standing under the laws of the Commonwealth of Virginia. The person executing this Contract on behalf of Buyer has full power and authority to bind Buyer to the obligations of Buyer set forth herein, and upon execution and delivery of the same, all Closing documents executed by Buyer will constitute valid and binding instruments enforceable in accordance with their terms. The entry into and performance of Buyer's obligations under this Contract will not violate or result in a breach of any contract or agreement by which Buyer is bound, the consequence of which violation would be to prevent the performance of Buyer's obligations under this Contract. No consent of any other party is required for the performance by

Buyer of its obligations hereunder or under the Closing documents (or if so required in connection with this Contract, said consent has been acquired, or, if required in connection with any Closing documents, such consent will be acquired by the date of Closing). There is no action pending or, to the best of Buyer's knowledge, threatened against Buyer which would prevent the performance of Buyer's obligations under this Contract at Closing. All actions and consents necessary to authorize Buyer to enter into this Contract and to perform the transaction contemplated herein have been taken or obtained.

(2) Neither the entering into of this Contract nor the consummation of the transactions contemplated hereby will constitute or result in a violation or breach by Buyer of any contract, agreement or instrument to which it is a party, or to which it is subject, or by which it or any of its assets or properties may be bound, nor will it result in any violation of any judgment, order, writ, injunction or decree issued against or imposed upon it.

(3) There is no bankruptcy, insolvency, rearrangement, reorganization or similar action or proceeding, whether voluntary or involuntary, pending against Buyer, nor, to its knowledge, threatened against it, nor does it have any intention of filing or commencing any such action or proceeding.

(4) Buyer has the sufficient funds of its own for its cash portion of the Deposit.

(5) Buyer understands and acknowledges that (i) the Real Property being transferred hereunder is limited to the Real Property in accordance with the terms hereof, and, (ii) that no other property of Seller is being transferred by Seller to Buyer. The Real Property shall be sold and conveyed "where is" in "as is" condition, except as specifically set forth in this Contract.

In the event that any of the representations and warranties of Buyer set forth above shall not be true or accurate in all material respects as of the date hereof or at any time prior to Closing, or in the event that Buyer shall be in breach of any of its obligations hereunder prior to Closing, and such failure is not cured within ten (10) business days after written notice from Seller to Buyer (the Closing date being automatically extended, if applicable, to the extent necessary to provide for such ten (10) business day cure period), then in any such event, Seller shall have the right, before Closing, as its sole and exclusive remedy, to cancel this Contract. And in such event, the parties hereto shall be released from any further obligations under this Contract except those which specifically survive by terms hereof. The parties agree that Seller's actual damages are not susceptible of determination and are highly speculative and that the Deposit is both a reasonable and fair recovery by Seller and is not a penalty or inequitable forfeiture to or by Buyer.

## ARTICLE VI. SELLER'S COOPERATION WITH BUYER

6.1 Buyer shall have a thirty (30) days period from the Effective Date to examine the feasibility of the purchase of the Property (the "Feasibility Period"). On the Effective Date, Seller shall provide documents in Seller's possession or reasonable control reasonably requested by the Buyer for the purpose of feasibility examination of the Real Property, including tenant leases, physical inspection, appraisal and environmental reviews. During the Feasibility Period, subject to the provisions of Section 6.2 below, Buyer shall have the right to do all of the

Seller: ______ Buyer: ______

following in such a manner as does not interfere with the operation of the Real Property by Seller: (i) to review all documents requested by Buyer's lender to the extent that the same exist, are in the possession and control of Seller and do not constitute privileged and confidential information of Seller and/or its principals, members, officers or affiliates), (ii) investigate zoning and other regulations affecting the Real Property, (iii) perform surveys and engineering studies, including environmental audits, (iv) to inspect the Real Property for defects in the electrical, plumbing, heating and other mechanical systems, for faults in the structure of the improvements located on the Real Property and to generally analyze the economic feasibility of the Real Property.

In the event that Buyer, in its sole and absolute discretion, determines to terminate this Contract for any reason during the Feasibility Period, then Buyer shall give written notice thereof to Seller on or before the end of the Feasibility Period along with all original documents provided to Buyer by Seller, all copies thereof made by Buyer, and all documents and studies obtained by Buyer during the Feasibility Period, whereupon the Deposit shall be returned to Buyer by Escrow Agent and neither party shall have any further rights, liabilities or obligations hereunder, except for those obligations that expressly survive termination. Seller agrees to reasonably cooperate with Buyer at no cost to Seller and give Buyer reasonable access to the Property and its records so that Buyer may complete its study.

