## ARTICLE 2
## EVENTS OF DEFAULT

Each of the following events shall constitute an event of default ("Event of Default") under this Deed of Trust and shall entitle the Trustees or the Beneficiary to exercise all rights and remedies provided in Article 3 hereof:

**Section 2.1.** **Failure To Pay**. A failure by the Grantor or any of the Guarantors to pay any of the Obligations arising under the Note, Guaranty or other Loan Documents, or any other Obligations, when and as the same are due and payable, and the expiration of any applicable cure period without cure of such failure to pay.

**Section 2.2.** **Failure To Perform**. A failure by the Grantor to perform or observe any of the covenants and agreements of this Deed of Trust and such failure (which, in the Beneficiary's sole, absolute and subjective discretion, is capable of being cured) is not cured within thirty (30) calendar days following the giving of notice thereof by the Beneficiary to the Grantor; provided however, if such failure, Beneficiary believes in its sole, absolute and subjective discretion, cannot be cured within such 30-day period, such 30-day period may be extended if: (i) the Grantor is diligently pursuing cure of the applicable default, (ii) the Beneficiary, in its sole, absolute and subjective discretion, believes that the applicable default can be cured by the Grantor to the complete satisfaction of the Beneficiary, and (iii) the occurrence of the applicable default has not impaired the security of the Loan. The contrary notwithstanding, no notice or cure period shall be provided if the Event of Default is based upon a willful or material misrepresentation at any time by the Grantor to the Beneficiary or otherwise by the Grantor in connection with the Loan or the advance (or readvance) of proceeds of the Loan.

**Section 2.3.** **Failure Of Representation Or Warranty**. Any representation or warranty given by the Grantor under this Deed of Trust or any other Loan Document fails to be true, correct and complete in any material respect, as of the date made or deemed made.

**Section 2.4.** **Failure To Perform Under The Loan Documents**. A failure by the Grantor or any of the Guarantors to perform or observe any of the terms, covenants, conditions, and provisions of any of the Loan Documents or any default under any terms, covenants, conditions and provisions of any of the Loan Documents, and the expiration of any applicable cure period.

**Section 2.5.** **Involuntary Bankruptcy**. The filing of a petition by one or more creditors of the Grantor seeking: (a) the entry of a decree or order for relief by a court having jurisdiction against or with respect to the Grantor in an involuntary case under the federal bankruptcy laws or any state insolvency or similar laws ordering the liquidation of the Grantor; or (b) a reorganization of the Grantor or the Grantor's business and affairs or the appointment of a receiver, liquidator, assignee, custodian, trustee, or similar official for the Grantor or any of the Grantor's property, including but not limited to the Secured Property, and such petition is not unconditionally dismissed within sixty (60) days from the date of filing.

**Section 2.6. <u>Voluntary Bankruptcy</u>.** The commencement by the Grantor of a voluntary case under the federal bankruptcy laws or any state insolvency or similar laws or the consent by the Grantor to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian or similar official for the Grantor or any of the Grantor's property, including but not limited to the Secured Property, or the making by the Grantor of an assignment for the benefit of creditors, or the failure by the Grantor generally to pay the Grantor's debts as they become due.

**Section 2.7. <u>Bankruptcy Or Insolvency Of Any Guarantor</u>.** The happening of any of the events listed in Sections 2.5 or 2.6 above to any Guarantor of the Loan or any one of them.

**Section 2.8. <u>Unauthorized Transfer Or Encumbrance Or Transfer of Interests</u>.** A transfer or encumbrance in contravention of Section 1.9 of this Deed of Trust; or Section 1.17 of this Deed of Trust.

**Section 2.9. <u>Senior Lien In Bankruptcy</u>.** The existence of a lien or security interest senior or of equal priority to the lien and security interest of this Deed of Trust created pursuant to Section 364 of the United States <u>Bankruptcy Code</u>, as amended.

**Section 2.10. <u>Default Under Permitted Liens</u>.** A default under any document or instrument creating a lien or security interest in all or any part of the Secured Property, whether senior, junior, or of equal priority to the lien and security interest of this Deed of Trust, and such default is not cured within the applicable cure period.

**Section 2.11. <u>Denial Of Validity Or Enforceability</u>.** The validity or enforceability of this Deed of Trust shall be contested by the Grantor, or the Grantor shall deny that the Grantor has any or any further liability hereunder.

**Section 2.12. <u>Failure To Give Notice Of Default</u>.** The failure by the Grantor to advise the Beneficiary promptly of the existence of any condition or event, which is known or which reasonably should be known to the Grantor and which is or which will be with the giving of notice a default under any of the Loan Documents, including this Deed of Trust.

**Section 2.13. <u>Cross Default</u>.** A default under any obligation or Indebtedness owed or guaranteed by the Grantor or any Guarantor of the Loan to the Beneficiary or to any other lender, regardless, in either case, of when created or whether secured or unsecured and the expiration of any applicable cure period.

**Section 2.14. <u>Failure to Maintain Insurance or Pay Impositions</u>.** Failure by Grantor to keep the Secured Property continuously insured as provided in Section 1.4 of this Deed of Trust or to pay the impositions referred to in Section 1.3 hereof.

**Section 2.15. Misrepresentations in Loan Documents.** Any representation contained in this Deed of Trust, or any financial statement, certificate or other information furnished to the Beneficiary in connection with the Loan or the transactions contemplated hereunder was knowingly false or misleading in any material respect at the time it was made or delivered.

**Section 2.16. Material Adverse Change in Financial Condition.** If the Beneficiary determines in good faith that a material adverse change has occurred (a) in the financial condition of the Grantor or any Guarantor of the Loan from the financial condition set forth in the most recent financial statements furnished to the Beneficiary or from the financial condition of the Grantor or any Guarantor of the Loan most recently disclosed to the Beneficiary, or (b) to the Secured Property such that the Beneficiary's security for the obligation is impaired.

## ARTICLE 3
## RIGHTS ON EVENT OF DEFAULT

Upon the occurrence of an Event of Default, the Trustees or the Beneficiary may, at their sole and absolute option and without notice or demand, accelerate and declare immediately due and payable all Indebtedness, and institute foreclosure proceedings as provided below and may, with or without declaring the Indebtedness immediately due and payable, and with or without foreclosing, exercise any other right or remedy provided for herein, in the Note in any other Loan Document, or under law, in equity, by statute, regulation or otherwise.

**Section 3.1. Acceleration.** Upon the occurrence of an Event of Default, the Beneficiary, at its sole and absolute option and without notice or demand, may accelerate and declare immediately due and payable all sums due on the Note, this Deed of Trust, and any of the other Loan Documents. This Deed of Trust is "subject to call upon default" as that phrase is construed under Section 55.1-325(4) of the Code of Virginia, as amended.

**Section 3.2. Foreclosure: Sale of Secured Property.** Upon an acceleration and on the direction of the Beneficiary, the Trustees may take possession of the Secured Property or any portion thereof and sell the same at auction. Except as otherwise specifically provided herein, any sale of the Secured Property by the Trustees, shall be made in accordance with the provisions of Sections 55.1-320, 55.1-321, 55.1-322, 55.1-323, 55.1-324 and 55.1-339 of the Code of Virginia, as amended, or other applicable general or local laws of the Commonwealth of Virginia or judicial rules of procedure relating to the foreclosure of deeds of trust. Any sale of the Secured Property may be made after advertising the time, terms and place of sale either: (a) once a week for four (4) consecutive weeks; or (b) once a day for five (5) consecutive days, in a weekly or daily newspaper, as the case may be, which is published in, or has a general circulation in, the county or city wherein the Real Property is situated, at the discretion of the Trustees. The terms of the sale may be cash upon settlement of the sale or upon such other and additional terms as the Trustees deem necessary, proper or convenient, except as specifically limited by applicable law or court rule. Such sale may be of the entire Secured Property as a unit or of such parts or parcels of the entire Secured Property as the Trustees, in their sole and absolute discretion, deem necessary, proper, or convenient.

**3.2.1. Application Of Proceeds.** Upon the sale of the Secured Property, the proceeds shall be applied in accordance with Section 55.1-324.A(3) of the Code of Virginia, as amended.

**3.2.2. Trustees Commissions**. In the event the Indebtedness shall be paid after the advertising or filing of a foreclosure proceeding with the appropriate court, but before sale of the Secured Property, the Grantor shall also be required to pay all of the expenses of any advertisement or notice, all court costs, attorneys' fees, and all other expenses incident to or resulting from the foreclosure proceedings under this Deed of Trust, and a commission to the Trustees equal to the greater of: (a) $5,000; or (b) the product determined by multiplying the actual hours spent by the Trustees with respect to such advertising or filing, by the normal and ordinary hourly rate charged by the Trustees for such services. In the event of the occurrence of the sale of all or any part of the Secured Property pursuant to the terms thereof, the Grantor shall pay to the Trustees a commission equal to five percent (5%) of the gross sales prices with respect to the property so sold. The payment of the amount set forth in this section is hereby secured in like manner as other charges and expenses attending the execution of and performance under this Deed of Trust.

**3.2.3. Beneficiary May Bid.** Upon any sale made under or by virtue of this Article 3, the Beneficiary may bid for and acquire the Secured Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting against the Indebtedness the net sales price after deducting therefrom the expenses and costs of the sale and any other sums which the Beneficiary is authorized to deduct under this Deed of Trust or is required to pay pursuant to Section 55.1-324.A(3) of the Code of Virginia, as amended.

**3.2.4. Leases.** In the event of a sale of the Secured Property, such sale may be made, at the option of the Beneficiary, subject to one or more of the tenancies entered into subsequent to the recording of this Deed of Trust.

**3.2.5. Rents.** The Trustees in any foreclosure proceedings under the provisions of this Deed of Trust shall be entitled, without regard to the adequacy or inadequacy of any security for the Obligations, to the appointment of a receiver to collect the rents and account therefor as the court may direct and to take possession of the Secured Property and operate the same.

**Section 3.3. Possession.** The Grantor may retain possession of the Secured Property so long as an Event of Default has not occurred, but upon the occurrence of an Event of Default, which has not been timely cured as set forth above, the Trustees or the Beneficiary may assume possession of the Secured Property and dispossess the Grantor therefrom, although the Grantor shall remain fully liable to the same extent as though in possession and not dispossessed by the Trustees or the Beneficiary. In the event the Trustees or the Beneficiary assume possession of the Secured Property, the Trustees or the Beneficiary may make repairs, renovations, and replacements with respect to the Secured Property and take all necessary steps to preserve and protect the Secured Property, and the reasonable costs and expenses of the Trustees or the

Beneficiary in performing such acts shall be fully secured by this Deed of Trust, even though in excess of the face amount thereof.

**Section 3.4.** **Appointment Of Receiver.** Upon the occurrence of any Event of Default, , which has not been timely cured as set forth above, the Trustees and the Beneficiary shall be entitled, as a matter of right, without notice to the Grantor and without regard to the adequacy of the security for the Obligations, to the immediate appointment of a receiver of the Secured Property, which receiver shall have the right and power to possess and operate the Secured Property, to collect the rents (including without limitation the Rents), profits, revenues and benefits derived therefrom, and all other rights and powers as the court making such appointment shall confer. The Grantor shall deliver to the receiver appointed, or to the Trustees or the Beneficiary if the Trustees or the Beneficiary take possession of the Secured Property or any portion thereof, all original records, books, bank accounts, Leases, agreements, security deposits of Lessees and all other monies, properties and materials relating to the Secured Property and the operation thereof.

**Section 3.5.** **Right To Maintain Separate Action.** In the event the Grantor shall fail to pay timely such amounts as may be due on the Note, this Deed of Trust, or any other Loan Document, the Beneficiary shall be entitled or empowered to institute such action or proceedings at law or in equity as may be advised by its counsel for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgments or final decree against the Grantor and collect, out of the property of the Grantor wherever situated, as well as out of the Secured Property, in any manner provided by law, monies adjudged or decreed to be payable. The Beneficiary shall be entitled to recover judgment as aforesaid before, after, or during the pendency of any proceedings for the enforcement of the provisions of this Deed of Trust, or the foreclosure of the lien hereof. In the event of a sale of the Secured Property, and of the application of the proceeds of sale as provided in this Deed of Trust, to the payment of the Indebtedness, the Beneficiary shall be entitled to enforce payment of and to receive all amounts then remaining due and unpaid upon the Indebtedness, and shall be entitled to recover judgment for any portion of the Indebtedness remaining unpaid, with interest as provided in the Note. No recovery of any judgment by the Beneficiary and no levy of an execution under any judgment upon the Secured Property or upon any other property of the Grantor shall affect in any manner or to any extent the lien of this Deed of Trust upon the Secured Property or any part thereof, or any liens, rights, powers, or remedies of the Trustees or of the Beneficiary hereunder, and such liens, rights, powers, and remedies shall continue unimpaired as before. Any monies thus collected by the Beneficiary under this section shall be applied by the Beneficiary in accordance with the provisions of this Deed of Trust and applicable law.

**Section 3.6.** **Waivers Of Stay, Exemptions.** The Grantor shall not at any time insist upon, or plead, or in any manner whatsoever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution of sale of the Secured Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take, or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Secured Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provisions herein, or pursuant to the decree, judgment, or order of any court of

competent jurisdiction; nor after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to the Trustees, but to suffer and permit the execution of every power as though no law or laws had been made or enacted. The Grantor, for the Grantor and all who may claim under the Grantor, waives, to the extent that the Grantor lawfully may, all right to have the Secured Property marshalled upon any foreclosure hereof.

