to the President by the Board of Managers. Furthermore, the President may authorize an expenditure of up to Ten Thousand Dollars ($10,000) without the approval of the Board of Managers. Notwithstanding the foregoing, in the event the Board of Managers hires a Person to act as the chief executive officer (the "CEO") of the Company's then the Board of Managers, in its discretion, may delegate to the CEO some or all of the duties, authority and responsibility previously delegated to the President.

5.1.1.3 The Treasurer shall have custody of all funds and securities of the Company which may come into his or her hands. When necessary or proper (unless otherwise ordered by the Board of Managers) he or she shall (a) endorse for collection on behalf of the Company checks, notes and other obligations, (b) deposit the same to the credit of the Company in such banks or depositories as the Board of Managers may designate and (c) sign all receipts and vouchers for payments made by the Company. The Treasurer shall, at all reasonable times, exhibit his or her books and accounts to the Board of Managers of the Company upon the request of any Manager, and he or she shall also, if so directed by the Board of Managers, annually prepare and submit to the Annual Meeting of Members a full statement of the assets and liabilities of the Company and of its transactions during the preceding year, and shall have such other powers and shall perform such other duties as may be assigned to him or her from time to time by the Board of Managers. The Treasurer shall give such bond for the faithful performance of his or her duties as may be required by the Board of Managers. Notwithstanding the foregoing, in the event the Board of Managers hires a Person to act as the CEO of the Company's, then the Board of Managers, in its discretion, may delegate to the CEO some or all of the duties, authority and responsibility previously delegated to the Treasurer, including without limitation the day-to-day functions related to the finances of the Company and authority to sign checks on the Company's account, provided that the CEO shall inform the Treasurer on a regular basis of all financial matters and transactions of the Company which are carried out within the scope of the Board's delegation.

5.1.1.4 The Secretary shall keep the minutes of all meetings of the Members and of the Board of Managers in proper books to be kept for such purpose and shall attend to the giving of all notices by the Company, including notices of meetings of Members and of the Board of Managers. The Secretary shall have charge of the Unit Certificate register, transfer books and such other books and papers as the Board of Managers may direct. The Secretary shall in general perform all the duties incident to the office of Secretary and have such other powers and perform such other duties as may be assigned to him or her by the Board of Managers.

5.1.1.5 The Vice President, if any, shall serve as President in the President's absence and shall perform such other functions as the Board of Managers from time to time directs.

5.1.2 Director. The Board of Managers may, by a majority vote, select a director ("Director") who shall be responsible for performing the functions set forth in Section 5.1.2.3 hereof. The Director, if any, shall serve as Director for a term of two (2) years or for such other period of time specified in a contract between the Director and the Company as

authorized by the Board of Managers (the "l Director Agreement). The Director shall be a Member of the Company.

5.1.2.1 Upon the death, disability, resignation or retirement of the Director, or at the end of the term as set forth in Section 5.1.2 hereof, the successor Director shall be selected by a majority vote of the Board of Managers. A Director may serve consecutive terms provided that he or she is selected in accordance with this Section 5.1.2.1.

5.1.2.2 Except as otherwise provided in this Agreement, the duties, authority and responsibility of the Director shall be set forth in the Director Agreement. The Director shall be compensated by the Company in an amount determined by the Board of Managers and set forth in the Director Agreement. The Director may from time to time temporarily delegate his or her duties hereunder to a Physician of the Director's choice who meets the qualifications set forth in Section 5.1.2.2 hereof.

5.1.2.3 The Director may be removed with or without cause by a majority vote of the Board of Managers.

5.1.3 <u>Board of Managers</u>. The Company shall be managed by a Board of Managers consisting of four (2) voting Board members (each a "Manager" and collectively the "Managers") with two (2) Managers elected from the Class A Member.

5.1.3.1 Each Manager shall have one (1) vote on matters coming before the Board of Managers on which a vote is required.

5.1.3.2 Each Manager shall hold office until the next annual meeting of Members and until such Manager's successor shall have been elected and qualified, or until such Manager's earlier death, resignation or removal.

