any time during the accounting year then ended: (i) an annual compilation report prepared by the Company's independent certified public accountants in accordance with standards issued by the American Institute of Certified Public Accountants; (ii) a report summarizing the fees and other remuneration paid by the Company to any Member, the Board of Managers or any Affiliate in respect of the taxable year and a report of any Transfers of a Member's Interest during the year; and (iii) that tax information concerning the Company which is necessary for preparing the Member's income tax returns for that year. In addition, within one hundred twenty (120) days after the end of each taxable year, the Board of Managers shall cause to be sent to each Person who was a Member at any time during the accounting year then ended an annual review prepared by the Company's independent certified public accountants in accordance with standards issued by the American Institute of Certified Public Accountants.

8.5 Tax Matters Partner. The President shall be the Company's tax matters partner ("Tax Matters Partner"). The Tax Matters Partner shall have all powers and responsibilities provided in Code Section 6231, *et seq*. The Tax Matters Partner shall keep all Members informed of all notices from government taxing authorities which may come to the attention of the Tax Matters Partner. The Company shall pay and be responsible for all reasonable third-party costs and expenses incurred by the Tax Matters Partner in performing those duties. Each Member shall be responsible for any costs incurred by the Member with respect to any tax audit or tax-related administrative or judicial proceeding against any Member, even though it relates to the Company. The Tax Matters Partner may not compromise any dispute with the Internal Revenue Service without the approval of the Class A Members.

8.6 Tax Elections. The Board of Managers shall have the authority to make all Company elections permitted under the Code, including, without limitation, elections of methods of depreciation and elections under Code Section 754. The decision to make or not make an election shall be at the Board of Managers' sole and absolute discretion.

8.7 Title to Company Property.

8.7.1 Real and Personal Property. Except as provided in Section 8.7.2, all real and personal property acquired by the Company shall be acquired and held by the Company in its name.

8.7.2 Title. The Board of Managers may direct that legal title to all or any portion of the Company's property be acquired or held in a name other than the Company's name. Without limiting the foregoing, the Board of Managers may cause title to be acquired and held in its name or in the names of trustees, nominees or straw parties for the Company. It is expressly understood and agreed that the manner of holding title to the Company's property (or any part thereof) is solely for the convenience of the Company, and all of that property shall be treated as Company property.

## Section IX.
## General Provisions

9.1 Assurances. Each Member shall execute all such certificates and other documents and shall do all such filing, recording, publishing and other acts as the Board of Managers deems appropriate to comply with the requirements of law for the formation and operation of the Company and to comply with any laws, rules and regulations relating to the acquisition, operation or holding of the property of the Company.

9.2 Notifications. Any notice, demand, consent, election, offer, approval, request or other communication (collectively a notice) required or permitted under this Agreement must be in writing and either delivered personally or sent by Federal Express or other comparable commercial overnight courier. Any notice to be given hereunder by the Company shall be given by the Board of Managers. A notice must be addressed to a Member at the Member's last known address on the records of the Company. A notice to the Company must be addressed to the Company's principal office. A notice delivered personally will be deemed given only when acknowledged in writing by the person to whom it is delivered. A notice that is sent by mail will be deemed given three (3) business days after it is mailed. Any party may designate, by notice to all of the others, substitute addresses or addressees for notices; and, thereafter, notices are to be directed to those substitute addresses or addressees.

9.3 Specific Performance. The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach, or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

9.4 Complete Agreement. This Agreement constitutes the complete and exclusive statement of the agreement among the Members with respect to the subject matter contained herein. It supersedes all prior written and oral statements, including any prior representation, statement, condition or warranty, with respect to the Company. Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of all of the Class A Members.

9.5 Applicable Law. All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law of the Commonwealth of Virginia, without reference to the principles governing the conflict of laws applicable in that or any other jurisdiction.

9.6 Section Titles. The headings herein are inserted as a matter of convenience only and do not define, limit or describe the scope of this Agreement or the intent of the provisions hereof.

