4. **Confidentiality, Non-Disclosure**. Any term sheets, letters of interest, offers of credit or any other information ("Evaluation Materials") with respect to any Transaction provided to the Parties and/or its representatives ("Accepting Parties") will be used solely for the purpose of evaluating the Transaction by the Parties. The Evaluation Materials will not be used or duplicated for any other purpose.

   Accepting Parties shall keep all Evaluation Materials strictly confidential; provided, however, that such Evaluation Materials may be delivered to such persons or entities because of their involvement with the Transaction and need to know such information for the purpose of giving advice with respect to, or consummating, the Transaction (all of whom are collectively referred to as "Related Parties"); provided further, that any such Related Parties shall be informed by Accepting Parties of the confidential nature of such information and shall be directed by Accepting Parties (and Accepting Parties shall cause such Related Parties) to keep all such information in the strictest confidence and to use such information only in connection with the Transaction and in accordance with the terms of this Agreement.

5. **No Usurpation**. The Transaction and the Evaluation Materials that the Consultant will present, or has presented, to the Accepting Parties is a product of extensive research, cost, time and money, and is the substance of the Consultant's business. The Client, its representatives, Affiliates and its Affiliated Parties shall not usurp the Transaction and information contained in the Evaluation Materials to the detriment of the Consultant. Such usurpation shall materially, substantially and irreparably damage the Consultant. Consequently, the Client, it's representatives, it's Affiliates and the Accepting Parties agree that, for a period of one and one half (1.5) years from the date of this Agreement, Client will not use any information contained in the Evaluation Materials provided by the Consultant or any other information learned from its engagement or involvement with the Consultant to usurp Consultant's efforts.

6. **No Representations by Consultant's Parties**. The Consultant does not make any representations or warranties as to the accuracy or completeness of the Evaluation Materials or that the actual results will conform to any projections contained therein. Consultant expressly disclaims any and all liability for representations or warranties express or implied, contained in the Evaluation Materials, or in any other written, oral or other communications transmitted or made available to Accepting Party by the Consultant or the Consultant's Parties.

7. **Contact Strictly Limited**. The Parties, the Accepting Parties, and any or all of persons, parties or entities associated with and/or working with or for the Client shall communicate only to and exclusively with the Consultant through the representing Party. Under no circumstances shall the Client have contact with anyone working with or for the Consultant including but not limited to the Consultant, the Consultant's employees and/or agents, any onsite personnel at the Transaction, or anyone else on the financing side without the express, written authorization by the Consultant. The clear and unambiguous intent of this is to protect confidentiality and to work only with and exclusively through the Consultant. Failure of any of the aforementioned parties to comport to this directive shall be a material breach of this Agreement and will create both legal and equitable damages in favor of the Consultant.

8. **No Obligation**. Consultant is under no legal obligation of any kind whatsoever with respect to the Transaction by virtue of this Agreement, for the delivery of any Evaluation Materials, any discussions concerning the Transaction or otherwise, unless and until a binding written agreement is executed and delivered by all parties thereto.

9. **Compensation.** The Consultant plans to introduce one or more lenders and/or investors to the Client and if the Client accepts any of the financing or investing that is a result of efforts of the Consultant, then the Consultant shall receive the following compensation from the Client:

**Success Fee.** The Consultant will earn, and Client shall be obligated to pay (and to cause Third Party to pay) to Consultant a total of **[2.0 % or $147,200]** of all debt capital raised. The Fee shall be earned upon issuance of a lender or investor commitment with terms and conditions agreed to by the Client. The parties agree that the Fee shall be due and payable at or before the closing per Consultant banking, trust account or escrow instructions. If client is not able to pay Consultant commission in full at closing, payment schedule will be issued for the following dates:

1. **[1.0% or $73,600]** of all debt capital raised due on closing date to Consultant banking, trust account, or escrow instructions. Estimated closing date **October 30th, 2020.**
2. The Additional **[1.0% or $73,600]** of all debt capital raised on **October 30th, 2020** will be due on, **January 31st, 2021** or before to Consultant banking, trust account, or escrow account in full. Client has the option to pay this any time until the full **[$147,200]** has been paid.

If client does not execute the complete **[2.0% or $147,200]** on or before **01/31/2021** a penalty of **[.05%]** of all debt capital raised **[or $3,680]** will be due each month following January 2021 in addition to the remaining **[1.0% or $73,600]** until the full **[$147,200]** has been paid.

If client executes the complete **[2.0% or $147,200],** on or before **01/31/2021,** no such penalties will be incurred**.**

10. **Term**. This Agreement shall be effect for two and one half (2.5) years from the above-referenced date.