6.2 If Buyer exercises its rights hereunder, or enters upon the Real Property to perform feasibility studies, it shall keep the Real Property free and clear of any and all liens (pending or otherwise) or claims resulting there from. Any and all feasibility studies or other investigation or inspection of the Real Property by Buyer shall be performed at the sole risk and expense of Buyer, and Buyer shall be solely and absolutely responsible for the acts or omissions of Buyer and any and all of Buyer's employees, agents and contractors ("Buyer's Agents"). Furthermore, Buyer shall protect, indemnify, defend and hold the Real Property, Seller and Seller's employees, representatives, officers, directors, members, managers, parents, affiliates, shareholders, agents, attorneys, contractors and consultants and each of their respective successors and assigns, harmless from and against any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, demands, causes of action, judgments, costs and legal or other expenses (including, without limitation, reasonable attorneys' and consultants' fees) suffered or incurred by any or all of such indemnified parties as a result of, due to or arising from any act or omission of Buyer or Buyer's Agents in connection with: (i) Buyer's feasibility studies; (ii) any activities, studies or investigations conducted at, on or in connection with the Property by Buyer or Buyer's Agents in connection with Buyer's feasibility studies; and (iii) the presence of Buyer or Buyer's Agents at or on the Real Property which causes, results in or precipitates any personal injury or property damage. Notwithstanding the foregoing, Buyer shall not be liable to Seller for any claims arising primarily from Seller's negligence or willful misconduct. Prior to any entry by Buyer or Buyer's Agents onto the Real Property, Buyer shall obtain, and shall thereafter maintain, public liability and property damage insurance with limits of not less than $1,000,000 applicable to the risks as to which Buyer is indemnifying hereunder, which policy or policies shall name each of Seller as additional insured, shall be reasonably acceptable to Seller. Buyer's indemnification and restoration obligations under this Section 6.2 shall survive termination of this Contract.

Seller: ______ Buyer: ______

6.3 Seller agrees that it shall not market the Real Property during the pendency of this Contract unless the Contract is terminated by Buyer as provided in Section 6.1, above.

6.4 Seller agrees that it shall not renew or put in any new tenants without Buyer's approval, with such approval not to be unreasonably withheld.

## ARTICLE VII. TITLE OBJECTIONS AND CONTINGENCIES

7.1 Buyer shall order a title report or commitment within five (5) days after the Effective Date. Within thirty (30) days after the Effective Date ("Title Review Period") of this Contract, Buyer shall notify Seller in writing if Buyer's title report or Survey (if any) indicates that title to the Real Property is not good and merchantable, consistent with the terms of Section 7.2 below, and with respect to any title matters arising after the end of the Title Review Period that are known to the Buyer, Buyer shall notify Seller in writing promptly upon Buyer's discovery thereof ("Title Objections"). In any of such events, Seller, at its sole option, may take all such reasonable actions as may be required to render said title good and merchantable or to remedy the Title Objections. Any monetary lien against the Real Property shall not require a Title Objection notice and (subject to the contingency for release of encumbrances and liens set forth herein) Seller agrees to secure the release of all monetary liens (excluding any liens created by Buyer or Buyer's Agents) encumbering the Real Property by the time of Closing.

7.2 The following conditions concerning title to the Real Property shall exist at the time of Closing hereunder, and the obligation of Buyer to close hereunder shall be expressly conditioned upon and subject to the satisfaction (or waiver by Buyer) of each such condition: Title to the Real Property shall be good of record and in fact, marketable, and free and clear of all encumbrances, except for the following (collectively, the "Permitted Exceptions"): (i) current real estate taxes and other governmental assessments and water and sewer charges which are liens but not currently due and payable; (ii) the operation and effect of all applicable codes, laws, regulations, ordinances, statutes and other restrictions of governmental or quasi-governmental authorities; (iii) matters reflected on the title commitment issued to Buyer during the Feasibility Period that are not objected to by Buyer during the Feasibility Period; and (iv) matters that would be reflected on an updated ALTA/ACSM survey of the Real Property and not objected to by Buyer during the Feasibility Period. Seller shall not grant any rights in the Real Property after the Feasibility Period without first receiving the prior written consent of Buyer (which approval shall be granted, withheld, or conditioned in a manner determined by Buyer in its reasonable discretion). Without limiting the generality of the foregoing, and subject to the contingency set forth in Sec. 7.4 below, Seller shall obtain the full reconveyance, release or other discharge, of record, at or prior to Closing, of any mortgage, deed of trust or other monetary lien created by Seller, and shall convey the Real Property to Buyer free of any such encumbrance.

7.3 If Seller shall be unable to, or elects (which discretion shall be at Seller's sole discretion) not to cure the Title Objections, then Seller shall advise Buyer, in writing, within five (5) business days after the receipt of notice of Title Objections of any objections which Seller determines that it will be unwilling or unable to cure at or prior to Closing. Seller's failure to respond within five (5) business days shall be deemed to mean that Seller has opted not to cure

Seller:______ Buyer: VG [redacted]