**Section 3.7.** **Uniform Commercial Code.** The Beneficiary, or the Trustees acting on behalf of the Beneficiary, may exercise all rights and remedies of a secured creditor under the Virginia Uniform Commercial Code, as amended, with respect to any part of the Secured Property constituting personal property and subject to the security interest created by this Deed of Trust, including the right to take possession of the Personalty without the use of judicial process (the Grantor hereby waiving all right to prior notice and a judicial hearing) and the right to require the Grantor to assemble the same at the Real Property or such other place as the Beneficiary or Trustees may notify the Grantor. Any disposition of so much of the Secured Property as may constitute personal property and subject to the security interest created by this Deed of Trust shall be considered commercially reasonable if made pursuant to a public sale which is advertised at least twice in a newspaper of local circulation in the community where the Real Property is located. Any notice required by the Virginia Uniform Commercial Code to be given to the Grantor shall be considered reasonable and properly given if given in the manner and at the address provided in the notice provisions of the Deed of Trust at least ten (10) calendar days prior to the date of any scheduled public sale.

**Section 3.8.** **Automatic Acceleration.** Should there occur an event which would, with the giving of notice, the passage of time, or both, constitute an Event of Default hereunder and if a voluntary or involuntary petition under the United States Bankruptcy Code thereafter is filed by or against the Grantor while such event remains uncured, the Indebtedness shall be automatically accelerated and due and payable and the default rate of interest provided for in the Note shall automatically apply as of the date of the first occurrence of the event which would, with the giving of notice, the passage of time or both constitute an Event of Default, without any notice, demand or action of any type on the part of the Trustees or Beneficiary (including any action evidencing the acceleration or imposition of the default rate of interest). The fact that the Trustees or Beneficiary have, prior to the filing of the voluntary or involuntary petition under the United States Bankruptcy Code, acted in a manner which is inconsistent with the acceleration and imposition of the default rate of interest provided for in the Note shall not constitute a waiver of this section nor estop the Trustees or Beneficiary from asserting or enforcing the Beneficiary's rights hereunder.

**Section 3.9.** **Remedies Nonexclusive.** The rights and remedies provided in this Article 3 upon the occurrence of an Event of Default shall be nonexclusive and shall be in addition to all other remedies and rights available under this Deed of Trust, the Note, and any other Loan Document or applicable law. All rights and remedies available in the Event of Default shall be cumulative and the exercise of any one or more of the available rights and remedies shall not be

considered as or result in a waiver of any other right or remedy and any particular right or remedy may be exercised in conjunction with any or all other rights and remedies provided hereunder or under any other Loan Document.

**Section 3.10. Indemnification.** If the Beneficiary or any of its affiliates acquires the Secured Property after a foreclosure sale or public auction, the Grantor agrees to indemnify and hold the Beneficiary harmless from any loss, cost or expense which the Beneficiary may sustain as a result of: (a) selling the Secured Property so acquired for less than the then outstanding Indebtedness, provided, however, that any such sale by the Beneficiary is done in a commercially reasonable manner; (b) any action brought against the Beneficiary under Section 548 of the United States Bankruptcy Code, as amended, on the ground that the consideration paid by the Beneficiary for the Secured Property was not "reasonably equivalent value"; or (c) any action brought against the Beneficiary under any applicable state fraudulent conveyance act or under Section 544(b) of the United States Bankruptcy Code, as amended, on the ground that the consideration paid by the Beneficiary for the Secured Property was not "fair consideration" or was otherwise inadequate.

## ARTICLE 4
## APPLICATION OF NET PROCEEDS

**Section 4.1 Application of Net Proceeds.** Net Proceeds (defined below) received by the Trustees, the Beneficiary or the Grantor by reason of (i) damages to or destruction of the Secured Property, or (ii) the exercise of the power of eminent domain, or (iii) the right of any governmental body or agency to purchase any part of the Secured Property, or (iv) a sale of the Secured Property by the Grantor in reasonable anticipation of the taking thereof by eminent domain, shall, at the direction of the Beneficiary, be applied either to the repair, restoration and replacement of the damaged or destroyed property or toward the payment of the Indebtedness. Provided that no Event of Default exists, Net Proceeds in an amount of less than $100,000 shall be applied to restoration or replacement of the property which was damaged or destroyed upon receipt by the Beneficiary of evidence satisfactory to it that (i) sufficient funds are available to pay the costs of restoring or replacing the Secured Property; (ii) rent loss/business interruption insurance is in place in an amount sufficient to cover all expenses and debt service on the Secured Property for a twelve (12) month period; (iii) the value of the completed Secured Property shall be at least equal to the value of the Secured Property immediately prior to the damage or destruction; and (iv) the restoration or replacement will be completed within the earlier of six (6) months from the date of such damage or destruction or the maturity date of the Loan. The foregoing sentence shall not apply to the application of any condemnation awards, such application to be in the sole and absolute discretion of the Beneficiary.

The term "Net Proceeds" shall mean when used with respect to any condemnation award or insurance proceeds allocable to the Secured Property, the gross proceeds from condemnation or insurance allocable, with respect to which that term is used, remaining after payment of all expenses (including reasonable attorneys' fees) incurred in the collection of such gross proceeds.

**Section 4.2.** **Repair in Accordance with Satisfactory Procedures**. Any repair, restoration or replacement shall be in accordance with procedures reasonably satisfactory to the Beneficiary.

**Section 4.3.** **Net Proceeds Held in Trust**. Any and all Net Proceeds to be received by the Grantor hereby are deemed to be, and shall be, held by the Grantor in trust for the benefit of the Beneficiary.

**Section 4.4.** **Notice**. In the case of any material damage to or destruction of any part of the Secured Property, the Grantor shall give notice within five (5) days thereof to the Beneficiary. In case of any taking of all or part of the Secured Property as provided in Section 4.1, the party upon which notice of such taking is served shall give notice within five (5) days thereof to the other. Each such notice shall describe generally the nature and extent of such damage, destruction, taking, loss, proceeding or negotiation.

**Section 4.5.** **Obligation to Pay**. Unless the payments required to be made under the Note have been accelerated pursuant to Section 3.1 hereof, if prior to the full payment of the Note any of the events described in Section 4.1 shall occur, the Grantor shall be obligated to continue to pay the amounts specified in the Note.

## ARTICLE 5
## MISCELLANEOUS

**Section 5.1.** **Substitute Or Successor Trustees**. The irrevocable power to remove and substitute one or more of the Trustees named herein or substituted therefor is expressly given to the Beneficiary and may be exercised any time, or from time to time, without notice and without specifying any reason, by filing for record among the land records where this Deed of Trust is recorded a deed of appointment, and upon the filing of a deed of appointment all of the title and estate, powers, rights, and duties of the Trustee or the Trustees thus superseded shall terminate and shall be vested in the successor Trustee or the Trustees. The Grantor, the Beneficiary and the Trustees, their substitutes and successors, expressly waive notice of the exercise of this power, the giving of bond by any Trustee, and any requirement for application to any court for removal, substitution or appointment of a Trustee hereunder. In addition, the act of any one (1) Trustee, whether such Trustee is a sole acting Trustee or whether there is more than one (1) acting Trustee, shall be sufficient and effective for all purposes set forth herein and any Person may rely upon any document or instrument executed and delivered by one (1) Trustee, to the same extent as though the document had been executed by all of the Trustees.

**Section 5.2.** **Warranties**. The Grantor warrants specially the Secured Property and that it has good and marketable title thereto, and that it will forever warrant and defend the same and the validity and priority of the lien and security interest of this Deed of Trust to the Trustees and the Beneficiary against the claims of any and all other Persons. The Grantor further warrants that Grantor will execute such other and further assurances as may be requisite.

**Section 5.3.** **Waivers**. The Beneficiary may at any time or from time to time waive all or any rights under this Deed of Trust or any other Loan Document, but any waiver or indulgence by the Beneficiary at any time or from time to time shall not constitute, unless specifically so expressed by the Beneficiary in writing, a future waiver of performance or exact performance by the Grantor.

**Section 5.4.** **No Third Party Beneficiary Rights**. No Person not a party to this Deed of Trust shall have any benefit hereunder nor have third party beneficiary rights as a result of this Deed of Trust or any other Loan Document, except as set forth herein or therein, nor shall any Person be entitled to rely on any actions or inactions of the Beneficiary or the Trustees, all of which are done for the sole benefit and protection of the Beneficiary.

**Section 5.5.** **Continuing Obligation Of Grantor**. The terms, conditions, and covenants set forth herein and in the other Loan Documents shall survive closing and shall constitute a continuing obligation of the Grantor during the course of the transaction contemplated herein.

**Section 5.6.** **Binding Obligation**. This Deed of Trust shall be binding upon the parties and their personal representatives, successors and assigns.

**Section 5.7.** **Final Agreement**. This Deed of Trust and the Loan Documents contain the final and entire agreement and understanding of the parties, and any terms and conditions not set forth in this Deed of Trust or the Loan Documents are not a part of this Deed of Trust and the understanding of the parties hereto.

**Section 5.8.** **Amendment**. This Deed of Trust may be amended or altered only in a writing signed by the party to be bound by the amendment, change or alteration.

**Section 5.9.** **Photocopies Sufficient**. A carbon, photographic, or other reproduction of this Deed of Trust shall be sufficient as a financing statement.

**Section 5.10.** **Notices**. Any notice required or permitted by or in connection with this Deed of Trust shall be in writing and shall be made by hand delivery, by Federal Express, or other similar overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to the respective parties at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by the respective parties. Notice shall be considered given as of the date of hand delivery, one (1) business day after delivery to Federal Express or similar overnight delivery service, or three (3) business days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was given as provided herein. If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given and shall be effective as of the date herein provided.

If to the BENEFICIARY: ATLANTIC UNION BANK

5803 Rolling Road
Springfield, VA 22152
Attn: Anthony Wininger

With a copy to: Vincent J. Keegan, Esquire
Keegan & DeVol, PLC
8280 Greensboro Drive, Suite 710
McLean, VA 22102

If to the TRUSTEES: UNION SERVICE CORPORATION
5803 Rolling Road
Springfield, VA 22152

If to the GRANTOR: BNG GROUP LLC
2 Pidgeon Hill Drive, Suite 100
Sterling, VA 20165

**Section 5.11.** **Modification to Note, Deed of Trust, Etc**. The Beneficiary may at any time extend the time for payment of the Obligations, or any part thereof, or interest thereon, and waive any of the covenants or conditions in the Note or in the Deed of Trust contained, in whole or in part, either at the request of the Grantor or of any Person having an interest in the Secured Property, take or release other security, release any part of the Secured Property from the effect of this Deed of Trust, release any party primarily or secondarily liable on the Note or on such other security, grant extensions, renewals or indulgences therein, apply to the payment of the principal and interest and premium, if any, of the Obligations any part or all of the proceeds obtained by sale or otherwise as herein provided, without resort or regard to other security, or resort to any one or more of the securities or remedies which the Beneficiary may have and which in its absolute discretion it may pursue for the payment of all or any part of the Obligations at that time, in such order and in such manner as it may determine, all without in any way releasing the Grantor from any of the covenants, agreements or conditions of the Note or of this Deed of Trust, and without releasing any remaining property from the effect of this Deed of Trust.

**Section 5.12.** **Incorporation By Reference**. The terms, conditions, and provisions of the Note, the Loan Agreement, and each of the other Loan Documents are incorporated by reference in this Deed of Trust to the same extent as if set forth in full in this Deed of Trust. Should any of the terms, conditions, and provisions of the Note, the Loan Agreement, or any of the other Loan Documents conflict with the terms, conditions, or provisions of this Deed of Trust, the Trustees or the Beneficiary shall select which of the terms, covenants, and conditions shall govern and control.

**Section 5.13.** **Terminology**. Whenever used herein, the term the "Grantor" includes the personal representatives, successors, and assigns of the Grantor; the term "Trustees" includes the successors and assigns of the Trustees and any substitute or successor Trustee or Trustees; and the term "Beneficiary" includes all holders from time to time of the beneficial interest

in the Note. The use of the singular includes the plural, and the plural includes the singular. The use of any gender applies to all genders.

**Section 5.14. Joint And Several Liability**. If there exists more than one Grantor, all liabilities under this Deed of Trust shall be joint and several with respect to the Grantors.

**Section 5.15. Invalidity**. If any provision or part of any provision contained in this Deed of Trust shall be found for any reason to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions or the remaining part of any effective provisions of this Deed of Trust and this Deed of Trust shall be construed as if such invalid, illegal, or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality, or unenforceability.

**Section 5.16. Choice Of Law**. The laws of the Commonwealth of Virginia shall govern and be applied to determine all issues relating to this Deed of Trust and the rights and obligations of the parties hereto, including the validity, construction, interpretation, and enforceability of this Deed of Trust and its various provisions and the consequences and legal effect of all transactions and events which resulted in the execution of this Deed of Trust or which occurred or were to occur as a direct or indirect result of this Deed of Trust having been executed. This Deed of Trust is made under and pursuant to the provision of Sections 55.1-318, 55.1-320 and 55.1-325 of the Code of Virginia, and the acts amendatory thereof, and shall be construed to impose and confer on the parties hereto all of the duties, rights and obligations described in said Sections and the acts amendatory thereto (except insofar as the provisions of said Sections and said acts are herein modified).

**Section 5.17. Consent To Jurisdiction; Agreement As To Venue**. The Grantor irrevocably consents to the non-exclusive jurisdiction of the courts of the Commonwealth of Virginia and of the United States District Court for the Eastern District of Virginia, Alexandria Division, if a basis for federal jurisdiction exists. The Grantor agrees that venue shall be proper in any circuit court of the Commonwealth of Virginia selected by the Beneficiary or in the United States District Court for the Eastern District of Virginia, Alexandria Division, if a basis for federal jurisdiction exists and waives any right to object to the maintenance of a suit in any of the state or federal courts of the Commonwealth of Virginia on the basis of improper venue or of inconvenience of forum.