5.1.3.3 The two (2) Class A Members receiving the largest number of votes from among all Class A Members shall serve on the Board of Managers.

5.1.4 <u>General Powers</u>. The Board of Managers shall have full, exclusive and complete discretion, power and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to manage, control, administer and operate the business and affairs of the Company for the purposes herein stated, and to make all decisions affecting such business and affairs, including without limitation, for Company purposes, the power to:

5.1.4.1 Acquire by purchase, lease or otherwise, any real or personal property, tangible or intangible;

5.1.4.2 Construct, operate, maintain, finance and improve, and to own, sell, convey, assign, mortgage or lease any real estate and any personal property;

5.1.4.3 Sell, dispose, trade or exchange Company assets in the ordinary course of the Company's business;

5.1.4.4 Enter into agreements and contracts and to give receipts, releases and discharges;

5.1.4.5 Purchase liability and other insurance to protect the Company's properties and business;

5.1.4.6 Borrow money for and on behalf of the Company, and, in connection therewith, execute and deliver instruments authorizing the confession of judgment against the Company;

5.1.4.7 Execute or modify leases with respect to any part or all of the assets of the Company;

5.1.4.8 Prepay, in whole or in part, refinance, amend, modify or extend any mortgages or deeds of trust which may affect any asset of the Company and in connection therewith to execute for and on behalf of the Company any extensions, renewals or modifications of such mortgages or deeds of trust;

5.1.4.9 Execute any and all other instruments and documents which may be necessary or, in the opinion of the Board of Managers, desirable to carry out the intent and purpose of this Agreement;

5.1.4.10 Make any and all expenditures which the Board of Managers, in its sole discretion, deems necessary or appropriate in connection with the management of the affairs of the Company and the carrying out of its obligations and responsibilities under this Agreement, including, without limitation, all legal, accounting and other related expenses incurred in connection with the organization, financing and operation of the Company;

5.1.4.11 Prepare annual budgets;

5.1.4.12 Enter into any kind of activity necessary to, in connection with, or incidental to, the accomplishment of the purposes of the Company;

5.1.4.13 Invest and reinvest Company reserves in short-term instruments or money market funds; and

5.1.4.14 Designate those Persons authorized to sign checks on behalf of the Company and impose whatever restrictions on that authority as the Board of Managers deems appropriate.

5.1.5 Transactions Requiring Approval of the Class A Members. Notwithstanding anything to the contrary in this Agreement, the Board of Managers shall not undertake any of the following without the approval of at least fifty-one percent (51%) of the Interests of the Members:

5.1.5.1 Any change in the legal form of the Company, or the dissolution or liquidation of the Company, or any declaration of bankruptcy by the Company, or any merger, consolidation or other business combination involving the Company or any other fundamental change of the Company;

5.1.5.2 Any sale, lease, license, assignment, transfer or other disposition of all or a substantial portion of the assets of the Company or of any significant assets of the Company or any other sale, lease, license, transfer or disposition outside of the ordinary course of business;

5.1.5.3 Any modification, amendment, waiver or change in the Certificate of Organization or this Agreement;

5.1.5.4 The entering into or termination of any agreement (other than a termination of an agreement which occurs on its own terms) with any Member or Members, or a practice entity with which any Member is affiliated, or any material amendment, modification, supplement or extension thereof or any waiver or release of material rights thereunder;

5.1.5.5 The admission or creation of any new Class or any new Member to a Class, or the authorization, designation or reclassification of any Interest or of any other equity interest in the Company or the conversion or exchange of debt or other obligations into any Interest or any other equity interest in the Company; it being understood that the admission of a new Member to a Class or a new Class of Members will result in a pro rata dilution of each Member's and each Class's Interest, respectively; and

5.1.5.6 Any other matter determined by the Managers to be added to this Section 5.1.5.

5.1.6 Extraordinary Transactions. Notwithstanding anything to the contrary in this Agreement, the Board of Managers shall not undertake any of the following without the unanimous approval of the Members:

5.1.6.1 Any act in violation of Section 8942 of the Law; or

5.1.6.2 Any act which would impose personal liability on any Member in excess of the obligations to make additional Capital Contributions set forth in Section 3.6.