9.7 Binding Provisions. This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns.

9.8 Jurisdiction and Venue. Any suit involving any Dispute or matter arising under this Agreement may only be brought in the United States District Court for the Middle District of Virginia or any Virginia State Court having jurisdiction over the subject matter of the Dispute or matter. All Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

9.9 Terms. Common nouns and pronouns shall be deemed to refer to the masculine, feminine, neuter, singular and plural, as the identity of the Person may in the context require.

9.10 Separability of Provisions. Each provision of this Agreement shall be considered separable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

9.11 Counterparts. This Agreement may be executed simultaneously in two (2) or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same document. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

IN WITNESS WHEREOF, the parties have executed, or caused this Agreement to be executed, as of the date set forth hereinabove.

[SIGNATURE PAGES FOLLOW]

SIGNATURE PAGE TO OPERATING AGREEMENT OF
**[BNG GROUP, LLC]**

The undersigned, each desiring to become a Member of the Company pursuant to the Limited Liability Company Operating Agreement dated 20 February, 2020 (the "Operating Agreement"), the terms and conditions of which the undersigned has reviewed and is familiar with, does hereby execute this Signature Page to be attached to the Operating Agreement. The Signature Page shall constitute legal and sufficient evidence of execution and certification by the undersigned of such document.

The undersigned further agree to contribute to the Company the amount of the Capital Contribution as set forth in the Operating Agreement and Exhibits "A" and "B" of the Operating Agreement.

Executed this 20 day of February 2020

By:

Valeria V Gunkova,
President and member

February 20, 2020

VALERIA V GUNKOVA MEMBER DATE

Harry D Kamin 2/20/2020

HARRY D KAMIN MEMBER DATE

**Limited Liability Company**
**Operating Agreement**

**EXHIBIT "A"**
**LIST OF CLASS A MEMBERS, CAPITAL AND PERCENTAGE INTERESTS**

| Name and Address | Initial Capital Cash Contribution | Percentage | Units | Class |
|---|---|---|---|---|
| VALERIA V GUNKOVA | $150,000 | 50 % | 50 | A |
| HARRY D KAMIN | $150,000 | 50% | 50 | A |

**Liability Company**
**Operating Agreement**

**EXHIBIT "B"**

**PROCEDURE FOR DETERMINING THE FAIR MARKET VALUE OF A MEMBER'S INTEREST IN THE COMPANY**

At such time as the fair market value of a Transferor Interest is needed in connection with a Transfer, the Company, at its expense, shall retain the services of a valuation firm that will analyze the financial statements of the Company and will render an opinion as to the fair market value of the Company, in general, and the Transferor Interest, in particular. If the Transferor does not accept the fair market value as stated in the opinion, the Transferor, at his or her expense, may retain the services of a valuation firm that will analyze the financial statements of the Company and will render an opinion as to the fair market value of the Company, in general, and the Transferor Interest, in particular and deliver the opinion to the Company.

If there is more than a ten percent (10%) variation in the values expressed in the opinions, the Company and the Transferor shall identify a mutually-agreeable valuation firm whose opinion of fair market value will be binding on the parties. The cost of the opinion shall be paid equally by the Company and the Transferor.

If there is less than a ten percent (10%) variation in the values expressed in the opinions, the values will be averaged to determine the fair market value of the Company and the Transferor Interest.

# FIRST AMENDMENT TO THE OPERATING AGREEMENT OF BNG GROUP LLC

This AMENDMENT (the "Amendment") dated March 14, 2020 (the "Effective Date"), to the limited liability company operating agreement of BMG Group LLC, a Virginia limited liability company (the "Company");

WHEREAS, the existing members of the Company are party to a limited liability company operating agreement dated September 15, 2019 (the "Operating Agreement");

WHEREAS, BNG Group LLC Members (collectively, the "Transferring Members") desire transfer fifty percent (20%) of their membership interest in the Company (collectively, the "Transferred Percentage") to Harry D Kamin (the "Transferee") so that the Transferee shall own a total membership interest in the Company of twenty-five percent (20%); and

WHEREAS, the Transferee desires to be admitted as a member of the Company owning the Transferred Percentage

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the undersigned agree as follows:

1. Capitalized terms not otherwise defined in this Amendment shall have the meaning given such terms in the Operating Agreement.