11. **Disclaimer.** Consultant is not guaranteeing the suitability of any financing or investment for the Client's purposes. Client is not relying on Consultant to determine the environmental or other physical condition of the assets being financed or purchased. Consultant shall not be liable for inaccuracy of any information/data provided by third parties in connection with the financing. Consultant makes no representations or warranties of any nature whatsoever, and Client is not relying on anything presented by or through the Consultant, regarding any aspect of the financing or financial products being offered, including but not limited to suitability for any purpose. Client acknowledges their responsibility to perform any and all due diligence on the financial products, financing and Investors being offered and is making the decision to use said financing and or financial products on its sole and unfettered discretion.

12. **Taxes**. Neither Party makes any representations or warranties regarding the tax consequences of the proposed financing, if any, in any jurisdiction covered by this Agreement. The parties agree that each accepts its liability for taxes, imposts, levies or charges that may arise.

13. **Notices**. All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or by electronic transmission, telexed or mailed by registered or certified mail (return receipt requested), postage prepaid, to the parties at the addresses noted above.

14. **Entire Agreement**. This Agreement represents the entire agreement between the Parties and supersedes all existing contracts and agreements previously executed between the Parties, and any representations, either written or oral, by one Party to another with respect to the subject matter hereof. This Agreement shall be modifiable only in writing, duly executed by all Parties.

15. **Binding**. This Agreement shall be for the benefit of, and be binding upon, the signatories hereof, their agents, directors, officers, representatives, heirs, personal representatives, successors and assigns.

16. **Arbitration of Disputes:** The parties hereby agree to submit any dispute or controversy, at law or in equity, to arbitration under the Rules of the American Arbitration Association. Said dispute shall be heard in the County of Palm Beach in the State of Florida. The prevailing party shall be entitled to legal costs, arbitration costs and arbitrator's fees. Attorney's fees may *not* be awarded by the arbitrator, but in the event that legal action becomes necessary to confirm and/or collect the award of the arbitrator, the prevailing party in arbitration shall be entitled to reasonable attorney's fees for post-arbitration action. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. This Agreement shall be construed and enforced in accordance with the laws of the state of Florida.

17. **Severability**. The provisions of this Agreement are severable, and if any one or more provisions may be determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions and any partially

19. **Informed, Voluntary Execution of the Agreement**. The undersigned signatories to this Agreement acknowledge and affirm that they fully understand their obligations with respect to this Agreement and the obligations undertaken hereto; that they have had adequate time and opportunity to consult with legal counsel of their choice prior to the execution of this Agreement; that they are fully informed; and that each has executed this Agreement freely and voluntarily, without reservation or exception.

20. **Authorization**. The undersigned signatories to this Agreement acknowledge and affirm that they are duly authorized signatories and have full legal capacity to initiate and execute all legal obligations arising from this Agreement. The signatories whose endorsements appear herein hereby represent that they each are acting with full corporate authority, and with full knowledge and at the direction of the officers and/or Board of Directors of their respective companies, if any.

21. **Counterparts**. The signatures of the parties duly authorized representatives shall be affixed as indicated below. The parties stipulate and agree that this Agreement may be signed in counterparts and executed by each Party as set forth above. When each counterpart, duly executed, and delivery thereof has been made to each Party respectively, this Agreement shall then be considered to be an original, binding agreement between the parties, whether received in hand, delivered by mail or courier, or transmitted via electronic transmission. The parties further stipulate and agree that duly executed electronic transmission copies shall be acceptable and shall be considered to be as valid, legal and binding upon the parties as the originals thereof.

**IN WITNESS WHEREOF**, the parties irrevocably agree to all of the terms and conditions of the Agreement and in formal acknowledgement thereof have set their hands and seals, as signified by their respective signatures which appear below.

**Client: Harry Kamin**

**Sign:** Harry D Kamin
Harry D Kamin (Nov 9, 2020 16:39 EST)
**Date:** Nov 9, 2020

**Company Name:** NBG Group LLC

**By:** Harry D Kamin Director **--Its Authorized Signatory**
Print Name & Title

**Consultant**

**Sign:**

**Date:** 10/30/2020

**Company Name:** Stryker Services, LLC
**By:** Matthew Harris, Executive Partner **--Its Authorized Signatory**

**IMPORTANT NOTICE: THIS DOCUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE**

# GUARANTY

For value received, receipt whereof is hereby acknowledged, and to induce The ELEX Group, Inc., a New Jersey corporation whose address is Medford National Building, PO Box 14, Medford, NJ 08055 (hereinafter called "ELEX") to enter into a lease of personal property (which, together with all future leases, if any, under which additional personal property is leased by ELEX to Lessee, are herein called the "Lease") between ELEX and SKIN LOGIC, LLC a Virginia limited liability company whose address is 2 Pidgeon Hill Drive, Suite 100, Sterling, VA 20165