**Section 5.18. Time**. Time is of the essence of all Obligations.

**Section 5.19. Disclosure**. Beneficiary may from time to time assign or grant participations in the Loan and/or the Obligations, and Grantor consents to the delivery by Beneficiary to any acquirer or prospective acquirer of any interest or participation in or with respect to all or part of the Loan and/or the Obligations such information as Beneficiary now or hereafter has relating to the Secured Property, Grantor, any party obligated for payment of any part of the Obligations, any tenant or guarantor under any Lease with respect to all or any part of the Secured Property and any agent or guarantor under any management agreement affecting any part of the Secured Property.

SIGNATURES APPEAR ON FOLLOWING PAGE

**IN WITNESS WHEREOF**, the Grantor has duly executed this Deed of Trust under seal as of the date first above written (notwithstanding the actual date of execution and delivery hereof).

**GRANTOR:**
BNG GROUP LLC

By: Harry Kamin (SEAL)
HARRY KAMIN, Manager

By: Valeria Gunkova (SEAL)
VALERIA GUNKOVA, Manager

**COMMONWEALTH OF VIRGINIA** :
: **to wit:**
**CITY/COUNTY OF** Fairfax :

I HEREBY CERTIFY that on this 30 day of October, 2020, before me, the undersigned Notary Public of the jurisdiction aforesaid personally appeared HARRY KAMIN and VALERIA GUNKOVA, and acknowledged themselves to be Managers of BNG GROUP LLC, and that they, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

____________________ (SEAL)
Notary Public

My Commission expires: 6/30/24

Registration # : 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

**EXHIBIT "A"**

All that certain lot or parcel of land situate, lying and being in Loudoun County, Virginia, to-wit:

Parcel J-3, containing 3.4435 acres of land, more or less, Professional Office/Commercial Park, Countryside, as more particularly shown on Plat entitled "Boundary Line Adjustment Parcels C-3, F-2, J-2, K-2 and O-1, Professional Office/Commercial Park, Countryside" and attached to Deed of Boundary Line Adjustment and Deeds of Trust Modification recorded in Instrument No. 20041020-0112921 and Plat recorded as Instrument No. 20041020-0112922, among the land records of Loudoun County, Virginia.

(NOTE: PURSUANT TO OWNER'S TERMINATION AGREEMENT OF COUNTRYSIDE CENTRE OFFICE CONDOMINIUM DATED JANUARY 31, 2018 AND RECORDED FEBRUARY 16, 2018 AS INSTRUMENT #20180216-0009064.)

PIN: 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-000

## ASSIGNMENT OF RENTS AND LEASES

30th THIS ASSIGNMENT OF RENTS AND LEASES ("Assignment") is made as of the 30 day of October, 2020, by and between **BNG GROUP LLC**, a Virginia limited liability company (the "Assignor") and **ATLANTIC UNION BANK** (the "Lender").

## RECITALS

A. The Lender has agreed to make a purchase money loan to the Assignor in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Loan"). The Loan is being made to the Assignor pursuant to the terms of a Loan and Security Agreement of even date herewith between the Assignor and the Lender (the "Loan Agreement") and is evidenced by a Promissory Note of even date herewith in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** made by the Assignor and payable to the order of the Lender (the "Note"). All capitalized terms used herein shall have the meanings given to them as set forth in the Loan Agreement, unless otherwise defined herein or unless the context clearly indicates otherwise.

B. The obligations of the Assignor under the Note are secured by (among other things) a Deed of Trust, Assignment of Rents and Security Agreement of even date herewith from the Assignor to the trustees named therein on behalf of the Lender (the "Deed of Trust") encumbering certain land and the improvements thereon located in Loudoun County, Virginia, as the same is more particularly described on Exhibit "A" attached hereto and made a part hereof (the "Property").

C. As a condition of making the Loan to the Assignor, the Lender has required the Assignor to assign to the Lender all leases and rents relating to the Property in order to secure the obligations of the Assignor under the Loan. As used in this Assignment, the term "Obligations" shall mean the obligations of the Assignor: (a) to pay when and as due all amounts owed by the Assignor to the Lender in connection with the Loan, as provided in the Note and all other documents executed by the Assignor in connection with the Loan (collectively referred to as the "Loan Documents"), and (b) to perform and observe all of the terms, provisions, covenants and conditions set forth and contained in the Loan Documents, including but not limited to all duties of payment, performance and completion.

## WITNESSETH

NOW, THEREFORE, in consideration of these premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor agrees as follows:

1. **Absolute Assignment Of Leases And Rents and Guaranties.** The Assignor hereby absolutely, unconditionally and irrevocably assigns to the Lender: (a) all present and future leases of all or any part or portion of the Property, and all extensions and renewals thereof and substitutions therefor, independent of the term or duration thereof and whether or not evidenced by a written document (collectively, the "Leases", or individually, a "Lease") and (b) all rent and other sums payable with respect to the Leases (collectively, the "Rents"), including but not limited to any and all fees, charges, reimbursements, casualty insurance proceeds, option payments, payments made in consequence of any defaults by any lessees or tenants under the Leases (collectively, the "Lessees", or individually, a "Lessee") or in settlement, compromise or satisfaction of any obligations of a Lessee due the Assignor as a result or in consequence of the Leases and further including all claims and rights to the payment of money at any time arising in connection with any of the Leases or breaches of any of the Leases, or rejections of any of the Leases by any Lessee thereunder or trustee of such Lessee under Section 365 of the United States Bankruptcy Code, as amended, all rights to recover damages arising out of any of such breaches or rejections, all rights to take charges payable by such Lessee or trustee of such Lessee with respect to the portion of the Property covered by the Lease following the entry of any order for relief under the United States Bankruptcy Code in respect of such Lessee and all rentals and other charges outstanding under the Lease as of the date of the entry of the order for relief. The Assignor further assigns to the Lender any and all rights which the Assignor may have to collect Rents from any person who has guaranteed in whole or in part the obligations of the Lessee under any Lease. The Assignor shall supply the Lender, upon request, with copies of all written guaranty agreements and the names and mailing addresses of all guarantors, and the Lender may require a written consent to the assignment of the guaranty, in a form approved by its counsel, from all guarantors whose guaranty has been assigned. The Assignor shall not alter, amend, modify, terminate, cancel, or release any guaranty or do or permit to be done any act which would release a guarantor of liability under a guaranty. The Assignor shall take all steps which may be required to preserve and maintain a guarantor's liability under the guaranty and the enforceability thereof and shall advise the Lender of any defense or claim or alleged defense or claim of nonliability, whether in whole or in part, by any guarantor coming to the Assignor's attention.

2. **Nature Of The Assignment.** This Assignment of the Leases and Rents is absolute, unconditional and immediate and is intended to transfer and convey to the Lender the present right to the Leases and the Rents, including any and all rights of the Assignor to collect Rents from any person who has guaranteed in whole or in part the obligations of any Lessee under such Lessee's Lease. The rights provided to the Lender by this Assignment are primary and not secondary and are of equal parity to and arise and exist separate and independent of the Lender's rights as beneficiary under the Deed of Trust. The assignment made hereby is neither collateral nor for additional security. Provided no Event of Default (as hereinafter defined) has occurred and is continuing, the Assignor shall have a revocable license to operate and manage the Property and to collect all Rents and other sums due under the Leases. After an Event of Default has occurred and while continuing, the Assignor's license to collect Rents shall immediately terminate, and the Lender automatically and without any affirmative action on the part of the Lender thereupon shall be entitled immediately and exclusively to collect all Rents.

3. **Termination Of Assignment.** All rights of the Lender in or to the Leases and the Rents shall end immediately upon full satisfaction by the Assignor of all of the Obligations. The

execution and recordation among the land records of a deed of release or certificate of satisfaction of the Deed of Trust with respect to the Property shall automatically and without the execution or recordation among the land records of a specific and separate release or reassignment by the Lender be a release and reassignment of this Assignment.

**4. Lender Has All Rights of Assignor Under Leases.** The Lender shall have all rights and privileges of the Assignor, either as provided in any written lease document between the Assignor and the Assignor's Lessee, or as provided by law with respect to the Leases and Rents. The Lender shall have no obligation to enforce the Lender's rights and remedies with respect to the Leases and Rents in the name of or on behalf of the Assignor, and may do so directly in the Lender's own name. The contrary notwithstanding, the Lender shall have no obligation or duty to enforce payment or collection of Rent and shall be chargeable only with such Rent as may actually be received.

**5. Lender Has No Obligation To Perform Assignor's Obligations Under Lease.** The Lender shall have no obligation to the Assignor or to any Lessee to perform the Assignor's obligations under any Lease. The Assignor agrees to indemnify and hold the Lender harmless (including payment of the Lender's reasonable counsel fees) from any attempts by any Lessee to force or compel the Lender to meet the Assignor's obligations to such Lessee. The Assignor further covenants and agrees to satisfy and fulfill all of the Assignor's obligations under the Leases in accordance with the terms and provisions thereof.

**6. Application Of Rent Collected.** Any sum of Rent in fact collected by the Lender, less any expense of collection and less any reasonable attorneys' fees in the event suit is required for collection, shall be applied to satisfy the Obligations. Any Rents collected by the Assignor shall be used by the Assignor to satisfy the Obligations to the extent then due. Unless an Event of Default has occurred and is continuing, the Assignor may retain any Rents collected by the Assignor and not required to satisfy the Obligations to the extent then due and the assignment created by this Assignment shall terminate as to such Rents retained by the Assignor.

**7. No Advance Collection Of Rent.** The Assignor shall not collect Rents from any Lessee more than thirty (30) days in advance of its due date.

**8. Copies of Leases; Subordination of Leases.** Assignor shall supply the Lender with copies of all written Leases and the names and mailing addresses of all Lessees. All Leases shall be subordinate to this Assignment and the Deed of Trust and shall specifically so provide, unless the Lender shall elect in writing to the contrary.

**9. Maintenance of Lessees' Liabliities.** The Assignor will take all steps which may be required to preserve and maintain any Lessee's liability under the Lessee's Lease and the enforceability thereof and shall promptly advise the Lender of any defense or claim or alleged defense or claim of non-liability, whether in whole or in part, by any Lessee coming to the Assignor's attention.

**10. Security Deposits.** In the event the Assignor has collected any security deposits from any Lessees, the Assignor assigns to the Lender such security deposits to the extent of the

Assignor's rights therein. Upon request by the Lender, such security deposits shall be maintained in an escrow account at the Lender separate and apart from the Assignor's other funds. Withdrawals from the escrow account shall not be made without the prior written approval of the Lender except upon the expiration of a Lease for the purpose of reimbursing a Lessee. The Assignor immediately shall relinquish control of the security deposits in favor of the Lender upon the occurrence of an Event of Default.

**11. Lessees and Guarantors May Rely On This Assignment.** The Assignor irrevocably authorizes all Lessees and guarantors to rely upon and comply with any notice or demand by the Lender for payment to the Lender of any rents or for performance of any obligation and the Assignor releases and discharges all Lessees and guarantors from any and all liability to the Assignor for so complying. All Lessees and guarantors shall have no right or duty to inquire as to whether any Event of Default hereunder has occurred or is existing.

**12. No Further Assignments; Recordation; Lender Not Mortgagee In Possession.** The Assignor shall not make any further assignments of Rents or Leases regarding the Property while this Assignment is in effect except in favor of the Lender. This Assignment may be recorded among the land records by the Lender at the Assignor's expense. Nothing contained herein shall be deemed to constitute the Lender as a mortgagee in possession.

**13. Default.** The following shall constitute an Event of Default under this Assignment: (a) the failure of the Assignor to satisfy or perform any of the Obligations, when and as due; (b) the failure of the Assignor to perform and observe any of the terms and conditions contained herein; or (c) the occurrence or happening of any act, event or condition which would constitute an Event of Default under any of the Loan Documents.

**14. Rights Of Lender Upon The Occurrence Of An Event of Default.** Upon the occurrence of an Event of Default, the Lender may, in addition to any other right or remedy which the Lender may have under any other Loan Document or applicable law, upon fifteen (15) days' advance written notice: (a) collect all Rents and enforce all Leases, and to this end notify the Lessees forthwith to forward all Rents directly to the Lender and enforce the Leases against the Lessees if the Lessees fail to comply therewith; and (b) take possession of the Property to the extent authorized by the Deed of Trust and operate and manage the Property.

**15. Further Assurances.** The Assignor shall execute any further or additional documents considered necessary, appropriate or proper by the Lender so as to effectuate the purposes and intent of this Assignment.

**16. Lender May Assign This Assignment.** This Assignment may be assigned by the Lender. Upon an assignment, the Lender's assignee shall obtain all of the rights of the Lender hereunder, except as may have been expressly limited herein.

**17. Binding Nature.** This Assignment shall inure to the benefit of the Lender and Lender's successors and assigns, and shall be binding upon the Assignor and Assignor's personal representatives, successors and assigns, whether assigned in violation of or in compliance with this Assignment.

**18.** **<u>Amendment</u>.** The terms and conditions of this Assignment may be amended only by a writing executed by the parties hereto with the same formality as this Assignment.

**19.** **<u>Notices</u>.** Any notice required or permitted hereunder shall be in writing and shall be made to the Lender or the Assignor at the addresses set forth in the Deed of Trust or to such other address or addresses as may be hereafter specified in writing, and shall be given in accordance with the procedures specifically set forth in the Deed of Trust.

**20.** **<u>Choice of Law/ Consent To Jurisdiction/Agreement As To Venue</u>.** This Assignment shall be deemed to be executed in, and governed by, the laws of the Commonwealth of Virginia. The Assignor irrevocably consents to the non-exclusive jurisdiction of the courts of the Commonwealth of Virginia and the United States District Courts for the Eastern District of Virginia (Alexandria Division), if a basis for federal jurisdiction exists. The Assignor agrees that venue shall be proper in any circuit court of the Commonwealth of Virginia selected by the Lender or in the United States District Court for the Eastern District of Virginia (Alexandria Division) if a basis for federal jurisdiction exists and waives any right to object to the maintenance of a suit in any of the aforementioned state or federal courts within the Commonwealth of Virginia on the basis of improper venue or of inconvenience of forum.