5.1.7 Limitation on Authority of Members.

5.1.7.1 No Member is an agent of the Company solely by virtue of being a Member, and no Member has authority to act for the Company solely by virtue of being a Member.

5.1.7.2 This Section 5.1 supersedes any authority granted to the Members pursuant to Section 8941 of the Law. Any Member who takes any action or binds the Company in violation of this Section 5.1 shall be solely responsible for any loss and expense incurred by the Company as a result of the unauthorized action and shall indemnify and hold the Company harmless with respect to the loss or expense.

5.1.8 Resignation of Manager. In the event a Manager resigns from the Board of Managers, replacement of such Manager to complete the term of the resigning Manager shall be determined in the same manner as set forth in Section 5.1.3 hereof.

5.1.9 Removal of Manager. The Class Member(s) may, at any time and from time to time and for any reason, by the affirmative vote of those Class Members holding at least fifty-one percent (51%) of the Class Interests, remove a Manager for that respective Class and elect or appoint a new Manager in the same manner as set forth in Section 5.1.3 hereof.

5.2 Meetings of the Board of Managers and Voting by Managers.

5.2.1 Regular Meetings of the Board of Managers. Regular meetings of the Board of Managers shall be held on such days and at such time on those days as determined by a majority of the Managers.

5.2.2 Special Meetings of the Board of Managers. A special meeting of the Board of Managers may be called at any time by the President, the Secretary or by two (2) or more of the Managers. Meetings of the Board of Managers shall be held at the Company's principal place of business or at such time and place as designated by the Board of Managers. Not less than five (5) nor more than fifteen (15) days before each meeting, those who call the meeting shall give written notice of the meeting to all Managers of the Company. The notice shall state the time, place and purpose of the meeting. Notwithstanding the foregoing provisions, each Manager who is entitled to notice waives notice if before or after the meeting the Manager signs a waiver of the notice which is filed with the records of Board of Managers' meetings, or is present at the meeting in person or by proxy.

5.2.3 Quorum for Meetings of the Board of Managers. A quorum shall be deemed present if there is a majority of Managers then in office present at the meeting.

5.2.4 Voting. Managers may vote either in person, by means of conference telephone or similar communications equipment by means of which all persons participating in such meeting can hear each other or by written proxy signed by the Manager or by his or her duly authorized attorney-in-fact; provided, however, that a Manager may give his or her proxy only to another Manager of the Company. Except as otherwise provided in this Agreement, the

affirmative vote of a majority of all of the Managers shall be required to approve any matter coming before the Board of Managers.

5.2.5 Written Consent. In lieu of holding a meeting, the Board of Managers may vote or otherwise take action by a written instrument indicating the unanimous consent of the Managers.

5.2.6 Unanimous Consent. Except as otherwise provided in this Agreement, wherever the Law or this Agreement requires unanimous consent by the Board of Managers to approve or take any action, that consent shall be given in writing and, in all cases, shall mean the consent of all Managers.

5.3 Meetings of Members and Voting by Members.

5.3.1 Regular Meetings of the Members. Regular meetings of the Members shall take place annually or more frequently as determined by the Board of Managers. Meetings of Members shall be held at the Company's principal place of business or at any other place in the Commonwealth of Virginia designated by the Board of Managers. Unless this Agreement provides otherwise, at a meeting of Members, the presence in person or by proxy of Members holding at least fifty-one percent (51%) of the Interests then held by the Members constitutes a quorum. Members may vote either in person or by written proxy signed by the Member or by his or her duly authorized attorney-in-fact.

5.3.2 Special Meetings of the Members. A special meeting of the Members may be called at any time by the Board of Managers or by those Members holding at least thirty percent (30%) of the Interests then held by the Members. Meetings of Members shall be held at the Company's principal place of business or at such time and place as designated by the Board of Managers. Not less than five (5) nor more than forty-five (45) days before each meeting, the Board of Managers or Secretary shall give written notice of the meeting to each Member of the Company. The notice shall state the time, place and purpose of the meeting. Notwithstanding the foregoing provisions, each Member who is entitled to notice waives notice if before or after the meeting the Member signs a waiver of the notice which is filed with the records of Members' meetings, or is present at the meeting in person or by proxy.