2. Transfer of Membership Interest.

a. The existing members hereby expressly waive the notice requirement as set forth in Sections 6.2.1 and 6.3.1 of the Operating Agreement. Further, the existing members expressly waive the purchase option requirements as set forth in Sections 6.2.2 and 6.3.2 of the Operating Agreement.

b. The existing members hereby expressly consent to the transfer of the Transferred Percentage from the Transferring Members to the Transferee and to the admission of the Transferee as a member of the Company on following conditions:

i. Transferee made initial payment on an amount of One Hundred and Eighty Thousand Dollars ($180,000.00), that reflect two percent (2%) ownership of Company and can increase his investment up to 20% and entitle to receive distribution according to schedule (Appendix A)

ii. Transferee shall make additional payments during one year from the Effective Date on an amount of:
a. Two Hundred and Seventy Thousand Dollars ($270,000) to own 5%;
b. Seven Hundred and Twenty Thousand Dollars ( $720,000) to own (10%);
c. One Million and One Hundred Seventy Thousand Dollars ($1,170,000) to own 15%;
d. One million and Six Hundred Twenty Thousand Dollars ($1,620,000) to own 20% of Company with total Equity of Nine Million Dollars ($9,000,000).

iii. Transferee shall make determination percentage of ownership not later than 12/31/2020.

EXHIBIT M

VG HK

c. On the Effective Date of this Amendment, Schedule A to the Operating Agreement shall be amended to read as set forth in Schedule A to this Amendment, and as so amended, shall constitute Schedule A to the Operating Agreement.

d. This Amendment shall constitute the reflection of the admission of the Transferee as a member on the books of the Company as of the Effective Date of this Amendment.

e. Transferee shall not assume any liabilities or obligations of the Company or of any other member. Upon Transferee implementing controls, as described below in Paragraph 3 of this Amendment, Transferee shall then agree to undertake and assume liabilities and obligations of the Company to the extent permitted by the Operating Agreement, so long as such liabilities and obligations were undertaken for the benefit of the Company and in accordance with the Operating Agreement.

f. If the Transferred Percentage constitutes the entire membership interests of the Transferring Members, then at the Effective Date of this Amendment the Transferring

3. Section 5 of the Operating Agreement is modified to add the following sections:

a. Section 5.9. Financial Control and Decisions. (a) Notwithstanding any provision to the contrary contained in the Operating Agreement, as an inducement for Transferee to enter into this Amendment and become a member in the Company, Transferee shall (i) have complete control and decisions making authority of the finances of the Company; (ii) shall have access to all bank accounts; (iii) arrange, coordinate, manage, and otherwise create, establish, or implement processes, policies, and procedures for managing the Company's operation; and

4. Section 3.4 of the Operating Agreement is modified to add the following language: As of the Effective Date, Transferee has contributed One Hundred and Eighty Thousand Dollars ($180,000.00) to the Company.

5. The effective date of this Amendment shall be the close of business on the Effective Date.

Remainder of Page Intentionally Left Blank; Signature Page to Follow



VG BNF
HK

IN WITNESS WHEREOF, each of the undersigned, together constituting all of the existing members of the Company (including the Transferring Members) and the Transferee, has caused this Amendment to be duly executed by it or on its behalf on or as of the Effective Date.

**EXISTING MEMBERS:**

Bruce A. Friedman MD

Valeria V Gunkova

**TRANSFEREE MEMBERS:**

Sterling Investment LLC
Harry D Kamin, Member

Remainder of Page Intentionally Left Blank; Amended Schedule A to Follow

# POWER OF REPRESENTATION

I HARRY D. KAMIN (the "Principal"), presently of 320 S. Surf Rd APT 504, Hollywood FL 33019, give this Power of Representation on this 14 day of March 2020. I appoint Jacob G. Bogatin, of 2 Pidgeon Hill Dr, Suite 224, Sterling, VA, 20165, to act as my Representative. This Power of representation will start immediately and will be in effect until December 31, 2020

Specific Representation

Without restricting, the following representation(s) are specifically included within this Power of Representation:

Commercial Real Estate Transactions

Communicate by phone or by email, and deal with any interest I may have in commercial real estate property, and sign all documents on my behalf concerning my interest, including in commercial real property I may acquire.