(herein called "Lessee"), the undersigned (and each of them if more than one, hereinafter called the "Guarantor") hereby jointly and severally unconditionally guarantees and promises to ELEX as follows:

1. **Payment and performance.** The Guarantor guarantees and promises to ELEX that Lessee will promptly perform and comply with each and all of its obligations contained in the Lease, and that all sums payable by the Lessee under such Lease will be promptly paid when due in accordance with the provisions thereof and, in case of extension of time of payment, in whole or in part, of any such sums, that all such sums will be promptly paid when due in accordance with the terms of such extension; provided, however, that strictly for timing purposes, the Guarantor shall not be liable hereunder for the payment of rentals payable by Lessee under such Lease at the respective stated due dates thereof; but instead be liable for the payment of such rentals that have not been paid when due, whether scheduled or accelerated; but further provided, however, that the foregoing provision shall in no way limit the liability of the Guarantor in respect of payments by way of rentals or damages or otherwise required to be made under such Lease.

2. **Waiver of notice of modification of lease.** The Guarantor hereby consents that at any time or from time to time without notice to the Guarantor, the time for the Lessee's performance of or compliance with any of its obligations contained in such Lease may be extended or such performance or compliance may be waived by ELEX; such Lease may from time to time be amended for the purpose of adding any provision thereto or changing in any manner the rights of ELEX or of Lessee thereunder, payment of any sums due or to become due under such Lease may be extended, in whole or in part; and the terms of such Lease may be waived by ELEX in its sole discretion, all without affecting the liability of the Guarantor hereunder.

3. **ELEX remedies.** ELEX may pursue its rights and remedies under this Guaranty and shall be entitled to payment hereunder and to enforce all of its other rights hereunder notwithstanding any other guaranty of, or security for, all or any part of the obligations of Lessee under such Lease and notwithstanding any action taken or omitted to be taken by ELEX to enforce any of its rights or remedies under such other guaranty or with respect to any other security, or any payment received thereunder, and the Guarantor shall not be subrogated, in whole or in part, to the rights of ELEX against Lessee under such Lease until ELEX shall have been paid in full all such sums as are at any time payable by Lessee under such Lease.



EXHIBIT X

EAGLEBANK 0488

4. **Assignment of guaranty.** Any assignment by ELEX of the Lease shall also constitute an assignment by ELEX of all of its rights and remedies under this Guaranty, which shall be deemed an instrumental part of the Lease and any assignment of the Lease. Guarantor is hereby put on notice of the collateral assignment by ELEX to EagleBank, promptly following the execution and delivery of any Lease and/or Guaranty with respect thereto, of all of its rights and powers hereunder or under the Lease, or any sums due or to become due, or any rights, claims, powers and remedies hereunder or thereunder and, in which event of such assignment, EagleBank, as such assignee, shall have the same rights and remedies as if originally named herein.

5. **Waiver of presentment, demand, and protest.** Guarantor hereby waives diligence, presentment of any instrument, demand for payment, protest and notice of nonpayment or protest and the performance of each and every condition precedent to which Guarantor might otherwise be entitled by law and notice of the creation or accrual of any of the obligations of Lessee to ELEX under such Lease and all demands whatsoever.

6. **Independent obligation.** Lessee's obligations, and each of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guaranty. The obligations of the undersigned hereunder are joint and several, and are independent of the obligations of Lessee. A separate action or actions may be brought and prosecuted against Guarantor, or any of them, whether an action is brought against Lessee or whether Lessee be joined in any such action or actions; and Guarantor waives the benefit of any statute of limitations affecting their liability hereunder or the enforcement thereof.

7. **Unconditional guaranty.** This Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment irrespective of the validity, or enforceability of (i) any of the obligations of Lessee to ELEX as aforesaid or (ii) Lease or (iii) any security therefore, and notwithstanding any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce, amend or otherwise affect any obligation of Lessee or other obligor or to vary any terms of payment, and irrespective of any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or a guarantor.

8. **Waiver of jury, Guarantor defined.** Guarantor hereby waives any and all right to a trial by jury in any action or proceeding based hereon. If there is but a single Guarantor, then all words used herein shall be deemed to have been used in the singular where the context and construction so require; and if this Guaranty is executed by more than one Guarantor, the word "Guarantor" shall mean all and any one or more of them.

9. **Miscellaneous.** This Guaranty cannot be changed or terminated orally, shall be governed by and construed according to the laws of the State of Maryland, shall be binding upon the heirs, executors, administrators, successors, and assigns of the Guarantor and shall inure to the benefit of ELEX, its successors and assigns.