SIGNATURE APPEARS ON FOLLOWING PAGE

**IN WITNESS WHEREOF,** the Assignor has executed this Assignment as an instrument under seal as of the date first above written.

**ASSIGNOR:**
BNG GROUP LLC

By: [signature] (SEAL)
HARRY KAMIN, Manager

By: [signature] (SEAL)
VALERIA GUNKOVA, Manager

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** FAIRFAX **:**

I HEREBY CERTIFY that on this 30th day of October, 2020, before me, the undersigned Notary Public of the jurisdiction aforesaid personally appeared HARRY KAMIN and VALERIA GUNKOVA, and acknowledged themselves to be Managers of BNG GROUP LLC, and that they, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

[signature] (SEAL)
Notary Public

My Commission expires: 6/30/24

Registration # : 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA



Gunkova_054883

**EXHIBIT "A"**

(Description of the Property)

All that certain lot or parcel of land situate, lying and being in Loudoun County, Virginia, to-wit:

Parcel J-3, containing 3.4435 acres of land, more or less, Professional Office/Commercial Park, Countryside, as more particularly shown on Plat entitled "Boundary Line Adjustment Parcels C-3, F-2, J-2, K-2 and O-1, Professional Office/Commercial Park, Countryside" and attached to Deed of Boundary Line Adjustment and Deeds of Trust Modification recorded in Instrument No. 20041020-0112921 and Plat recorded as Instrument No. 20041020-0112922, among the land records of Loudoun County, Virginia.

(NOTE: PURSUANT TO OWNER'S TERMINATION AGREEMENT OF COUNTRYSIDE CENTRE OFFICE CONDOMINIUM DATED JANUARY 31, 2018 AND RECORDED FEBRUARY 16, 2018 AS INSTRUMENT #20180216-0009064.)

# GUARANTY AND INDEMNIFICATION AGREEMENT

**IMPORTANT NOTICE - THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**THIS GUARANTY AND INDEMNIFICATION AGREEMENT** ("Guaranty Agreement") is entered into this 30th day of October, 2020, by **HARRY KAMIN** and **VALERIA GUNKOVA** (individually and collectively, the "Guarantor") in favor of **ATLANTIC UNION BANK** (the "Lender") and its successors and assigns.

## Explanatory Statement

A. The Lender has agreed to make a purchase money loan to **BNG GROUP LLC**, a Virginia limited liability company (the "Borrower") in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Loan"). The Loan is being made to the Borrower pursuant to the terms of a Loan and Security Agreement of even date herewith between the Borrower, Lender and Guarantor (the "Loan Agreement") and is evidenced by a Promissory Note of even date herewith in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** made by the Borrower and payable to the order of the Lender (the "Note").

B. The payment and performance of the Note are guaranteed by this Guaranty Agreement. The obligations of the Borrower under the Note are secured by (among other things) a Deed of Trust, Assignment of Rents and Security Agreement from the Borrower to the trustees named therein on behalf of the Lender (the "Deed of Trust") encumbering certain land and the improvements thereon located in Loudoun County, Virginia and an Assignment of Rents and Leases from the Borrower to the Lender (the "Assignment of Rents"), each of which instruments is of even date herewith.

C. The Guarantor desires that the Lender make the Loan to the Borrower as aforesaid and the Guarantor is willing to enter into this Guaranty Agreement in order to achieve lower interest costs and other savings to the Borrower. It is a condition of the obligation of the Lender to make the Loan that this Guaranty Agreement shall have been executed and delivered by the Guarantor.

**NOW, THEREFORE,** in consideration of the premises and for valuable consideration, the receipt and adequacy of which hereby are acknowledged, the Guarantor, subject to the terms hereof, covenants and agrees with the Lender, and with its successors and assigns as follows:

## ARTICLE I
## DEFINITIONS

All capitalized terms used herein shall have the meanings given to them as set forth in the Loan Agreement, unless otherwise defined herein or unless the context clearly indicates otherwise.

"Guaranteed Obligations" means the obligations referred to in Article III hereof.

"Loan Documents" means the Note, Loan Agreement, Deed of Trust, Assignment of Rents, and this Guaranty Agreement, as modified from time to time, together with all other documents, instruments and certificates executed by the Borrower or Guarantor in connection with the Loan.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

**Section 2.1. Explanatory Statement.** The Explanatory Statement is incorporated herein as part of this Guaranty Agreement.

**Section 2.2. Representations and Warranties of the Guarantor.** The Guarantor represents and warrants as follows:

(a) This Guaranty Agreement and the Guarantor's assumption of Guarantor's obligations hereunder will result in direct financial benefits to the Guarantor.

(b) This Guaranty Agreement constitutes the valid, binding and legal obligation of the Guarantor, and is fully enforceable in accordance with its terms, except as the same may be limited by: (i) the effect of liquidation, conservatorship, insolvency, bankruptcy, reorganization, moratorium and other similar debtor relief laws; (ii) the power of courts to apply or refuse to apply equitable remedies (including the equitable remedy of specific performance); and (iii) the exercise of discretion and the application of equitable principles by a court of equity or of law sitting in equity.

(c) There is no litigation at law or in equity or any proceeding before any governmental agency involving or affecting Guarantor (or any one of them, if more than one Guarantor) pending or, to the knowledge of the Guarantor, threatened, that would have a material adverse effect upon the business or assets of the Guarantor or the Borrower or that would affect the construction or equipping or operation of the Guarantor's business or the Borrower's business, the validity of this Guaranty Agreement, or the performance of the obligations hereunder.

(d) The Guarantor is not in default in the payment of principal of or interest on any indebtedness for borrowed money and is not in default under any instrument under which or subject to which, any indebtedness has been incurred, and no event of default has occurred and is continuing under the provisions of any such instrument, beyond any applicable notice and grace period.

(e) The execution and delivery of this Guaranty Agreement and the performance by the Guarantor of its obligations hereunder and the consummation of the transactions contemplated herein will not conflict with, constitute a breach or result in a violation of any agreement or instrument to which the Guarantor is a party or by which the Guarantor is bound or to the Guarantor's knowledge any constitutional or statutory provision or order, rule, regulation, decree or ordinance of any court, government or governmental authority having jurisdiction over the Guarantor or Guarantor's property.

(f) The Guarantor has received all of the Loan Documents and has reviewed or caused to

be reviewed those Loan Documents that the Guarantor deems necessary and appropriate to fulfill the Guarantor's obligations hereunder and thereunder.

**Section 2.3.** **USA PATRIOT Act.** Neither Guarantor nor any affiliate of Guarantor is identified in any list of known or suspected terrorists published by any United States government agency, including, without limitation, (i) the annex to Executive Order 13224 issued on September 23, 2001 by the President of the United States and (ii) the Specially Designated Nationals List published by the United States Office of Foreign Assets Control.

**Section 2.4.** **OFAC.** Neither Guarantor nor any of its members, shareholders, officers or directors (as applicable) (i) is a "Sanctioned Person" (as defined below), (ii) has any of its assets in "Sanctioned Countries" (as defined below), or (iii) derives any of its operating income from investments in, or transactions with, Sanctioned Persons or Sanctioned Countries. No part of the proceeds of the Loan hereunder will be used directly or indirectly to fund any operations in, finance any investments or activities in or make any payments to a Sanctioned Person or a Sanctioned Country or for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended and in effect from time to time. Sanctioned Country shall mean a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treasury.gov/resource-center/sanctions/Pages/default.aspx, or as otherwise published from time to time. Sanctioned Person shall mean (i) a Person named on the list of "Specially Designated Nationals and Blocked Persons" maintained by OFAC available at http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC.

## ARTICLE III
## GUARANTY AND INDEMNIFICATION AGREEMENTS

**Section 3.1.** **(a) Guaranty of Payment.** Guarantor hereby unconditionally guarantees the due and punctual payment (whether at stated maturity, by acceleration or otherwise) of the principal of, and interest on, and all other amounts payable to the Lender in respect of, the Note as it is from time to time outstanding and all other amounts due under the terms of the other Loan Documents. The guaranty provided hereunder is a guaranty of payment and is in no way conditioned or contingent upon any attempt to collect from the Borrower or to realize upon any property subject to the lien of, or security interest under, the other Loan Documents. If an Event of Default (as herein defined) occurs, the Guarantor, upon demand therefor, will pay to the Lender the sums which would otherwise have been due to the Lender. The Guarantor hereby waives presentment, demand, notice or protest of any kind. No modification, amendment, supplement, renewal, extension or release of or under the Loan Documents, shall release, affect or impair the obligations of the Guarantor under this Guaranty Agreement.

It is expressly understood and agreed by the Guarantor that Guarantor shall unconditionally guaranty all interest on the Loan and late charges, default interest, costs of collection and costs relating to the presence of Hazardous Materials on the Secured Property (as defined in the Deed of Trust) due under the Loan Documents, together with all other sums due under the terms of the Loan Documents to the extent not limited as set forth above.

**(b)** **<u>Guaranty of Performance</u>.** The Guarantor hereby unconditionally guarantees the due and punctual performance of the Borrower's obligations under the Loan Documents. This guaranty is a guaranty of performance and is in no way conditioned or contingent upon any attempt to obtain performance by the Borrower. If an Event of Default (as herein defined) occurs, the Guarantor, upon demand therefor, will perform for the Lender those acts which would otherwise have been due to the Lender under the Loan Documents. The Guarantor hereby waives presentment, demand, notice or protest of any kind. No modification, amendment, supplement, renewal, extension or release of or under the Loan Documents shall release, affect, or impair the obligations of the Guarantor under this Guaranty Agreement.

**Section 3.2.** **<u>Indemnification of Lender</u>.** In addition to amounts payable under Section 3.1 of this Guaranty Agreement, the Guarantor hereby agrees to pay and to indemnify and save the Lender harmless from and against any damage, loss, cost or expense (including reasonable attorneys' fees) which the Lender may incur or be subject to as a consequence, direct or indirect, of (a) any breach by the Borrower of any warranty, covenant, term or condition in, or the occurrence of any default under, the Loan Documents together with all reasonable expenses resulting from the compromise or defense of any claims or liabilities arising as a result of any such breach or default, and (b) defense against any legal action commenced to challenge the validity of any of the above referred to instruments.

## ARTICLE IV
## GENERAL PROVISIONS

**Section 4.1.** **<u>Separate Causes of Action; Currency</u>.** Each and every default in the payment or performance of the Guaranteed Obligations shall give rise to a separate cause of action hereunder, and separate actions may be brought hereunder as each cause of action arises. All payments by the Guarantor shall be paid in lawful money of the United States which at the time and place of payment is legal tender for the payment of public or private debts in the United States.

**Section 4.2.** **<u>Guaranty is a Continuing Obligation</u>.** The obligations of the Guarantor under this Guaranty Agreement shall be continuing, irrevocable and unconditional and shall remain in full force and effect until this Guaranty Agreement is released as provided in Section 4.6 hereof, and shall not, to the extent permitted by law, be affected, modified or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to, or the consent of, the Guarantor:

(a) the assignment, compromise, settlement, release or termination of any or all of the rights, remedies, obligations, covenants or agreements (i) of the Borrower under the Loan Documents, or any other document related to the Guaranteed Obligations, or (ii) of any other guarantor under this or any other guaranty;

(b) any assignment or mortgaging or purported assignment or mortgaging of all or any part of the interest of the Borrower in the Secured Property;

(c) the waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants, agreements or other provisions contained in the Loan Documents or any other document related to the Guaranteed Obligations;

(d) the extension of time for the payment of all or any part of the principal of or interest on the Note, of any sums of money due under the Loan Documents or this Guaranty Agreement, of the time for performance of any other obligations, covenants and agreements under or arising out of the Loan Documents or any other document related to the Guaranteed Obligations, or the extension or renewal hereof or thereof;

(e) the modification or amendment (whether material or otherwise) of any obligation, covenant, agreement or provision of the Loan Documents or any other document related to the Guaranteed Obligations;

(f) the taking or the omission of any actions referred to in the Loan Documents or any other document related to the Guaranteed Obligations;

(g) any failure, omission, delay or deficiency on the part of the Lender or any other holder of the Note to enforce, assert or exercise any right, power or remedy conferred on the Lender or any other holder of the Note in the Loan Documents or any other document related to the Guaranteed Obligations, or any other act or acts on the part of the Lender, or any other holder of the Note;

(h) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all the assets, the marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of debt, or other similar proceeding affecting the Borrower or any of its assets, or any allegation or contest of the validity of enforceability of the Loan Documents or any other document related to the Guaranteed Obligations in any such proceeding;

(i) the release or discharge of the Borrower from the performance or observance of any obligation, covenant, agreement, duty, term or condition contained in the Loan Documents or any other document related to the Guaranteed Obligations by operation of law;

(j) the invalidity or unenforceability of the Loan Documents or any other document related to the Guaranteed Obligations; or

(k) any release of any collateral or security for the Loan or the Note.

**Section 4.3.** **<u>Right to Proceed Directly Against Guarantor</u>**. The Lender, in its sole discretion, may proceed first and directly against the Guarantor under this Guaranty Agreement without first proceeding against the Borrower or proceeding against or exhausting any other security held by the Lender in connection with the Loan, the Note or this Guaranty Agreement.

**Section 4.4. <u>Right of Setoff.</u>** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust or other accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty Agreement.

No setoff, counterclaim, reduction or diminution of any obligations, or any defense of any kind or nature which the Borrower has or may have against the Lender, or any other person, shall be available to the Guarantor against the Lender.

**Section 4.5. <u>Limitation of Liability of Borrower under Note or Loan Agreement not to Affect Liability Hereunder.</u>** To the extent permitted by law, no modification, limitation or discharge of liability of the Borrower under the Note or Loan Agreement arising out of, or by virtue of, any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law shall affect the liability of the Guarantor hereunder in any manner whatsoever, and the Guarantor hereby waives all rights and benefits which might accrue to them by reason of any such proceeding.