5.3.3 Voting. At a properly called meeting of the Members, each Member shall have the number of votes equal to the number of Units owned by such Member on any matter being considered by the Company requiring a vote by the Members. Unless otherwise specifically required by this Agreement or by applicable law, all decisions to be made and actions to be taken by the Members shall be determined by the affirmative vote of the Members holding a majority of the Units present in person or by proxy at a meeting of the Members.

5.3.4 Written Consent. In lieu of holding a meeting, the Members may vote or otherwise take action by a written instrument indicating the unanimous consent of the Members. Wherever the Law requires unanimous consent of the Members to approve or take any action, that consent shall be given in writing and, in all cases, shall mean the consent of Members holding one hundred percent (100%) of the Interests then held by Members. Any votes or

actions to be taken by such written instrument shall be disclosed and communicated in advance to all Members and all such decisions shall be communicated as soon as possible after such votes or actions.

5.4 Personal Services.

5.4.1 Performance of Services. No Member shall be required to perform services for the Company solely by virtue of being a Member. Unless expressly provided in this Agreement or approved by the Board of Managers, no Member shall perform services for the Company or be entitled to compensation for services performed for the Company.

5.4.2 Compensation for Services. Unless approved by Members holding fifty-one percent (51%) of the Interests then held by all Members or as otherwise provided herein, the Managers shall not be entitled to compensation for their services as Managers. However, upon substantiation of the amount and purpose thereof and the granting of the approval of the Board of Managers, the Managers shall be entitled to reimbursement for out-of-pocket expenses reasonably incurred in connection with the activities of the Company.

5.5 Duties of Parties.

5.5.1 Devotion of Time. Each Manager shall devote such time to the business and affairs of the Company as he or she, in his or her sole discretion, deems necessary to carry out the Manager's duties set forth in this Agreement.

5.5.2 Other Activities. Except as otherwise expressly provided in Sections 5.5.3 and 5.5.4, nothing in this Agreement shall be deemed to restrict in any way the rights of any Member, or of any Affiliate of any Member, to conduct any other business or activity, except for any business or activity in competition with the Company, and the Member shall not be accountable to the Company or to any Member with respect to that business or activity. The organization of the Company shall be without prejudice to the respective rights of the Members (or the rights of their respective Affiliates) to maintain, expand or diversify such other interests and activities and to receive and enjoy profits or compensation therefrom. Each Member waives any rights the Member might otherwise have to share or participate in such other interests or activities of any other Member or any other Member's Affiliates.

5.5.3 Dealings with Members and Affiliates. Each Member understands and acknowledges that the conduct of the Company's business may involve business dealings and undertakings with Members and their Affiliates. In any of those cases, those dealings and undertakings shall be at arm's length and on commercially reasonable terms and with full written disclosure of the nature and extent of any such direct or indirect relationships to the Board of Managers. Each Member, upon request by the Board of Managers, shall complete and execute a Conflict of Interest Questionnaire in the form adopted by the Board of Managers and shall submit written updates when necessary to keep such information current.

5.5.4 Covenant. So long as a Member is a Member of the Company, and for a period of one (1) year after such Member ceases to be a Member of the Company, such Member

agrees that he or she shall not directly or indirectly own, invest in or obtain an ownership interest in any company within a ten (10) mile radius of the Company's, except to the extent that such Member has invested in any such facility as of the date of such Member's subscription or acquisition of Interest, has disclosed such investment to the Board of Managers and has received the approval of the Board of Managers for such investment. Those existing investment interests identified on Exhibit "F" attached hereto are deemed to be pre-approved and the identified Member's continued investment therein shall not be deemed a violation of this Section 5.5.4.

5.6 Liability and Indemnification.

5.6.1 Liability. The Managers shall not be liable, responsible or accountable, in damages or otherwise, to any Member or to the Company for any act performed by the Managers within the scope of the authority conferred on the Managers by this Agreement, except for fraud, gross negligence, willful misconduct or a breach of this Agreement.