Credit Facilities

Conduct any business with any banking or financial institution with respect to a long-term loan, make an application, prepare all necessary documents, letters, and negotiate term of agreements with the financial institution if deemed necessary by my Representative, and manage all aspects of the loan process, including the placement of security and the negotiation of terms. Have access to any bank accounts that I own; create and deliver any financial statements necessary to or from any bank or financial institution.

Specific Businesses

To take any action my Representative deems necessary with businesses BNG Group LLC that I may own or have an interest in by doing any act which can be done through a Power of Representation. This Power includes the Power to execute, seal and deliver any instrument; participate in any legal business of any kind; execute partnership agreements and amendments; to elect or employ officers, directors, and agents;

Manage Specific Real Estate

To manage the commercial real estate property in which I may have an interest, located at 2 Pidgeon Hill Dr, Sterling VA 20165, includes, but is not limited to, the Power to receive rents, make repairs, pay expenses, including the insuring of the property, and generally to deal with my property as effectually as I could do;

Representation

I authorize my Representative Jacob G. Bogatin to conduct business affairs, phone conversations, execute the documents using my name, send and receive emails as Harry D. Kamin Director, Aria Medispa using email account harry@ariamedispa.com, or any other email accounts deemed necessary by my

EXHIBIT N

Representative.

My Representative will receive no compensation except for the reimbursement of all out-of-pocket expenses.

Power of Representation

Power of Representation is not subject to any conditions or restrictions other than those noted above.

Acknowledgment

I, **Harry D Kamin**, being the Principal named in this Power of Representation hereby acknowledge:

I have read and understood the nature and effect of this Power of Representation;

I am voluntarily giving this Power of Representation.

IN WITNESS WHEREOF, I sign and seal at the City of Sterling in the Commonwealth of Virginia this 14 days of March 2020.

Harry D Kamin

Harry D. Kamin

**IN WITNESS WHEREOF, I hereunto set my hand and official seal.**

[Seal]

FATIMA EL-HAGE
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JAN. 31, 2021
COMMISSION # 243437

Fatima El-Hage

Notary Public

Name: Fatima El-Hage

Notary Registration Number: 243437

My Commission Expires: Jan 31, 2021

# MEMBERSHIP INTEREST TRANSFER AGREEMENT

THIS MEMBERSHIP INTEREST TRANSFER AGREEMENT (this "Agreement") is made as of 16th day of May 2020 ("Effective Day," by and between BNG Group LLC.("Company"), Valeria Gunkova ("Transferring Members") as 100% owner Company, and Harry D. Kamin individual with an addresses 320 S Surf Rd Apt 504, Hollywood, FL 33019("Transferee")

## BACKGROUND

A. Transferring Members owns 100% of the membership interests in Company

B. Transferring Members desires to sell Transferee, and Transferee desires to purchase a twenty percent (20%), membership interest ("Transferred Interest") of the Company for the amount equal to One Million Eight Hundred Thousand Dollars ($1,800,000) subject to the terms and conditions set forth herein. The foregoing membership interests to transfer from Transferring Members to Transferee on or before 12/31/2020

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the mutual promises and covenants contained herein, Transferring Members and Transferee, intending to be legally bound, hereby agree as follows:

1. **Sale and Purchase of Transferred Interests.**
Upon the terms and subject to the conditions set forth in this Agreement, Transferring Member hereby irrevocably sells, assigns, transfers, and delivers to Transferee, and Transferee hereby purchases 20 % of Transferring Members s right, title, and interest in the Transferred Interests, free and clear of all liens, encumbrances, security interests, pledges, options, claims and rights of others of any nature whatsoever. As of the date hereof, Transferring Members and Transferee estimate that the 20% of theTransferred Interests is equal to One Million Eight Hundred Thousand Dollars ($1,800,000). As promptly as practicable, but no later than ten (10) days from the date hereof, Transferring Members shall ptovide visial inspection of the Company and Property to Transferee. Exact amount of the Transferred Interests and thereafter Exhibit A to LLC's limited liability company operating Agreement shall be modified accordingly.