10. **Confession of Judgment. GUARANTOR LESSEE HEREBY AUTHORIZES MICHAEL J. LICHTENSTEIN, ESQ., OR ANY OTHER ATTORNEY WITH THE LAW FIRM OF SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A. ADMITTED TO PRACTICE IN THE STATE OF MARYLAND TO APPEAR ON BEHALF OF GUARANTOR BEFORE THE CLERK OF ANY STATE OR FEDERAL COURT IN MARYLAND OR IN ANY OTHER COURT IN ONE OR MORE PROCEEDINGS, OR BEFORE ANY OTHER CLERK THEREOF OR PROTHONOTARY OR OTHER COURT OFFICIAL, AND TO CONFESS JUDGMENT AGAINST GUARANTOR IN FAVOR OF ELEX IN THE FULL AMOUNT DUE UNDER THIS**

GUARANTY PLUS ATTORNEYS' FEES EQUAL TO FIFTEEN PERCENT (15%) OF THE AMOUNT DUE, PLUS COURT COSTS, ALL WITHOUT PRIOR NOTICE OR OPPORTUNITY OF GUARANTOR FOR PRIOR HEARING. GUARANTOR HEREBY AGREES AND CONSENTS THAT VENUE AND JURISDICTION SHALL BE PROPER IN ANY STATE OR FEDERAL COURT LOCATED IN THE STATE OF MARYLAND, GUARANTOR WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE, OR RULE OR COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON GUARANTOR ANY RIGHT OR PRIVILEDGE OF EXEMPTION, HOMESTEAD RIGHTS, STAY OF EXECUTION, OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS ELEX SHALL DEEM NECESSARY, CONVENIENT, OR PROPER, NOTHWITHSTANDING THE FOREGOING, ELEX ACKNOWLEDGES THAT ATTORNEYS' FEES ARE STATED TO BE FIFTEEN PERCENT (15%) SOLELY FOR THE PURPOSE OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION, AND ELEX AGREES THAT IN ENFORCING ANY SUCH JUDGMENT BY CONFESSION, ELEX SHALL NOT COLLECT, SOLELY WITH RESPECT TO ATTORNEYS; FEES INCURRED BY ELEX IN CONNECTION WITH SUCH INDEBTEDNESS, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF ATTORNEYS' FEES AND EXPENSES REASONABLY CHARGED OR BILLED TO ELEX.

EACH VIRGINIA RESIDENT IRREVOCABLY APPOINTS GREGORY GRANT AND MEREDITH SCHRAMM-STROSSER, ANY ONE OF WHICH WHOM MAY ACT ALONE, AS ITS DULY CONSTITUTED ATTORNEY-IN-FACT WITH AUTHORITY, IN THE NAME, PLACE, AND STEAD OF SUCH GUARANTOR TO CONFESS JUDGMENT IN THE OFFICE OF THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA, AGAINST SUCH GUARANTOR IN THE FULL AMOUNT DUE UNDER THIS GUARANTY AND ANY MODIFICATION, RENEWAL OR SUBSTITUTION THEREOF, WHETHER NOW OR HEREAFTER EXISTING, AND ALL COSTS OF COLLECTION (INCLUDING, BUT NOT LIMITED TO, REASONSABLE ATTORNEY'S FEES OF 15%). UPON THE OCCURRENCE OF ANY EVENT OF DEFAULT UNDER THIS GUARANTY OR ANY MODIFICATIN, RENEWAL OR SUBSTITUTIN THEREOF, WHETHER NOW OR HEREAFTER EXISTING, SUCH APPOINTMENT SHALL CONSTITUTE A POWER COUPLED WITH AN INTEREST AND SHALL REMAIN IN EFFECT UNTIL ANY AND ALL INDEBTEDNESS EVIDENCED BY THIS GUARANTY HAS BEEN PAID IN FULL.

[The Remainder of This Page Intentionally Left Blank]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement under seal this 1st day of February, 2021.

INDIVIDUALS SIGN BELOW

Name: Harry D. Kamin
SS#: 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

320 S Surf Road Apt 504, Hollywood, FL 33019
Residence Address

Signed and sworn to before me on this 1st day of February, 2021.

Notary Public Signature

Kirk Hilliard
Notary Public Print Name

SEAL

KIRK DAVID HILLIARD
NOTARY PUBLIC
REG. #7839539
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MARCH 31, 2023

Name: Valeria V. Gunkova
SS#: 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

20701 Riptide Square, Sterling, VA 20165
Residence Address

Signed and sworn to before me on this 1st day of February, 2021.

Notary Public Signature

Kirk Hilliard
Notary Public Print Name

SEAL

KIRK DAVID HILLIARD
NOTARY PUBLIC
REG. #7839539
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MARCH 31, 2023