**Section 4.6. <u>Release of Guaranty.</u>** This Guaranty Agreement shall be released in full and the obligations of the Guarantor shall terminate at such time as the Guaranteed Obligations have been paid in full and otherwise performed by Borrower in accordance with the terms of the Loan Documents.

**Section 4.7. <u>Financial Information.</u>** The Guarantor shall deliver the following financial information to the Lender:

**(a) <u>Annual Financial Statements</u>.** Within ninety (90) days from the end of each year, each Guarantor shall provide Lender with copies of their respective annual financial statements in reasonable detail satisfactory to the Lender.

**(b) <u>Tax Returns</u>.** Each Guarantor shall also submit to the Lender each year their respective federal and state tax returns for the prior year. Such tax returns shall be submitted to the Lender as soon as available, but in any event within thirty (30) days of filing each year during the term of the Loan.

**(c) <u>Miscellaneous</u>.** The Guarantor shall provide the Lender with such additional information, reports or statements as the Lender may from time to time reasonably request.

**Section 4.8. <u>Waiver.</u>** The Guarantor hereby waives, to the extent permitted by law, (a) the benefits of Section 49-25 and 49-26 of the Code of Virginia (1950), as amended, and any amendments thereto or any similar statutes or rules of law, (b) the benefit of any homestead or similar exemption, state or federal, with respect to its obligations hereunder, (c) notice of any of the matters referred to in Section 4.2 of this Guaranty Agreement, and (d) any demand (except as expressly specified herein), proof or notice of non-payment, or notice of failure to comply with, any of the Guaranteed

Obligations.

**ARTICLE V**
**DEFAULTS**

"Event of Default" means (a) any of the Events of Default specified in Article V of the Loan Agreement or Article 2 of the Deed of Trust, and (b) any failure of the Guarantor to perform Guarantor's obligations in accordance with the terms hereof, which continues after the expiration of any applicable notice and cure periods under the Loan Documents.

**ARTICLE VI**
**MISCELLANEOUS**

**Section 6.1. Notices.** Any notice required or permitted by or in connection with this Guaranty Agreement shall be in writing and shall be made by hand delivery, by FedEx, or other similar overnight delivery service, or by certified mail, return receipt requested, postage prepaid, addressed to the respective parties at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by the respective parties. Notice shall be considered given as of the date of hand delivery, one (1) business day after delivery to FedEx or similar overnight delivery service, or three (3) business days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was given as provided herein. If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given and shall be effective as of the date herein provided.

| | |
|---|---|
| If to the LENDER: | ATLANTIC UNION BANK<br>5803 Rolling Road<br>Springfield, VA 22152<br>Attn: Anthony Wininger |
| With a copy to: | Vincent J. Keegan, Esquire<br>Keegan & DeVol, PLC<br>8280 Greensboro Drive, Suite 710<br>McLean, VA 22102 |
| If to the GUARANTOR: | HARRY KAMIN<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |
| and to: | VALERIA GUNKOVA<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |

**Section 6.2. Survival of Agreement.** All covenants, agreements, representations and warranties made herein and in the certificates delivered pursuant hereto shall survive the closing of

the Loan and shall continue in full force and effect until this Guaranty Agreement is released as provided in Section 4.6 hereof.

**Section 6.3.** **Waiver of Acceptance.** The Guarantor hereby expressly waives notice in writing, or otherwise, from the Lender of their acceptance or reliance on this Guaranty Agreement.

**Section 6.4.** **No Remedy Exclusive, Waiver.** No remedy herein conferred or reserved is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Guaranty Agreement or now or hereafter existing at law or in equity or by statute. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time as often as may be deemed expedient. In order to exercise any remedy provided for in this Guaranty Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required. In the event any provision contained in this Guaranty Agreement should be breached by the Guarantor and thereafter be duly waived by the Lender, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Guaranty Agreement shall be established by conduct, custom or course of dealing.

**Section 6.5.** **Applicable Law.** This Guaranty Agreement shall be interpreted and construed in accordance with and governed by the laws of the Commonwealth of Virginia, without regard to principles of conflict of laws.

**Section 6.6.** **Waiver of Rights Against Borrower.** During the term of the Loan, the Guarantor waives all claims, including but not limited to all claims based on rights of subrogation, repayment, reimbursement, or recoupment, and any "claim" as the term is defined in the United States Bankruptcy Code, as amended, which the Guarantor might otherwise now have, or hereafter acquire, from or against the Borrower or the properties of the Borrower as a result of the Guarantor's payment or performance of the Guaranteed Obligations. The parties specifically intend the waiver contained in this Section to confer third-party beneficiary rights upon the Borrower and its respective successors and assigns, including without limitation any debtor in possession or trustee in bankruptcy estate of the Borrower.

**Section 6.7.** **Entire Agreement; Counterparts.** This Guaranty Agreement constitutes the entire agreement, and supersedes all prior agreements and understandings, both written and oral, between the Guarantor, and the Lender with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**Section 6.8.** **Amendments, Changes and Modifications.** Except as otherwise provided in this Guaranty Agreement, prior to the satisfaction and payment of the Guaranteed Obligations in full, this Guaranty Agreement may not be amended, changed, modified, altered or terminated without the prior written consent of the Lender.

**Section 6.9.** **Invalid or Unenforceable Portions.** The invalidity, illegality or

unenforceability of any one or more phrases, sentences, clauses or sections contained in this Guaranty Agreement shall not affect the validity, legality or enforceability of the remaining portions of this Guaranty Agreement.

**Section 6.10. Successors and Assigns.** This Guaranty Agreement and the obligations and benefits hereof will accrue to the parties hereto as well as their respective heirs, personal representatives, successors, and/or assigns.

**Section 6.11. Confession of Judgment.** Upon the occurrence of an Event of Default hereunder, the Guarantor appoints and designates any of Douglas D. Callaway and/or Michael E. Walsh and/or Lynn Harrison and/or Frank Merritt and/or Inga Green , the Guarantor's duly constituted attorney-in-fact to confess judgment pursuant to the provisions of Section 8.01-432 of the Code of Virginia of 1950, as amended, against Guarantor for the amount of the unpaid principal balance hereunder, all interest accrued and unpaid thereon, and all other amounts payable by Guarantor to the Lender under the terms of this Guaranty Agreement, together with court costs and attorneys' fees of fifteen percent (15%) of the unpaid principal balance and interest then due hereunder, which judgment shall be confessed in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia. The Guarantor shall, upon request of the Lender, name such additional or alternative persons designated by the Lender as the Guarantor's duly constituted attorney or attorneys-in-fact to confess judgment against the Guarantor, pursuant to the foregoing provision. The Guarantor represents and warrants that the obligations evidenced by this Guaranty Agreement were not incurred for personal, family or household purposes. The Guarantor hereby releases, to the extent permitted by applicable law, all errors and all rights of exemption, appeal, stay of execution, inquisition, and other rights to which the Guarantor may otherwise be entitled under the laws of the United States of America or of any state or possession of the United States of America now in force and which may hereafter be enacted. The authority and power to appear for and enter judgment against the Guarantor shall not be exhausted by one or more exercises thereof or by any imperfect exercise thereof and shall not be extinguished by any judgment entered pursuant thereto. Such authority may be exercised on one or more occasions or from time to time as often as the Lender shall deem necessary or desirable, for all of which this Guaranty Agreement shall be a sufficient warrant.

In the event that (a) the Lender obtains a judgment by confession under this Guaranty Agreement and (b) all of the obligations of the Guarantor under the Guaranty Agreement are satisfied and paid in full, other than the obligation to pay attorneys' fees, the Lender will require that the Guarantor make payment only of attorney's fees actually incurred (such fees to be reasonable), and any funds received in excess of the actual amount of attorney's fees shall be refunded to the Guarantor.

**Section 6.12. Waiver of Jury Trial.** The Guarantor and the Lender each agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by the Guarantor or the Lender or any successor or assign of the Guarantor or the Lender with respect to this Guaranty Agreement or any other Loan Document or which in any way relates, directly or indirectly, to the Guaranteed Obligations, or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. THE GUARANTOR AND THE LENDER EACH HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING. The Guarantor acknowledges and agrees that this provision is a specific and material

aspect of the agreement between the parties and the Lender would not provide the Loan to the Borrower if this provision were not part of this Guaranty.

**Section 6.13.** **Joint and Several Liability.** In the event this Guaranty Agreement is executed by more than one party as Guarantor, the liability of such parties is joint and several. In addition, Guarantor's obligations hereunder are joint and several with any other party now or hereafter obligated under the Loan Documents.

**IN WITNESS WHEREOF,** the Guarantor has hereto executed this Guaranty Agreement under seal on the date first above written.

**GUARANTOR:**

Harry D. Kamin (SEAL)
HARRY KAMIN

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30th day of October, 2020, before me, the undersigned Notary Public in the aforesaid jurisdiction, personally appeared HARRY KAMIN, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the foregoing instrument for the purposes and in the capacity therein contained.

WITNESS MY Hand and Notarial Seal.

_____________________(SEAL)
Notary Public

My Commission expires: 6/30/24

Registration #: 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

_______________________(SEAL)
VALERIA GUNKOVA

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30th day of October, 2020, before me, the undersigned Notary Public in the aforesaid jurisdiction, personally appeared VALERIA GUNKOVA, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the foregoing instrument for the purposes and in the capacity therein contained.

WITNESS MY Hand and Notarial Seal.

_______________________(SEAL)
Notary Public

My Commission expires: 6/30/24

Registration # : 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

# ENVIRONMENTAL INDEMNITY AGREEMENT

THIS ENVIRONMENTAL INDEMNITY AGREEMENT (the "Agreement") is entered into this 30th day of October, 2020, by and between **BNG GROUP LLC**, a Virginia limited liability company ("Borrower"); **HARRY KAMIN** and **VALERIA GUNKOVA** (individually and collectively, the "Guarantor") (Borrower and Guarantor being individually and collectively referred to herein as "Indemnitor"); and **ATLANTIC UNION BANK** ("Lender").

WITNESSETH:

WHEREAS, Lender has agreed to make a purchase money loan (the "Loan") to Borrower, which Loan is (i) evidenced by, inter alia, that certain Promissory Note of even date herewith, made by Borrower and payable to the order of Lender, in the original principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Note"), and (ii) secured by, inter alia, that certain first lien Deed of Trust, Assignment of Rents and Security Agreement to be recorded among the land records of Loudoun County, Virginia dated of even date herewith (the "Deed of Trust") from Borrower conveying to **UNION SERVICE CORPORATION**, a Virginia corporation, Trustee, for the benefit of Lender certain property located in Loudoun County, Virginia known as 2 Pidgeon Hill Drive, Sterling, VA 20165 and more particularly described on Exhibit "A" attached hereto (the "Property"); and

WHEREAS, Guarantor will receive financial or other benefits from Lender making the Loan to Borrower and, as such, has agreed to indemnify Lender with regard to certain environmental matters relating to the Property, subject to and in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the premises, Ten Dollars ($10.00), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Indemnitor, intending to be legally bound, hereby jointly and severally (if more than one) agrees as follows:

1. Recitals. The foregoing recitals are incorporated into this Agreement by this reference.

2. Covenants. (a) Indemnitor covenants and agrees with Lender that, except for such items in not more than *de minimis* amounts necessary in connection with the operation of the Property, Indemnitor shall not cause, permit to occur or permit to exist any deposit, storage, disposal, burial, discharge, spillage, uncontrolled loss, seepage or filtration of (i) any substances (collectively, "Hazardous Substances") now or hereafter defined as "hazardous substances," "pollutants," "contaminants," "hazardous materials," "hazardous wastes," or "hazardous or toxic substances" or related materials in any applicable federal, state, or local law, regulation, ordinance, or directive, including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1976 (42 U.S.C. §§6901 et seq.), Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended by SARA, 42 U.S.C. §§ 9601, et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. §§ 1810, et seq.; the Toxic Substances Control Act, 15 U.S.C. §§ 2601, et seq.; the Resource Conservation and

Recovery Act, as amended (42 U.S.C. §§ 9601, et seq.); the Clean Water Act, 33 U.S.C. §§ 1251 et seq.; the Clean Air Act, 42 U.S.C. §§ 7412 et seq.; as any such acts may be amended, modified or supplemented (collectively, the "Hazardous Waste Laws"); (ii) those substances listed or otherwise identified in the regulations adopted and publications issued, as may be amended, modified or supplemented, pursuant to any Hazardous Waste Laws; (iii) any friable or airborne asbestos; (iv) any substance the presence of which on the Property is prohibited by any legal requirement of any governmental authority or which may give rise to an assessment of a governmental authority; and (v) any other substance which by legal requirement of any governmental authority requires special handling in its collection, storage, treatment, or disposal at, upon, under or within any portion of the Property.

(b) Indemnitor further covenants and agrees with Lender that (i) Indemnitor will not be involved in operations at the Property, which operations could lead to (A) the imposition of liability under the Hazardous Waste Laws on Indemnitor, or on any subsequent or former owner of the Property or (B) the creation of a lien on the Property under the Hazardous Waste Laws or under any similar laws or regulations, and (ii) Indemnitor will not permit any tenant or occupant of the Property to engage in any activity that could impose liability under the Hazardous Waste Laws on such tenant or occupant, on Indemnitor or on any other owner of any of the Property.

(c) Indemnitor shall comply strictly and in all respects with the requirements of the Hazardous Waste Laws and related regulations and with all similar laws and regulations and shall notify Lender immediately upon Indemnitor becoming aware of any discharge or discovery of any Hazardous Substance at, upon, under or within any portion of the Property. Indemnitor shall promptly forward, or cause to be forwarded, to Lender copies of all orders, notices, permits, applications or other communications and reports received by Indemnitor in connection with any discharge or the presence of any Hazardous Substance or any other matters relating to the Hazardous Waste Laws or any similar laws or regulations, as they may affect the Property.