5.6.2 Indemnification. The Company shall indemnify the Managers for any act performed by the Managers within the scope of the authority conferred on the Managers by this Agreement, except for fraud, gross negligence, willful misconduct or a breach of this Agreement.

5.6.3 Directors and Officers Insurance. The Company may, in the discretion of the Board of Managers, secure and maintain in force a policy of directors and officers insurance from a carrier licensed to do business in the Commonwealth of Virginia in such amounts as the Board of Managers deems appropriate from time to time.

5.7 Power of Attorney.

5.7.1 Grant of Power. Each Member constitutes and appoints the President as the Member's true and lawful attorney-in-fact ("Attorney-in-Fact"), and in the Member's name, place and stead, to make, execute, sign, acknowledge and file:

5.7.1.1 All documents (including amendments to certificates of organization) which the Attorney-in-Fact deems appropriate to reflect any amendment, change or modification in accordance with this Agreement;

5.7.1.2 Any and all other certificates or other instruments required to be filed by the Company under the laws of the Commonwealth of Virginia or of any other state or jurisdiction, including, without limitation, any certificate or other instrument necessary in order for the Company to continue to qualify as a limited liability company under the laws of the Commonwealth of Virginia;

5.7.1.3 One (1) or more fictitious or trade name certificates; and

5.7.1.4 All duly authorized documents which may be required to dissolve and terminate the Company and to cancel its certificate of organization.

5.7.2 Irrevocability. The foregoing power of attorney is irrevocable and is coupled with an interest, and, to the extent permitted by applicable law, shall survive the death or disability of a Member. It also shall survive the Transfer of an Interest, except that if the transferee is approved for admission as a Member, this power of attorney shall survive the delivery of the assignment for the sole purpose of enabling the Attorney-in-Fact to execute, acknowledge and file any documents needed to effectuate the substitution. Each Member shall be bound by any representations made by the Attorney-in-Fact acting in good faith pursuant to this power of attorney, and each Member hereby waives any and all defenses which may be available to contest, negate or disaffirm the action of the Attorney-in-Fact taken in good faith under this power of attorney.

5.8 Other Officers. The Board of Managers may elect other persons to serve as officers of the Company. If so elected, each officer shall have the duties and authority of officers of corporations, as those duties and authority are set forth in the Business Corporation Law of the Commonwealth of Virginia. Any officer may be removed with or without cause by the vote of a majority of the Board of Managers.

## Section VI.
## Transfer of Interests and Withdrawals of Members

6.1 Transfers.

6.1.1 Conditions of Transfer. Except as otherwise expressly set forth herein, no Member may Transfer all or any portion of or any interest or rights in the Member's Interest unless the following conditions ("Conditions of Transfer") are satisfied:

6.1.1.1 The Transfer is approved by the vote of a majority of the Board of Managers;

6.1.1.2 The Transfer will not require registration of Interests under any federal or state securities laws;

6.1.1.3 The transferee delivers to the Company a written instrument agreeing to be bound by the terms of this Agreement;

6.1.1.4 The Transfer will not result in the termination of the Company pursuant to Code Section 708;

6.1.1.5 The Transfer will not result in the Company's being subject to the Investment Company Act of 1940, as amended;

6.1.1.6 The transferor or the transferee delivers the following information to the Company: (i) the transferee's taxpayer identification number; and (ii) the transferee's initial tax basis in the Transferred Interest;

6.1.1.7 The transferee meets the ownership standards as set forth in Section 3.3;

6.1.1.8 The transferor complies with the provisions set forth in Sections 6.2 and 6.3 as applicable; and

6.1.1.9 Except in the case of a Transfer pursuant to an Involuntary Withdrawal, no Transfers may be made hereunder within twelve (12) months of any Member's purchase of that Member's Interest.

6.1.2 Transfer Upon Approval. If the conditions of Transfer are satisfied, then a Member may Transfer all or any portion of his or her Interest as to which the approval of the Board of Managers was obtained.