2. **Consideration.**
The purchase price for the Transferred Interests shall be One Million Eight Hundred Thousand Dollars ($1,800,000) ("Purchase Price").
Transferee has made an initial payment in the . amount of One Hundred and Eighty Thousand Dollars ($180,000.00) representing two percent (2%) ownership of the Company and can increase his investment up to 20% and be entitled to receive distribution according to schedule (Appendix A). The Transferee shall make additional payments during one year from the Effective Date on an amount of:
   a. Two Hundred and Seventy Thousand Dollars ($270,000) to own 5%;
   b. Seven Hundred and Twenty Thousand Dollars ( $720,000) to own (10%);
   c. One Million and One Hundred Seventy Thousand Dollars ($1,170,000) to own 15%;
   d. One million and Six Hundred Twenty Thousand Dollars ($1,620,000) to own 20% of the Company

The Transferee shall decide the percentage of ownership not later than 12/31/2020.
If the Transferred Interests constitute fifty percent (50%) or more of the entire membership interests in BNG Group, LLC, then Transferee shall be granted, Manager Member position with Company.

3. **Costs.**
Transferring Members and Transferee shall be solely responsible for their respective costs and expenses (including without limitation legal and accounting fees) incurred in connection with the transactions contemplated by this Agreement. It is acknowledged that there will be no broker's commission, finder

EXHIBIT
O

fee, or similar fee payable in connection with this transaction.

4. **Further Assurance**.

At any time and from time to time after the date hereof, Transferring Members and Transferee shall promptly execute and deliver all such further agreements, certificates, instruments, and documents, or perform such further actions, as may be requested, to fully consummate the transactions contemplated hereby regarding the sale of the Transferred Interests and carry out the purposes and intent of this Agreement.

5. **Entire Agreement**.

This Agreement and the other documents referred to herein constitute the entire Agreement among the parties hereto with respect to the subject matter hereof and supersede all other prior and contemporaneous agreements and undertakings among the parties (whether oral or written) with respect to its subject matter.

6. **Parties in Interest**.

This Agreement is binding upon, inures to the benefit of, and is enforceable by the parties hereto, and their respective heirs, executors, personal representatives, successors, and assigns. No party hereto may assign its or his rights or delegate its or his obligations hereunder without the written consent of the other party hereto.

7. **Headings**.

The Section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

8. **Severability**.

Any provision of this Agreement which is invalid, illegal, or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective only to the extent of such invalidity, illegality or unenforceability, without in any way affecting the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

9. **Governing Law**.

This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Virginia, without giving effect to the conflict of laws provisions thereof. Any dispute arising out of or related to this Agreement or the underlying transaction contemplated hereby shall be brought in the state or federal courts governing Loudoun County, Virginia. The prevailing party in any such litigation shall be awarded their reasonable attorney fees in bringing or defending such action.

10. **Waiver**.

No delay on the part of any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part of any party of any right, power or privilege hereunder, or any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

11. **Counterparts**.

This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same document. Confirmation of execution by electronic transmission of a facsimile signature page shall be binding upon any party so confirming.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written.

By: BNG GROUP, LLC.

By: [signature]
Name: Valeria Gunkova
Title: President

By: TRANSFERRING MEMBER

By: [signature]
Name: Valeria Gunkova

By: TRANSFEREE

By: [signature]
Name: Harry D Kamin
Title: Member,
Sterling Investment LLC

in the presence of:

Witness: [signature] (Sign)
Witness Name: Natalia Berkunova
Address: 20781 Biptrele SQ
Sterling Virginia 20165

**SIGNED, SEALED, AND DELIVERED**

KIRK DAVID HILLIARD
NOTARY PUBLIC
REG. #7839539
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MARCH 31, 2023

[signature]
Kirk Hilliard

I witnessed the above signatures in Loudoun County Virginia on 5-16-2020



GUNKOVA_000057