3. Representations and Warranties. Indemnitor represents and warrants that, to the best of Indemnitor's knowledge and belief: (a) the Property is in compliance with all Hazardous Waste Laws; (b) that no event or circumstance exists or has occurred which could impose liability under the Hazardous Waste Laws or cause a violation thereof, or result in a breach of any covenant of Indemnitor hereunder, and; (c) that no claim, action or proceeding is pending or threatened against Indemnitor or any portion of the Property under the Hazardous Waste Laws.

4. Indemnity. Indemnitor shall at all times defend, indemnify and hold harmless Lender and its officers, directors, agents and employees (collectively, "Indemnitee") against and from any and all liabilities, suits, actions, claims, demands, losses, costs or expenses, of any nature whatsoever suffered or incurred by Indemnitee, whether as beneficiary of the Deed of Trust, as mortgagee in possession, or as successor-in-interest to Indemnitor by foreclosure deed or deed in lieu of foreclosure, with respect to all or any portion of the Property which involve or relate to any of the following events or circumstances:

(i) any discharge of Hazardous Substances, the threat of discharge of any Hazardous Substances, or the presence of any Hazardous Substances affecting the

Property;

(ii) any costs of removal or remedial action incurred by the United States Government or any state or local governmental authority, any response costs incurred by any other person or damages from injury to, destruction of, or loss of natural resources, including reasonable costs of assessing such injury, destruction or loss, incurred pursuant to any Hazardous Waste Laws;

(iii) liability for personal injury or property damage arising under any statutory or common law tort theory, including, without limitation, damages assessed for the maintenance of a public or private nuisance or for the carrying on of an abnormally dangerous activity at the Property; and/or

(iv) any other environmental matter affecting the Property within the jurisdiction of the Environmental Protection Agency, any other federal agency, the Commonwealth of Virginia, or any state or local environmental agency.

(b) Indemnitor's obligations under this Agreement shall arise upon the discovery of the presence of any Hazardous Substance, whether or not the Environmental Protection Agency, any other federal agency, the Commonwealth of Virginia or any state or local environmental agency has taken or threatened any action in connection with the presence of any Hazardous Substances.

(c) In the event of any discharge of Hazardous Substances, the threat of a discharge of any Hazardous Substances, or the presence of any Hazardous Substance affecting the Property in breach of Indemnitor's covenants in Section 2 hereof, and/or if Indemnitor shall fail to comply with any of the requirements of the Hazardous Waste Laws or related regulations or any other environmental law or regulation, Lender may at its election, but without the obligation so to do, give notice to Indemnitor of such event or threat. After the expiration of ten (10) days' notice to Indemnitor thereof (unless Indemnitor cures such condition within ten (10) days after such notice is sent to it or within such additional time (not exceeding sixty (60) days) reasonably necessary if it acts diligently), then Lender may cause such work to be performed at the Property and/or take any and all other actions as Lender shall deem necessary or advisable in order to abate the discharge of any Hazardous Substance, remove the Hazardous Substance or cure Indemnitor's noncompliance.

(d) Indemnitor acknowledges that Lender has agreed to make the Loan in reliance upon Indemnitor's covenants and warranties in this Agreement. For this reason, it is the intention of Indemnitor and Lender that the provisions of this Agreement shall supersede any provisions in the Note, the Deed of Trust or any of the other loan documents executed in connection with the Loan (collectively the "Loan Documents") which in any way limit the personal liability of Indemnitor and that each Indemnitor shall be personally and jointly and severally liable for any obligations arising under this Agreement. All of the covenants and indemnities of this Agreement shall survive the transfer of any or all right, title and interest in and to the Property by any Indemnitor to any party, whether or not affiliated with Indemnitor, and shall survive foreclosure except that such covenants and indemnities shall not apply to events or circumstances which are

to be indemnified against hereunder and which first arise after the transfer of the affected portion of the Property by Indemnitor to a party unaffiliated with Indemnitor, if such transfer is permitted by the Deed of Trust or was a transfer by foreclosure or deed in lieu thereof.

5. Environmental Assessments. Lender shall have the right to obtain environmental assessments of all or any portion of the Property from time to time to the extent that Lender, in its reasonable discretion exercised in good faith and based upon reasonable need, determines that such assessments are necessary, or determines that such assessments are required by any law or governmental rule, regulation, policy, guideline or directive (whether or not having the force of law), or any interpretation thereof. The cost of such assessments shall be borne by Indemnitor. Lender shall have the right to select the environmental firm to conduct all such assessments and the form of such assessments shall be satisfactory to Lender in its reasonable discretion.

6. Attorneys' Fees. If Lender, or someone on Lender's behalf, retains the services of an attorney in connection with the subject of indemnity herein, Indemnitor shall pay Lender's costs and reasonable attorneys' fees thereby incurred. Lender may employ attorneys of its own choice.

7. Interest. In the event that Indemnitee incurs any obligations, costs or expenses under this Agreement, Indemnitor shall pay the same to Lender immediately on demand, and if such payment is not received within ten (10) days after written demand from Indemnitee to Indemnitor, interest on such amount shall, after the expiration of the ten (10) day period, accrue at the default rate of interest as provided in the Note until such amount, plus interest, is paid in full.

8. Joint and Several Liability. In the event that this Agreement is executed by more than one party as Indemnitor, the liability of such parties is joint and several. In addition, Indemnitor's obligations hereunder are joint and several with any other person now or hereafter obligated under the Loan Documents.

9. Consent to Jurisdiction. EACH INDEMNITOR CONSENTS TO THE EXERCISE OF PERSONAL JURISDICTION OVER EACH INDEMNITOR BY STATE COURT IN THE COMMONWEALTH OF VIRGINIA OR BY FEDERAL COURT IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA (ALEXANDRIA DIVISION).

10. Notices. All notices, demands, requests and other communications required hereunder shall be in writing and shall be given in person, by reliable overnight courier or by certified mail, return receipt requested, to the parties at the following addresses:

| | |
|---|---|
| If to the INDEMNITOR: | BNG GROUP LLC<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |
| and to: | HARRY KAMIN<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |

| | |
|---|---|
| and to: | VALERIA GUNKOVA<br>2 Pidgeon Hill Drive, Suite 100<br>Sterling, VA 20165 |
| If to the LENDER: | ATLANTIC UNION BANK<br>5803 Rolling Road<br>Springfield, VA 22152<br>Attn: Anthony Wininger |
| With a copy to: | Vincent J. Keegan, Esquire<br>Keegan & DeVol, PLC<br>8280 Greensboro Drive, Suite 710<br>McLean, VA 22102 |

11. Waivers. EACH INDEMNITOR WAIVES TRIAL BY JURY IN ANY ACTION BROUGHT ON, UNDER, OR BY VIRTUE OF THIS AGREEMENT AND WAIVES ANY RIGHT TO REQUIRE LENDER AT ANY TIME TO PURSUE ANY REMEDY IN LENDER'S POWER WHATSOEVER. The failure of Lender to insist upon strict compliance with any of the terms hereof shall not be considered to be a waiver of any such terms, nor shall it prevent Lender from insisting upon strict compliance with this Agreement or any other Loan Documents at any time thereafter.

12. Severability. If any clause or provision herein contained operates or would prospectively operate to invalidate this Agreement in whole or part, then such clause or provision shall be held for naught as though not contained herein and shall not affect any other provisions or the remaining part of any effective provisions of this Agreement, and the remainder of this Agreement shall remain operative and in full force and effect.

13. Inconsistencies Among the Loan Documents. Nothing contained herein is intended to modify in any way the obligations of Indemnitor under the Loan Documents. In the event of any inconsistencies between the Loan Documents and this Agreement, the terms and conditions of this Agreement shall control.

14. Successors and Assigns. This Agreement shall be binding upon Indemnitor's successors, assigns, heirs, personal representatives and estate and shall inure to the benefit of Indemnitee and its respective successors and assigns.

15. Controlling Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF VIRGINIA.

16. Voluntary Act. EACH INDEMNITOR REPRESENTS AND WARRANTS TO LENDER THAT IT (I) HAS READ EACH AND EVERY PROVISION OF THIS INSTRUMENT, (II) HAS CONSULTED, OR HAS BEEN GIVEN THE OPPORTUNITY TO HAVE THIS INSTRUMENT REVIEWED BY, COMPETENT LEGAL COUNSEL OF ITS

CHOOSING AND (III) UNDERSTANDS, AGREES TO AND ACCEPTS THE PROVISIONS HEREOF.

IN WITNESS WHEREOF, Indemnitor has executed this Agreement under seal as of the date first above written.

**INDEMNITOR:**
BNG GROUP LLC

By: ______________________ (SEAL)
HARRY KAMIN, Manager

By: ______________________ (SEAL)
VALERIA GUNKOVA, Manager

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30 day of October, 2020, before me, the undersigned Notary Public of the jurisdiction aforesaid personally appeared HARRY KAMIN and VALERIA GUNKOVA, and acknowledged themselves to be Managers of BNG GROUP LLC, and that they, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

______________________ (SEAL)
Notary Public

My Commission expires: 6/30/24 Registration #: 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

Harry I Kamin (SEAL)
HARRY KAMIN

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30 day of October, 2020, before me, the undersigned Notary Public in the aforesaid jurisdiction, personally appeared HARRY KAMIN, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

_____________ (SEAL)
Notary Public

My Commission expires: 6/30/24

Registration #: 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

____________________________ (SEAL)
VALERIA GUNKOVA

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30th day of October, 2020, before me, the undersigned Notary Public in the aforesaid jurisdiction, personally appeared VALERIA GUNKOVA, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

____________________________ (SEAL)
Notary Public

My Commission expires: 6/30/24 Registration # : 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

**EXHIBIT "A"**

All that certain lot or parcel of land situate, lying and being in Loudoun County, Virginia, to-wit:

Parcel J-3, containing 3.4435 acres of land, more or less, Professional Office/Commercial Park, Countryside, as more particularly shown on Plat entitled "Boundary Line Adjustment Parcels C-3, F-2, J-2, K-2 and O-1, Professional Office/Commercial Park, Countryside" and attached to Deed of Boundary Line Adjustment and Deeds of Trust Modification recorded in Instrument No. 20041020-0112921 and Plat recorded as Instrument No. 20041020-0112922, among the land records of Loudoun County, Virginia.

(NOTE: PURSUANT TO OWNER'S TERMINATION AGREEMENT OF COUNTRYSIDE CENTRE OFFICE CONDOMINIUM DATED JANUARY 31, 2018 AND RECORDED FEBRUARY 16, 2018 AS INSTRUMENT #20180216-0009064.)

# CLOSING CERTIFICATE OF BORROWER AND GUARANTOR

THIS CLOSING CERTIFICATE OF BORROWER AND GUARANTOR (this "Certificate") made this 20th day of October, 2020, by **BNG GROUP LLC**, a Virginia limited liability company (the "Borrower"), and **HARRY KAMIN** and **VALERIA GUNKOVA** (individually and collectively, the "Guarantor").

WITNESSETH

WHEREAS, **ATLANTIC UNION BANK** (the "Lender"), has agreed to make a purchase money loan to Borrower in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Loan");

WHEREAS, the Borrower's obligation to repay the Loan is evidenced by that certain Promissory Note of even date herewith (the "Note"), in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)**, which has been duly executed and delivered by the Borrower to the Lender, and secured by a certain Deed of Trust, Assignment of Rents and Security Agreement of even date herewith (the "Deed of Trust") on certain real property more particularly described therein, located at 2 Pidgeon Hill Drive, Sterling, VA 20165 (the "Property");

WHEREAS, as evidenced by that certain Guaranty and Indemnification Agreement of even date herewith (the "Guaranty"), the Guarantor has guaranteed repayment of all amounts due under the Loan. (The Note, the Deed of Trust, the Guaranty, and any other documents given in connection with the Loan, are hereinafter referred to as the "Loan Documents"); and,

WHEREAS, one of the conditions of Lender's agreement to make the Loan is the Borrower's and Guarantor's execution and delivery of this Certificate.

NOW, THEREFORE, to induce the Lender to make the Loan, the Borrower and the Guarantor hereby represent, warrant and certify to the Lender and its successors and assigns as follows:

**1.** **No Change.** Since the date of the last statements submitted to Lender, no material adverse change has occurred in the Borrower's or Guarantor's financial condition.

**2.** **No Default.** The execution, delivery and performance of the Borrower's and Guarantor's obligations under the Loan Documents, consummation of the transactions contemplated thereby, and compliance with the provisions thereof, do not and will not violate, conflict with, result in the breach of, or constitute (with notice or lapse of time, or both) a default under law, ordinance, order, rule, regulation or other legal requirement applicable to the Borrower or Guarantor or any court or governmental body having jurisdiction over the Borrower or Guarantor and/or the Property.

3. **No Proceeding.** No proceeding is pending or, to the best of the knowledge of Borrower and Guarantor, threatened at law or in equity, or by or before any governmental instrumentality or agency having jurisdiction over the Borrower or Guarantor or the Property, which challenges, or would affect the validity of, any of the documents pertaining to the Loan or the Borrower's or Guarantor's ability to fulfill its commitments thereunder.

4. **Condemnation.** To the best of the Borrower's and Guarantor's knowledge, information and belief, no proceeding has been threatened or commenced, by any authority having the power of eminent domain, to condemn any or all of the Property.

5. **Organizational Documents of Borrower**

5.1. Attached hereto as Exhibit "A" are true and complete copies of the Articles of Organization and Operating Agreement and each amendment or supplement thereto, by which the Borrower is organized and under which it exists on the date hereof, each of which are in full force and effect on the date hereof, and are subject to no amendment or supplement not attached hereto, as aforesaid. The Certificate of Fact for the Borrower is also attached hereto as Exhibit "A".