6.1.3 Reasonableness. Each Member hereby acknowledges the reasonableness of the prohibitions contained in this Section 6.1 in view of the purposes of the Company and the relationship of the Members. The Transfer of any Interests in violation of the prohibitions contained in this Section 6.1 shall be deemed invalid, null and void, and of no force or effect. Any Person to whom an Interest is attempted to be transferred in violation of this Section 6.1 shall not be entitled to vote on matters coming before the Members, participate in the management of the Company, act as an agent of the Company, receive distributions from the Company or have any other rights in or with respect to the Interest.

6.2 Class A Transfers.

6.2.1 Notice of Transfer. If the Class A Member (a "Transferor") desires to Transfer, or is required as a consequence of an Involuntary Withdrawal to Transfer, all or any portion of, or any interest or rights in, the Transferor's Interest (the "Transferor Interest"), the Transferor shall notify the Company of that desire or requirement (the "Transfer Notice") and the Company shall notify the Class A Members. The Transfer Notice shall describe the Transferor Interest, the proposed transferee and the proposed purchase price and/or other terms of the proposed Transfer.

6.2.2 Purchase Option. Except where the Transfer is as a result of an Involuntary Withdrawal of the Class A Member, upon receipt of a Transfer Notice, the remaining Class A Members shall have an option (a "Purchase Option") to purchase, subject to Section 6.8 below, all of the Transferor Interest for a purchase price equal to the greater of (i) the Transferor's Capital Account balance on the date of the Transfer, or (ii) the fair market value of the Transferor Interest. The Transfer shall be on the terms and conditions set forth in Section 6.4 below. The Purchase Option shall be and remain irrevocable for a period ending at 11:59 p.m., local time, at the Company's principal office on the tenth (10th) day following the day the Transfer Notice is given to the Class A Members (the "Transfer Period"). At any time during the

Transfer Period, the remaining Class A Members may elect to exercise the Purchase Option by giving written notice of the election to the Transferor.

6.2.3 Free Transfer Period. If the Class A Members fail to exercise the Purchase Option with respect to the entire Transferor Interest, the Transferor shall be permitted to offer and sell the Transferor Interest to any Physician who meets the qualifications to become a Member of the Company, and such transaction shall be in the manner described in the Transfer Notice, for a period of thirty (30) days following the end of the ten (10) day period referred to in Section 6.2.2 above (the "Free Transfer Period"); provided, however, that the price for the Transferor Interest shall be no less than the greater of (i) the Transferor's Capital Account balance on the date of the Transfer, or (ii) the fair market value of the Transferor Interest. If the Transferor does not so Transfer the Transferor Interest within the Free Transfer Period, the Transferor's right to Transfer the Transferor Interest pursuant to this Section 6.2.3 shall cease and terminate until the Transferor has again complied with the provisions of Sections 6.1 and 6.2 hereof.

6.2.4 Involuntary Withdrawal Transfer. If the Transfer is a result of an Involuntary Withdrawal of a Class the Member, the Class A Members shall purchase, on a pro rata basis, the entire Transferor Interest for a purchase price, subject to Section 6.8 below, equal to the greater of (i) the Transferor's Capital Account balance on the date of the Transfer, or (ii) the fair market value of the Transferor Interest, and such purchase shall be on the terms and conditions set forth in Section 6.4 below.

6.3 ClassA Transfers.

6.3.1 Notice of Transfer. If a Class A Member (a "Transferor") desires to Transfer, or is required, at any time, pursuant to an Involuntary Withdrawal to Transfer, all or any portion of, or any interest or rights in, the Transferor's Interest (the "Transferor Interest"), the Transferor shall notify the Company of that desire or requirement (the "Transfer Notice") and the Company shall notify the Class A Member. The Transfer Notice shall describe the Transferor Interest, the proposed transferee and the other terms of the proposed Transfer.