5.2. The Borrower is on the date hereof a limited liability company organized and existing in good standing under the laws of the Commonwealth of Virginia the members of which consist of and only of the person or persons set forth as Exhibit "C" attached hereto (each of the members being hereinafter referred to as a "Member" or "Members").

5.3. The Members legally and beneficially own on the date hereof an aggregate 100% membership interest in the Borrower and have not assigned, pledged, or otherwise transferred or encumbered such interest, or agreed to do so, in any manner whatsoever.

5.4. Attached hereto as Exhibit "B" is a true copy of the Resolutions of the Borrower, authorizing the borrowing of the Loan.

6. **Bankruptcy, etc.** The Borrower and the Guarantor, each as to itself only, covenant and agree as follows:

6.1. No creditor of the Borrower or Guarantor has filed a petition to reorganize the Borrower or Guarantor pursuant to the federal Bankruptcy Act or any similar federal, state or other law;

6.2. Neither the Borrower nor the Guarantor has (a) applied for or consented in writing to the appointment of a receiver, trustee or liquidator of the Borrower or Guarantor of all or substantially all of the assets of the Borrower or Guarantor, or (b) filed a voluntary petition in bankruptcy, had entered against it an order for relief in any bankruptcy or insolvency proceeding or admitted in writing its inability to pay its debts as they become due, or (c) made a general assignment for the benefit of creditors, or (d) filed a petition, an answer or other pleading seeking a reorganization or an arrangement with creditors or to take advantage of any insolvency law, or (e) filed an answer or other pleading admitting or failing to contest the material allegations of a

petition filed against the Borrower or Guarantor in any bankruptcy, reorganization or insolvency proceeding, or (f) been dissolved as a result of any adversary suit or proceeding, or (g) transferred by merger, sale, consolidation, assignment, operation of law or otherwise all or substantially all of the Borrower's or Guarantor's assets; and

6.3. No (a) execution or attachment has been levied against any or all of the Property, or (b) order, judgment or decree has been entered by any court of competent jurisdiction on the application of a creditor adjudicating the Borrower or Guarantor a bankrupt or an insolvent or appointing a receiver, trustee or liquidator of the Borrower or Guarantor of any or all of the Property, or of all or substantially all of the Borrower's or Guarantor's other assets.

7. **Additional Representations and Warranties**.

7.1. The Loan Documents have been duly executed and delivered by the Borrower and/or the Guarantor, as applicable, and constitute the valid, legally binding and enforceable obligations of the Borrower and Guarantor;

7.2. The financial statements and information heretofore delivered to the Lender by the Borrower and the Guarantor are true and correct in all material respects and fairly present the respective financial conditions of the subjects thereof as of the respective dates of such financial statements. No materially adverse change has occurred in the financial conditions reflected therein since the respective date thereof;

7.3. The Property is subject only to the lien held by the Lender and neither the Borrower nor the Guarantor has entered into any other obligations which now or hereafter would create a lien or give a right to a lien on such property;

7.4. The Borrower and Guarantor hereby covenant that the Loan is a commercial loan and is made solely for business or commercial investment purposes;

7.5. The Guarantor warrants and represents that Guarantor has received valid and adequate consideration for its guaranty of the Loan;

7.6. To the best of Borrower's knowledge, the current use of the Property does not violate any applicable statutes, laws, ordinances, orders, rules, regulations, restrictive covenants, contracts or agreements or building and zoning regulations;

7.7. To the best of Borrower's knowledge, there has been no unrestored fire or other casualty damage which affects the Property as of the date hereof; and

7.8. No mechanics' or materialmen's lien or similar lien, or of any claim or right to any such lien has been filed against the Property, and, as of the date of this Certificate, Borrower has no reason to expect the filing of any such lien.

8. **Inducement**. The Borrower and Guarantor hereby acknowledge that the Lender is, in making the Loan, acting in reliance upon the representations, warranties and undertakings

set forth herein, and that such representations, warranties and undertakings are a material inducement to Lender to make the Loan. All of the Borrower's and Guarantor's respective warranties, representations, covenants, agreements and obligations contained herein shall survive closing and remain in full force and effect. A breach of any warranty, representation, covenant, agreement, condition precedent or any other obligation of the Borrower or the Guarantor under the terms hereof shall be an event of default under the Loan Documents.

IN WITNESS WHEREOF, the Borrower and the Guarantor have executed and ensealed this Certificate or caused it to be executed and ensealed on its behalf by its duly authorized representatives, the day and year first above written.

**WITNESS:**

______________________

______________________

**BORROWER:**
BNG GROUP LLC

By: ______________________ (SEAL)
HARRY KAMIN, Manager

By: ______________________ (SEAL)
VALERIA GUNKOVA, Manager

______________________

______________________

**GUARANTOR:**

______________________ (SEAL)
HARRY KAMIN

______________________ (SEAL)
VALERIA GUNKOVA

**EXHIBIT "A"**

(Borrower's Organizational Documents)

**EXHIBIT "B"**

(Borrower's Resolutions)

**EXHIBIT "C"**

(Members of Borrower)

**BNG GROUP LLC**

| Members | Percentage Interests |
|---|---|
| HARRY KAMIN | 50% |
| VALERIA GUNKOVA | 50% |

**RESOLUTIONS OF MEMBERS OF**
**BNG GROUP LLC**

THESE RESOLUTIONS are made as of this 30 day of October, 2020 by **HARRY KAMIN** and **VALERIA GUNKOVA**, being all the members of **BNG GROUP LLC**, a Virginia limited liability company (the "Company ").

**WITNESSETH**

WHEREAS, it is desired by the undersigned, being all members of the Company that they, pursuant to a written operating agreement dated February 20, 2020, be empowered and authorized to execute and deliver contracts of sale, notes, deeds of trust, settlement statements and similar transaction documents related to the purchase and encumbrance by the Company of the property known as 2 Pidgeon Hill Drive, Sterling, VA 20165 (the "Property").

NOW, THEREFORE, BE IT RESOLVED, that the undersigned are hereby empowered and authorized to execute and deliver on behalf of the Company contracts of purchase and sale, notes, deeds of trust, settlement statements, and similar transaction documents related to the purchase and encumbrance of the Property by the Company and to take all other actions, in their reasonable discretion, as may be necessary to effectuate and consummate such transactions for the benefit of the Company;

AND BE IT FURTHER RESOLVED, that the undersigned are hereby authorized on behalf of the Company, to enter into a Loan and Security Agreement (the "Loan Agreement") providing for the borrowing by the Company of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** from **ATLANTIC UNION BANK** (the "Bank") and to execute the Company's note to the order of the Bank in the amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the "Note");

AND BE IT FURTHER RESOLVED, that to secure the Note, the undersigned are hereby authorized, empowered, and directed to execute and deliver a Deed of Trust, Assignment of Rents and Security Agreement (the "Deed of Trust") on the Property, and to execute and deliver such other and further documents as they shall determine to be necessary and proper to evidence and secure such loan as shall be requested by the Bank, and all of the foregoing, including the Note, Deed of Trust and Loan Agreement, in the name of the Company;

AND BE IT FURTHER RESOLVED, that any such documents or instruments executed and delivered by the undersigned, or any such actions taken by the undersigned on behalf of the Company, are hereby ratified and confirmed, and all such acts are adopted as the Company's own;

AND BE IT RESOLVED FURTHER, that any such instrument, executed by the undersigned on behalf of the Company and recorded among the land records of the County of Loudoun, Virginia, shall be conclusive evidence of the consent and authorization of all the members of the Company to the conveyance, encumbrance, or action set forth in said instrument

until and unless a new resolution executed by the members shall be so recorded.

IN WITNESS WHEREOF, the undersigned, being all the members of the Company, have executed this resolution effective as of the date first above written.

Harry E Kamin (SEAL)
HARRY KAMIN

Valeria Gunkova (SEAL)
VALERIA GUNKOVA

# DEBTOR'S CONSENT TO FILE FINANCING STATEMENT

ATLANTIC UNION BANK
5803 Rolling Road
Springfield, VA 22152

Gentlemen:

I authorize you to file the attached financing statement or amendment in the appropriate public records.

Sincerely,
BNG GROUP LLC

By: Harry D. Kamin (SEAL)
HARRY KAMIN, Manager

By: Valeria V. Gunkova (SEAL)
VALERIA GUNKOVA, Manager

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

ATLANTIC UNION BANK
5803 Rolling Road
Springfield, VA 22152

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>BNG GROUP LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS<br>2 Pidgeon Hill Drive, Suite 100 | CITY<br>Sterling | STATE<br>VA | POSTAL CODE<br>20165 | COUNTRY | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>ATLANTIC UNION BANK | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>5803 Rolling Road | CITY<br>Springfield | STATE<br>VA | POSTAL CODE<br>22152 | COUNTRY |

4. COLLATERAL: This financing statement covers the following collateral:

See Exhibit "A" attached hereto and made a part hereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Loan #____________

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
**BNG GROUP LLC**

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

**See Exhibit "B" attached hereto and made a part hereof.**

17. MISCELLANEOUS:

International Association of Commercial Administrators (IACA)

**EXHIBIT "A"**

(Collateral Description)

1. All building materials, appliances, leasehold improvements and equipment delivered to, installed in, affixed to, placed upon, or attached to the real estate described on Exhibit "B" attached hereto (the "Real Estate") including, but not limited to, the following: all buildings, machinery, engines, furnaces, boilers, stokers, pumps, heaters, incinerators, power equipment, laundry equipment, tanks, dynamos, motors, generators, switchboards, conduits, electrical equipment, heating, cooling, ventilating, air conditioning, lighting, incinerating and plumbing apparatus, compressors, elevators, escalators, shades, brackets, electric signs, bulbs, gas and electric equipment, fire prevention and extinguishing apparatus, plumbing fixtures, vacuum cleaning systems, floor cleaning, waxing, and polishing apparatus, call systems, fuel conveyors, other apparatus, mirrors, linoleum and other floor coverings, refrigerating and cooling apparatus and equipment, screens, screen doors, awnings, blinds, refrigerators, stoves, ranges and ovens, garbage disposals, dishwashers, washers and dryers, mantels, plants and trees, and any and all such property which is at any time hereafter installed in, affixed to, or placed upon the Real Estate, and all replacements thereof, additions thereto, and substitutions therefor.

2. All rents, issues, income, revenues, profits, accounts, and benefits from, under, and in connection with the Real Estate or improvements;

3. All awards heretofore or hereafter made by any public or quasi-public authority to the present or subsequent owners of the Real Estate and the improvements now or hereafter existing thereon by virtue of (i) an exercise of the right of eminent domain by such authority, or right of access to a public way, (ii) any change of grade of any street affecting the Real Estate or improvements or (iii) any other injury to or decrease in the value of the Real Estate or improvements;

4. All unearned hazard insurance premiums and insurance proceeds payable in connection with the Real Estate and the improvements now or hereafter existing thereon.

5. All documents, instruments, general intangibles, chattel paper, contract rights, inventory and accounts now owned or hereafter acquired by the Debtor and relating to or arising out of the Real Estate or any contract of sale for the Real Estate or any portions thereof, as such items of property may from time to time exist, together with all modifications accessions and substitutions therefor and proceeds therefrom.

6. All proceeds of all of the foregoing.

**EXHIBIT "B"**

(Real Estate)

All that certain lot or parcel of land situate, lying and being in Loudoun County, Virginia, to-wit:

Parcel J-3, containing 3.4435 acres of land, more or less, Professional Office/Commercial Park, Countryside, as more particularly shown on Plat entitled "Boundary Line Adjustment Parcels C-3, F-2, J-2, K-2 and O-1, Professional Office/Commercial Park, Countryside" and attached to Deed of Boundary Line Adjustment and Deeds of Trust Modification recorded in Instrument No. 20041020-0112921 and Plat recorded as Instrument No. 20041020-0112922, among the land records of Loudoun County, Virginia.

(NOTE: PURSUANT TO OWNER'S TERMINATION AGREEMENT OF COUNTRYSIDE CENTRE OFFICE CONDOMINIUM DATED JANUARY 31, 2018 AND RECORDED FEBRUARY 16, 2018 AS INSTRUMENT #20180216-0009064.)

PIN: 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-000

# DEBTOR'S CONSENT TO FILE FINANCING STATEMENT

ATLANTIC UNION BANK
5803 Rolling Road
Springfield, VA 22152

Gentlemen:

I authorize you to file the attached financing statement or amendment in the appropriate public records.

Sincerely,
BNG GROUP LLC

By: ______________________(SEAL)
HARRY KAMIN, Manager

By: ______________________(SEAL)
VALERIA GUNKOVA, Manager

[redacted]

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

ATLANTIC UNION BANK
5803 Rolling Road
Springfield, VA 22152

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: BNG GROUP LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS: 2 Pidgeon Hill Drive, Suite 100 | CITY: Sterling | STATE: VA | POSTAL CODE: 20165 | COUNTRY | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: ATLANTIC UNION BANK | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS: 5803 Rolling Road | CITY: Springfield | STATE: VA | POSTAL CODE: 22152 | COUNTRY |

4. COLLATERAL: This financing statement covers the following collateral:

See Exhibit "A" attached hereto and made a part hereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Loan # ____________

**EXHIBIT "A"**

(Collateral Description)

1. All building materials, appliances, leasehold improvements and equipment delivered to, installed in, affixed to, placed upon, or attached to the real estate described on Exhibit "B" attached hereto (the "Real Estate") including, but not limited to, the following: all buildings, machinery, engines, furnaces, boilers, stokers, pumps, heaters, incinerators, power equipment, laundry equipment, tanks, dynamos, motors, generators, switchboards, conduits, electrical equipment, heating, cooling, ventilating, air conditioning, lighting, incinerating and plumbing apparatus, compressors, elevators, escalators, shades, brackets, electric signs, bulbs, gas and electric equipment, fire prevention and extinguishing apparatus, plumbing fixtures, vacuum cleaning systems, floor cleaning, waxing, and polishing apparatus, call systems, fuel conveyors, other apparatus, mirrors, linoleum and other floor coverings, refrigerating and cooling apparatus and equipment, screens, screen doors, awnings, blinds, refrigerators, stoves, ranges and ovens, garbage disposals, dishwashers, washers and dryers, mantels, plants and trees, and any and all such property which is at any time hereafter installed in, affixed to, or placed upon the Real Estate, and all replacements thereof, additions thereto, and substitutions therefor.