6.3.2 Class A Purchase Option. Except where the Transfer is as a result of an Involuntary Transfer of a Class A Member, upon receipt of a Transfer Notice pursuant to Section 6.3.1 above, the ClassA Members shall have a Purchase Option to purchase, subject to Section 6.8 below, all of the Transferor Interest for a purchase price equal to the lower of (i) the purchase price set forth in the bona fide offer from the proposed third-party transferee, or (ii) the fair market value of the Transferor Interest. Any Transfer pursuant to this Section 6.3.2 shall be on the terms and conditions set forth in Section 6.4 below. The Purchase Option shall be and remain irrevocable for a period ending at 11:59 p.m., local time, at the Company's principal office on the thirtieth (30th) day following the day the Transfer Notice is given to the ClassA Members (the "Transfer Period"). At any time during the Transfer Period, the ClassA Members may elect to exercise the Purchase Option by giving written notice of the election to the Transferor, which shall be exercised by the ClassA Members pro rata in accordance with their respective ClassA Interests.

6.3.3 Class A Purchase Option. If the ClassA Members fail to exercise the Purchase Option set forth in Section 6.3.2 with respect to the entire Transferor Interest, the Class A Member shall then have a Purchase Option to purchase, subject to Section 6.8 below, the Transferor Interest for a purchase price equal to the lower of (i) the purchase price set forth in the bona fide offer from the proposed third-party transferee, or (ii) the fair market value of the Transferor Interest. Any Transfer pursuant to this Section 6.3.3 shall be on the terms and conditions set forth in Section 6.4 below. The Purchase Option shall be and remain irrevocable for a period ending at 11:59 p.m., local time, at the Company's principal office on the thirtieth (30th) day following the end of the thirty (30) day period referred to in Section 6.3.2 above (the "Transfer Period"). At any time during the Transfer Period, the Class A Member may elect to exercise the Purchase Option by giving written notice of the election to the Transferor.

6.3.4 Free Transfer Period. If the ClassA and Class A Members fail to exercise the Purchase Options set forth in Sections 6.3.2 and 6.3.3 with respect to the entire Transferor Interest, the Transferor shall be permitted for a period of thirty (30) days following the end of the thirty (30) day period referred to in Section 6.3.3 above (the "Free Transfer Period") to offer and sell the remaining Transferor Interest to any Physician who meets the qualifications to become a Member of the Company. Any such transaction shall be in the manner described in the Transfer Notice; provided, however, that the price for the Transferor Interest shall be no less than the greater of (i) the fair market value of the Transferor Interest, or (ii) if applicable, the purchase price set forth in the bona fide offer from the proposed third-party transferee. If the Transferor does not so Transfer the Transferor Interest within the Free Transfer Period, the Transferor's right to Transfer the Transferor Interest pursuant to this Section 6.3.4 shall cease and terminate until the Transferor has again complied with the provisions of Sections 6.3.1, 6.3.2 and 6.3.3.

6.3.4 Involuntary Withdrawal Transfer. If the Transfer is a result of an Involuntary Withdrawal of a ClassA Member, including without limitation the death or Permanent Disability of a ClassA Member, the ClassA Members shall purchase, on a pro rata basis, the entire Transferor Interest for a purchase price, subject to Section 6.8 below, equal to the greater of (i) the Transferor's Capital Account balance on the date of the Transfer, or (ii) the fair market value of the Transferor Interest, and such purchase shall be on the terms and conditions set forth in Section 6.4 below.

6.4 Terms of Transfer. Any Transfer of a Transferor Interest made to a Member shall be completed within sixty (60) days after the end of the expiration of any applicable Purchase Option or, in the case of Transfers as a result of an Involuntary Withdrawal, within thirty (30) days after the event or determination giving rise to the Involuntary Withdrawal. The purchase price for any Transferor Interest sold to a Member shall be paid by the delivery to the Transferor of a promissory note in customary form, in the principal amount of the purchase price (or the applicable portion thereof), providing for payment of the principal amount in equal monthly installments over a period of not more than five (5) years, with interest at a rate equal to the Applicable Federal Rate, as determined on the date of Transfer under Section 1274(d) of the Code. Any Transfer of the Transferor Interest made after the last day of any applicable Free Transfer Period or without strict compliance with the terms, provisions and conditions of this

Section and other terms, provisions and conditions of this Agreement, shall be null, void and of no force or effect.