2. All rents, issues, income, revenues, profits, accounts, and benefits from, under, and in connection with the Real Estate or improvements;

3. All awards heretofore or hereafter made by any public or quasi-public authority to the present or subsequent owners of the Real Estate and the improvements now or hereafter existing thereon by virtue of (i) an exercise of the right of eminent domain by such authority, or right of access to a public way, (ii) any change of grade of any street affecting the Real Estate or improvements or (iii) any other injury to or decrease in the value of the Real Estate or improvements;

4. All unearned hazard insurance premiums and insurance proceeds payable in connection with the Real Estate and the improvements now or hereafter existing thereon.

5. All documents, instruments, general intangibles, chattel paper, contract rights, inventory and accounts now owned or hereafter acquired by the Debtor and relating to or arising out of the Real Estate or any contract of sale for the Real Estate or any portions thereof, as such items of property may from time to time exist, together with all modifications accessions and substitutions therefor and proceeds therefrom.

6. All proceeds of all of the foregoing.

**EXHIBIT "B"**

(Real Estate)

All that certain lot or parcel of land situate, lying and being in Loudoun County, Virginia, to-wit:

Parcel J-3, containing 3.4435 acres of land, more or less, Professional Office/Commercial Park, Countryside, as more particularly shown on Plat entitled "Boundary Line Adjustment Parcels C-3, F-2, J-2, K-2 and O-1, Professional Office/Commercial Park, Countryside" and attached to Deed of Boundary Line Adjustment and Deeds of Trust Modification recorded in Instrument No. 20041020-0112921 and Plat recorded as Instrument No. 20041020-0112922, among the land records of Loudoun County, Virginia.

(NOTE: PURSUANT TO OWNER'S TERMINATION AGREEMENT OF COUNTRYSIDE CENTRE OFFICE CONDOMINIUM DATED JANUARY 31, 2018 AND RECORDED FEBRUARY 16, 2018 AS INSTRUMENT #20180216-0009064.)

PIN: 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-000

## CERTIFICATION OF IDENTIFICATION

**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or requests a loan.**

**Any of the following forms of identification may be used to verify identity:**

- **Driver's License**
- **DMV ID Card (with Photo)**
- **Military or Government Issued ID (with Photo and Signature)**
- **Permanent Resident Alien (Green Card)**
- **Government Passports (must bear a Photo and Signature)**

*NOTE: These Identifications must be valid and unexpired.*

**HARRY KAMIN**

| | |
|---|---|
| 320 S Surf Rd. Apt 504, Hollywood, FL 33019 | |
| **Home Address** | **Home Address** |
| 4/20/46 | |
| **Date of Birth** | **Date of Birth** |
| [redacted]196 | |
| **Social Security Number** | **Social Security Number** |
| DL | |
| **Form of Identification** | **Form of Identification** |
| [redacted] | |
| **Identification Number** | **Identification Number** |
| Florida DMV | |
| **Place/State of Issuance** | **Place/State of Issuance** |
| 12-6-2016 | |
| **Date of Issue** | **Date of Issue** |
| 4-20-2025 | |
| **Expiration Date** | **Expiration Date** |

*I certify that I have personally viewed and accurately recorded the information from the documents identified above, and have reasonably confirmed the identity of the above named person in the course of acknowledging her signature.*

By: [signature]

Name: Mark Fitzgerald

Notary Public for, Virginia
Jurisdiction of Commission

My Commission Expires: 6/30/24

Date: 10/30/23

MARK FITZGERALD NOTARY PUBLIC REG # 120278 MY COMMISSION EXPIRES 6/30/24 COMMONWEALTH OF VIRGINIA

Gunkova_054942

## CERTIFICATION OF IDENTIFICATION

**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or requests a loan.**

**Any of the following forms of identification may be used to verify identity:**

- **Driver's License**
- **DMV ID Card (with Photo)**
- **Military or Government Issued ID (with Photo and Signature)**
- **Permanent Resident Alien (Green Card)**
- **Government Passports (must bear a Photo and Signature)**

***NOTE: These Identifications must be valid and unexpired.***

**VALERIA GUNKOVA**

| | |
|---|---|
| 20701 Riptide Sq. Sterling, VA 20165 | |
| **Home Address** | **Home Address** |
| 1-6-1978 | |
| **Date of Birth** | **Date of Birth** |
| [redacted]9526 | |
| **Social Security Number** | **Social Security Number** |
| DL | |
| **Form of Identification** | **Form of Identification** |
| [redacted] | |
| **Identification Number** | **Identification Number** |
| VA DMV | |
| **Place/State of Issuance** | **Place/State of Issuance** |
| 12/5/2012 | |
| **Date of Issue** | **Date of Issue** |
| 1/6/2021 | |
| **Expiration Date** | **Expiration Date** |

***I certify that I have personally viewed and accurately recorded the information from the documents identified above, and have reasonably confirmed the identity of the above named person in the course of acknowledging her signature.***

By: [signature]

Name: Mark Fitzgerald

Notary Public for, Virginia
Jurisdiction of Commission

My Commission Expires: 6/30/24

Date: 10/30/20

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/24
COMMONWEALTH OF VIRGINIA

**ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT**

| | |
|---|---|
| LENDER: | ATLANTIC UNION BANK |
| BORROWER: | BNG GROUP LLC |
| GUARANTORS: | HARRY KAMIN<br>VALERIA GUNKOVA |
| PROPERTY ADDRESS: | 2 Pidgeon Hill Drive<br>Sterling, VA 20165 |

In consideration of the Lender's funding and closing of this loan, the Borrower and Guarantors agree, if requested by Lender, to fully cooperate and adjust for clerical errors in all loan and/or closing documentation if deemed necessary or desirable in the sole reasonable discretion of Lender. The Borrower and/or Guarantors agree to comply with all above noted requests by the Lender within thirty (30) days from the date of Lender's mailing of such requests. Borrower and Guarantors, jointly and severally, agree to assume all costs including, by way of illustration and not limitation, actual expenses and legal fees incurred by Lender for failing to comply with correction requests in the above noted time period.

The Borrower and Guarantors do hereby so agree in order to assure that loan documentation will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to the loan documentation, as well as to assure the enforceability of the loan documents.

DATED effective this 30 day of October, 2020.

**WITNESS:**

______________________

______________________

**BORROWER:**
BNG GROUP LLC

By: ______________________ (SEAL)
HARRY KAMIN, Manager

By: ______________________ (SEAL)
VALERIA GUNKOVA, Manager

**GUARANTORS:**

_______________________ (SEAL)
HARRY KAMIN

_______________________ (SEAL)
VALERIA GUNKOVA

Atlantic Union Bank

# CERTIFICATION OF BENEFICIAL OWNER(S)

**Persons opening an account on behalf of a legal entity must provide the following information:**

A. Name and Title of the person certifying this form:

HARRY D. KAMIN — [Name]
MEMBER — [Title]

B. Name, Type (from the dropdown list), and Address of the legal entity for which the account is being opened:

BNG GROUP LLC — [Entity Name]
7. Limited Liability Company (LLC) — [Type]
2 PIDGEON HILL DRIVE, SUITE 100 STERLING, VA 22102 — [Physical Address]

C. Select an option from the dropdown list here →: 1. Not Exempt; Sections D & E Required

D. Enter the following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:

| Name | Ownership % | Date of Birth | Physical Address (Residential or Business Street Address) | For U.S. Persons (Social Security #) | For Non-U.S. Persons[1] (See footnote below.) |
|---|---|---|---|---|---|
| HARRY D. KAMIN | 50% | 04/20/1946 | 2 PIDGEON HILL DRIVE, SUITE 100 STERLING, VA 22102 | [redacted]-5196 | |
| VALERIA V. GUNKOVA | 50% | 01/06/1978 | 2 PIDGEON HILL DRIVE, SUITE 100 STERLING, VA 22102 | [redacted]-9526 | |
| | | | | | |
| | | | | | |

☐ Select if no individual owns more than 25 percent

E. Enter the following information for one individual with significant responsibility for managing the legal entity listed above. The individual may be one of the following:

- An executive officer or senior manager (e.g.; Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or
- Any other individual who regularly performs similar functions.

(If appropriate, an individual listed under section (D) above may also be listed in this section (E)).

| Name | Title | Date of Birth | Physical Address (Residential or Business Street Address) | For U.S. PersonsError! Bookmark not defined. | For Non-U.S. Persons[1] |
|---|---|---|---|---|---|
| HARRY D. KAMIN | MEMBER | 04/20/1946 | 2 PIDGEON HILL DRIVE, SUITE 100 STERLING, VA 22102 | [redacted]5196 | |

F. I, HARRY D. KAMIN *Harry D Kamin*, hereby certify, to the best of my knowledge, that the information provided above is complete and correct. I agree to promptly notify this institution of any change to this information.

X *Harry D Kamin* 10/30/20

[1] Non-U.S. persons must provide a Social Security number, passport number and country of issuance, or similar identification number. In lieu of a passport number, Non-U.S. persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

Atlantic Union Bank

# CERTIFICATION OF BENEFICIAL OWNER(S)

Signature Date

For Bank Use Only:
Account Type: 1. LN Account Number: ___7402196666_______________________________

## POST-CLOSING AGREEMENT

THIS POST-CLOSING AGREEMENT (this **"Agreement"**) is made this 30th day of October, 2020 by and among **BNG GROUP LLC**, a Virginia limited liability company ("Borrower"); **HARRY KAMIN** and **VALERIA GUNKOVA** (individually and collectively, the "Guarantor"); and **ATLANTIC UNION BANK** ("Lender").

**WITNESSETH:**

A. As of this date, Lender has made a purchase money loan to the Borrower in the principal amount of **SEVEN MILLION THREE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($7,360,000.00)** (the **"Loan"**) pursuant to the terms and conditions of a Promissory Note of the same date (the **"Promissory Note"**), a Loan and Security Agreement of the same date (the **"Loan Agreement"**), and other documents and writings executed by the Borrower and the Guarantor and delivered to the Lender in connection with the Loan (collectively, with the Promissory Note and the Loan Agreement the **"Loan Documents"**).

B. In connection with the Loan, the Lender is requiring that the Borrower provide it with good and sufficient subordination, non-disturbance and attornment agreements from all tenants with the property known as 2 Pidgeon Hill Drive, Sterling, VA 20165 (the **"Property"**) that contain such commercially reasonable terms as may be acceptable to Lender (individually and collectively, the **"SNDAS"**).

C. At the time of closing, the Borrower has been unable to provide the SNDAS to Lender.

D. The parties wish to execute this Agreement to enable closing to occur and the Loan to be funded, and to establish a timeframe for the delivery of the SNDAS to the Lender.

NOW, THEREFORE, in consideration of these promises, the terms and conditions set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. The Loan Agreement is hereby amended to incorporate the provisions of this Agreement.

2. The Borrower agrees to deliver the SNDAS to Lender within forty-five (45) days from the date hereof. In the event Borrower fails to provide the SNDAS within such forty-five (45) day period, and such failure is not specifically excused in writing by the Lender, the Borrower shall have committed an Event of Default under the Loan Agreement and the other Loan Documents.

3. This Agreement may not be modified or amended except by a writing signed by all of the parties. Except to the extent specifically provided herein, the terms of the Loan Documents shall remain in full force and effect. Time is strictly of the essence hereof.

IN WITNESS WHEREOF, Indemnitor has executed this Agreement under seal as of the date first above written.

**BORROWER:**
BNG GROUP LLC

By: Harry Kamin (SEAL)
HARRY KAMIN, Manager

By: Valeria Gunkova (SEAL)
VALERIA GUNKOVA, Manager

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30 day of October, 2020, before me, the undersigned Notary Public of the jurisdiction aforesaid personally appeared HARRY KAMIN and VALERIA GUNKOVA, and acknowledged themselves to be Managers of BNG GROUP LLC, and that they, being authorized so to do, executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

______________________ (SEAL)
Notary Public

My Commission expires: 6/30/24 Registration # : 120278

MARK FITZGERALD NOTARY PUBLIC REG # 120278 MY COMMISSION EXPIRES 6/30/2024 COMMONWEALTH OF VIRGINIA

**GUARANTOR:**

Harry D Kamin (SEAL)
HARRY KAMIN

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30 day of October, 2020, before me, the undersigned Notary Public in the aforesaid jurisdiction, personally appeared HARRY KAMIN, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

_______________ (SEAL)
Notary Public

My Commission expires: 6/30/24

Registration #: 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA

_____________________ (SEAL)
VALERIA GUNKOVA

**COMMONWEALTH OF VIRGINIA :**
**: to wit:**
**CITY/COUNTY OF** Fairfax **:**

I HEREBY CERTIFY that on this 30 day of October, 2020, before me, the undersigned Notary Public in the aforesaid jurisdiction, personally appeared VALERIA GUNKOVA, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the foregoing instrument for the purposes therein contained.

WITNESS MY Hand and Notarial Seal.

_____________________ (SEAL)
Notary Public

My Commission expires: 6/30/24

Registration # : 120278

MARK FITZGERALD
NOTARY PUBLIC
REG # 120278
MY COMMISSION EXPIRES 6/30/2024
COMMONWEALTH OF VIRGINIA