6.5 Voluntary Withdrawal. No Member shall have the right or power to Voluntarily Withdraw from the Company; except that a Member may (1) elect to voluntarily forfeit his or her Interest in the Company without payment or other consideration for such Interest; or (2) seek to Transfer his or her Interest to the remaining Members or the Company pursuant to the Transfer requirements set forth in Sections 6.1, 6.2 and/or 6.3 as applicable.

6.6 Involuntary Withdrawal. No Member shall be liable, responsible or accountable, in damages or otherwise, to any Member who is deemed to have given a Transfer Notice as a result of such Member's Involuntary Withdrawal event. In addition, the Company shall indemnify the Members against any suits, claims, actions, losses, liabilities or expenses (including without limitation reasonable attorneys' fees) related to or arising out of a Member's mandatory Transfer of his or her Interest due to the Involuntary Withdrawal of a Member.

6.7 Fair Market Value of a Transferor Interest. The fair market value of the Company and of a Transferor Interest shall be determined in accordance with the procedure set forth in Exhibit "G" hereof.

6.8 Early Transfer Purchase Price. Notwithstanding any provision contained herein to the contrary, in the event of any Transfer during the initial twelve (12) months after any Member's purchase of that Member's Interest, the purchase price for the Transferor Interest shall be equal to the Transferring Member's Capital Contribution plus interest calculated at the rate of five percent (5%) per annum from the date of the acquisition of the Interest.

## Section VII.
## Dissolution, Liquidation and Termination of the Company

7.1 Events of Dissolution. The Company shall be dissolved upon the happening of any of the following events:

7.1.1 Sale of Assets. Upon the sale of all or substantially all of the Company's assets, including the Company's and the collection by the Company of the proceeds of such transaction; or

7.1.2 Judicial Order. Upon the entry of an order of judicial dissolution under Section 8972 of the Law.

7.2 Procedure for Winding Up and Dissolution. If the Company is dissolved, the Board of Managers shall wind up its affairs. On winding up of the Company, the assets of the Company shall be distributed, first, to creditors of the Company, including Members and the Board of Managers who are creditors, in satisfaction of the liabilities of the Company, and then to the Members in accordance with Section 4.4.

7.3 Filing of Certificate of Dissolution. If the Company is dissolved, the Board of Managers shall file a Certificate of Dissolution with the Department of State of the Commonwealth of Virginia at the time set forth in the Law. If there is no Manager, then the Certificate of Dissolution shall be filed by the remaining Members; if there are no remaining Members, the Certificate of Dissolution shall be filed by the last Person to be a Member; if there is neither a Manager, remaining Members, or a Person who last was a Member, the Certificate of Dissolution shall be filed by the legal or personal representatives of the Person who last was a Member.

**Section VIII.**
**Books, Records, Accounting and Tax Elections**

8.1 Bank Accounts. All funds of the Company shall be deposited in a bank account or accounts maintained in the Company's name. The Board of Managers shall determine the institution or institutions at which the accounts will be opened and maintained, the types of accounts, and the Persons who will have authority with respect to the accounts and the funds therein.

8.2 Books and Records.

8.2.1 Retention. The Board of Managers shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company's business. The records shall include, but not be limited to, complete and accurate information regarding the state of the business and financial condition of the Company, a copy of the certificate of organization and this Agreement and all amendments to the certificate of organization and this Agreement; a current list of the names and last known business, residence or mailing addresses of all Members; and the Company's federal, state and local tax returns.

8.2.2 Inspection. The books and records shall be maintained in accordance with sound accounting practices and shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative for any proper purpose, upon fifteen (15) days written notice setting forth the purpose of such inspection, at any and all reasonable times during normal business hours. Any Member seeking information regarding Transfers of Members' Interests shall be deemed a proper purpose.

8.2.3 Reimbursement of Costs and Expenses. Each Member shall reimburse the Company for all costs and expenses incurred by the Company in connection with the Member's inspection and copying of the Company's books and records.

8.3 Annual Accounting Period. The annual accounting period of the Company shall be its taxable year. The Company's taxable year shall be selected by the Board of Managers, subject to the requirements and limitations of the Code.

8.4 Reports. Within seventy-five (75) days after the end of each taxable year of the Company, the Board of Managers shall cause to be sent to each Person who was a Member at